PROPOSED REDACTIONS

Docket No.  11 Civ. 7535 (ALC)(GWG)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

KATHLEEN MAKINEN, JAMIE NARDINI, and
ANGEL TORRES,

                                                              Plaintiffs,

                              -against-

CITY OF NEW YORK; RAYMOND W. KELLY, as
Police Commissioner of the City of New York; NEW
YORK CITY POLICE DEPARTMENT; and
SERGEANT DANIEL J. SWEENEY, individually and
in his official capacity,

                                                              Defendants.

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

**MICHAEL A. CARDOZO**
*Corporation Counsel of the City of New York*
*Attorney for Defendants*
*100 Church Street*
*New York, N.Y.  10007*

*Of Counsel: Eric Eichenholtz,*
*                     Benjamin Welikson*

*Tel:  (212) 788-0885*
*Matter No. 2011-032141*

PROPOSED REDACTIONS

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ...................................................................1

STATEMENT OF FACTS ........................................................................2

ARGUMENT

    POINT I

        THE NYPD IS ENTITLED TO ORDER ITS UNIFORMED OFFICERS TO COMPLY WITH RECOMMENDATIONS FOR COUNSELING AND TREATMENT ...............................................3

    POINT II

        PLAINTIFFS FAIL TO STATE A PRIMA FAICE CASE OF DISABILITY DISCRIMINATION ...........................5

        A. The Applicable Legal Framework.........................................5

        B. Plaintiffs Cannot Establish they were "Disabled" within the Meaning of the ADA ......................7

           (a) Plaintiffs Cannot Establish they were Incorrectly Regarded as Suffering from Alcoholism..................................7

        C. Plaintiffs Cannot Established they were "Disabled" within the Meaning of the NYSHRL Or NYCHRL ...............................8

        D. Plaintiffs Cannot Establish that They Suffered an Adverse Employment Action Because of Their Alleged Disability.........................9

    POINT III

        ASSUMING PLAINTIFFS CAN ESTABLISH A PRIMA FACIE CASE OF DISCRIMINATION, THEIR CLAIMS MUST BE DISMISSED BECAUSE DEFENDANTS HAVE ARTICULATED LEGITIMATE NON-DISCRIMINATORY REASONS FOR THEIR

**Page**

ACTIONS THAT CANNOT BE SHOWN TO BE
PRETEXTUAL ..................................................................14

A.  Defendants have articulated Legitimate, Non-
Discriminatory Reasons for their Actions in
each Case ...............................................................15

B.  Plaintiffs' Failure to Comply with Lawful
Orders Concerning their Treatment Is a
Legitimate, Nondiscriminatory Reason For
Disciplinary Action ...............................................17

C.  Plaintiff Cannot Establish That Defendant's
Stated Reason for Their Actions Is False and
that the True Reason Is Unlawful
Discrimination .......................................................19

POINT IV

PLAINTIFFS TORRES' AND MAKINEN'S
FEDERAL AND STATE WAGE AND HOUR
LAW CLAIMS MUST BE DISMISSED ...............................20

A.  The NYLL Does Not Apply to the City of New
York or the NYPD .................................................20

B.  Any Claims That Accrued On or After October
7, 2009 Are Time Barred........................................20

C.  Time Spent in Alcohol Abuse Treatment is Not
Compensable Work ................................................22

POINT V

PLAINTIFFS STATE LAW TORT CLAIMS
MUST BE DISMISSED FOR FAILURE TO FILE
TIMELY AND ADEQUATE NOTICES OF
CLAIM ...........................................................................25

POINT VI

PLAINTIFFS' DEFAMATION CLAIMS MUST
BE DISMISSED ...............................................................28

A.  Plaintiffs' Defamation Claims Are Barred by
the Statute of Limitations ......................................28

PROPOSED REDACTIONS

**Page**

B.  The Challenged Statements Are Protected by
Qualified Privilege .........................................................................29

C.  Plaintiffs Have Waived Their Defamation
Claims.............................................................................................31

POINT VII

PLAINTIFF'S BREACH OF CONFIDENTIALITY
CLAIMS MUST BE DISMISSED ................................................32

POINT VIII

PLAINTIFFS' NEGLIGENCE CLAIMS MUST
BE DISMISSED ..........................................................................34

A.  Plaintiff's Negligence Claims are Barred By
the Statute of Limitations and Their Failure to
File Timely Notices of Claim .........................................................34

B.  Sergeant Sweeney is Entitled to Governmental
Immunity ........................................................................................35

C.  Plaintiff's Negligence Claims Fail on their
Merits..............................................................................................36

POINT IX

PLAINTIFF'S PURPORTED EXPERT REPORT
IS INADMISSIBLE AND SHOULD NOT BE
ACCORDED ANY WEIGHT........................................................36

A.  Standard For The Admissibility of Expert
Scientific Evidence.........................................................................36

B.  Application – The Report Does Not Meet the
Daubert Standard and is Irrelevant.................................................38

(a)  The Report Is Irrelevant.......................................................38

(b)  The Report Fails to Meet the Most Basic
Requirements of Daubert......................................................40

CONCLUSION ..........................................................................................46

## MEMORANDUM OF LAW IN SUPPORT DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

### PRELIMINARY STATEMENT

Plaintiffs Kathleen Makinen, Jamie Nardini and Angel Torres (collectively "plaintiffs"), all of whom are or were uniformed Police Officers in the New York City Police Department ("NYPD"), commenced this action against the City of New York, Police Commissioner Raymond Kelly and Sergeant Daniel Sweeney. Plaintiffs herein challenge the CSU's assessments and referrals as discriminatory under the Americans with Disabilities Act, state and local law and allege that the CSU violated their confidentiality rights. Plaintiffs Makinen and Torres also allege that they were denied overtime in violation of the Fair Labor Standards Act ("FLSA") in connection with their referral and treatment under a variety of legal theories concerning their referral to and treatment by the NYPD Counseling Services Unit ("CSU").

For the reasons set forth below, defendants' motion for summary judgment should be granted and all of the amended complaint dismissed in its entirety.

PROPOSED REDACTIONS

## STATEMENT OF FACTS

The Court is respectfully referred to defendants' Statement of Undisputed Facts Under Local Civil Rule 56.1, dated May 6, 2013 ("56.1 Statement"), the Declaration of Eric Eichenholtz, dated May 6, 2013 ("Eichenholtz Decl.") and the supporting evidence cited to therein for a statement of pertinent and material facts.

## ARGUMENT

### POINT I

### THE NYPD IS ENTITLED TO ORDER ITS UNIFORMED OFFICERS TO COMPLY WITH RECOMMENDATIONS FOR COUNSELING AND TREATMENT

While plaintiffs do not seem to be challenging the NYPD's ability to perform alcohol assessments or to require rehabilitation generally, it is nonetheless important to reiterate the important and compelling interest on the part of the NYPD to take appropriate action when it believes that one of its officers may be abusing alcohol.  The NYPD has an obligation to ensure that its uniformed personnel are capable of performing the duties and medically fit to be on full duty, particularly in light of the fact that police officers face a "high degree of danger, periods of enormous physical and emotional stress, and the need for strict discipline in such an organization." Sauer v. Connelie, 71 A.D.2d 770, 711 (3d Dep't 1979).

Because of the public trust placed in the police force and the sensitivity of many issues regularly faced by police officers, the Police Commissioner must have the ability to demand a high degree of character and fitness from his employees.  Id.  Indeed "[t]he public employer and society are unquestionably entitled to [an officer's] undeviating concentration and split-second good judgment and self control." Seelig v. Koehler, 76 N.Y.2d 87, 93-94 (1990). As the Supreme Court has recognized, a public safety agency such as the NYPD must be able to ensure that its officers, who "discharge duties fraught with such risks of injury to others that even a momentary lapse of attention can have disastrous consequences," are appropriately fit for duty. See Skinner v. Railway Labor Execs.' Ass'n, 489 U.S. 602, 621-628 (1989).  Moreover, as Judge Barbara Jones aptly observed in Brennan v. New York City Police Department, 1997 U.S. Dist. LEXIS 23193 at *17-18 (S.D.N.Y. 1997), aff'd, 1998 U.S. App. LEXIS 1923 (2d Cir. 1998):

3

> It is beyond doubt that police offers occupy safety-sensitive jobs. They are authorized to carry and use weapons, and are responsible for maintaining the health and safety of the public. . . . Police officers must be armed and able to respond immediately to emergency (and non-emergency) situations, either on foot or by vehicle. Any use of alcohol would only magnify the effects of [the Officer's use of a] weapon; his ability to respond would be significantly hampered and his response would be potentially dangerous.

It logically follows that, should appropriately credentialed[1] officials perform an assessment and determine that the officer may be suffering from alcohol dependence or abuse, there "is nothing unlawful about an employer requiring that an employee with an alcohol addiction enter an inpatient treatment facility as a condition of continued employment." MacShane v. City of New York, et. al., 2007 U.S. Dist. LEXIS 25014 at *26-27 (E.D.N.Y. 2007).   NYPD may lawfully refer its employees to CSU for assessment and, if CSU determines that treatment is necessary, it may lawfully order the officer to comply with CSU's recommendations. See Roberts v. Bratton, 233 A.D.2d 102 (1st Dept. 1996).   This is true even if the officer or even another medical expert has a difference of opinion with the CSU.  See Siciliano v. Safir, 259 A.D.2d 366 (1st Dept. 1999). Such orders are "serious, involving [NYPD's] requirements for order, authority and discipline" and must be obeyed. Siciliano, 259 A.D.2d 366.

---

[1] There can be no dispute that the CSU is lawfully entitled to conduct alcoholism assessments.   Under the New York law that governs alcohol counseling, assessment and treatment, the New York State Office of Alcoholism and Substance Abuse Services ("OASAS"), regulates and oversees the operations of counseling entities, certifies alcohol and substance abuse counselors and determines who is qualified to perform alcohol assessments.  See New York Mental Hygiene Law § 19.07.   CSU works consistently with OASAS to refine and improve its services, and OASAS has consistently recertified the CSU to perform its functions.

4

PROPOSED REDACTIONS

## POINT II

### PLAINTIFFS FAIL TO STATE A *PRIMA FAICE* CASE OF DISABILITY DISCRIMINATION

Given the well-settled law described above, plaintiffs do not appear to be challenging the process of referral to and treatment by the CSU generally. Rather, they seem to be claiming that the CSU diagnosed them incorrectly and falsely perceived them as alcoholics. Plaintiffs allege that such false perception is tantamount to disability discrimination. However, for the reasons set forth below, plaintiffs' disability discrimination claims, whether under federal, state or city law, fail.

**A.      The Applicable Legal Framework**

The Americans with Disabilities Act ("ADA"), Article 15 of New York's Human Rights Law ("NYHRL"), and the New York City Administrative Code ("NYCHRL") all prohibit employers from discriminating against disabled employees on the basis of their disabilities. 42 U.S.C. § 12112(a) et seq.; N.Y. Exec. Law § 296(1)(a) et seq.; N.Y.C. Admin. Code § 8-107 et seq. Federal and state law apply the McDonnell Douglas burden-shifting test and place the burden of proof on plaintiffs, requiring them to demonstrate by a preponderance of the evidence that they have a "disability," as the term is defined under each statute, and that defendants unlawfully discriminated against them because of their disability. McDonnell Douglass Corp. v. Green, 411 U.S. 792, 802 (1973); Reeves v. Johnson Controls World Servs., Inc., 140 F.3d 144, 149-50, 156 n. 9 (2d Cir. 1998) (applying the McDonnell Douglas test to the ADA and NYHRL); Mack v. Otis Elevator, 326 F.3d 116, 122 n. 2 (2d Cir. 2003) (citation omitted) (stating that NYCHRL and NYHRL parallel the federal framework); McDowell v. T-Mobile USA, Inc., No. 04 Civ. 2909 (DGT), 2007 U.S. Dist. LEXIS 71591 at *25 n. 16 (E.D.N.Y. 2007) (same). Although recent cases have once again noted that the NYCHRL is to be given a more

liberal interpretation than its counterparts, "[n]one of the 2005 Restoration Act's amendments to the NYCHRL altered the standard by which a court should determine whether a discriminatory act has occurred." Kaur v. New York City Health & Hosps. Corp., No. 07 Civ. 6175 (LAP), 2010 U.S. Dist. LEXIS 15455 at *55 (S.D.N.Y. February 19, 2010), quoting Wilson v. NYP Holdings, No. 05 Civ. 10355 (LTS), 2009 U.S. Dist. LEXIS 28876 (S.D.N.Y. 2009); see also Mihalik v. Credit Agricole Cheuvreux N. Am., Inc., 2013 U.S. App. LEXIS 8494, ____ F.3d ____ (2d Cir. April 26, 2013) (an employee seeking to prove discrimination under the NYCHRL must still show that the alleged employment action was caused by unlawful discrimination).

Thus, to establish a prima facie case of disability discrimination under federal and state law, plaintiffs must establish that: (1) their employer is subject to the ADA; (2) they suffer from a disability within the meaning of the ADA; (3) they could perform the essential functions of their job with or without reasonable accommodation; and (4) they suffered an adverse employment decision because of their disability. See Reeves,140 F.3d at 149-150. Plaintiffs' burden is to establish these four elements by a preponderance of the evidence. Roge v. NYP Holdings, Inc., 257 F.3d 164, 168 (2d Cir. 2001); Russell v. County of Nassau, No. 07 Civ. 1686 (DRH), 2010 U.S. Dist. LEXIS 14018 at *38 (E.D.N.Y. Feb. 18, 2010). As set above, while analyzed in a more liberal manner, the City law similarly requires that the plaintiffs prove they were "disabled" within the meaning of the CHRL and that the defendants took action because of this alleged disability.

Plaintiffs herein cannot establish the second, third, or fourth elements of a prima facie case of disability discrimination and cannot establish that the defendants discriminated against plaintiffs under any statute. Thus, the Court should grant defendants' motion for summary judgment.

PROPOSED REDACTIONS

**B.    Plaintiffs Cannot Establish they were "Disabled" within the Meaning of the ADA**

Because all plaintiffs herein deny having any disability, plaintiffs rely on the "regarded as having" a disability prong of the ADA.  42 U.S.C. § 12102(1)(C).  It is well established in the Second Circuit that a plaintiff relying on this prong of the ADA must always prove that his employer regarded him or her as having an impairment that he or she did not have, regardless of whether the impairment was considered a disability under the ADA.  Jordan v. Forfeiture Support Assocs., 2013 U.S. Dist. LEXIS 31069 (E.D.N.Y. 2013).

The purpose of a "regarded as" claim is to prohibit decisions made based on myths, fears or stereotypes about a disability rather than making decisions based upon the actual condition or limitations of the individual him or herself.  See Sutton v. United Air Lines, 527 U.S. 471, 489-90 (1999).  For this reason, a threshold issue in a "regarded as" claim is that the plaintiff must prove that the employer perceived the plaintiff to have a disability that *he or she actually did not have.*  The EEOC regulations on point clearly show that an employee mistakenly perceived the plaintiff as disabled not only must show the employer perceived him or her as disabled, but must also show that the employer's perception is incorrect.  See 29 C.F.R. § 1630.2(l)(1).  Relying on these regulations, courts in this District have consistently held that plaintiffs must demonstrate that the employee did not have any disability at all, or a disability more mild that that perceived by the employer, in order to establish a "regarded as" case of disability discrimination.  See e.g.  Pierre v. North Shore Univ. Hosp., 2010 U.S. Dist. LEXIS 43963 (E.D.N.Y. 2010).

It is quite clear that the purpose of a "regarded as" claim is not to have a federal jury trial on whether one diagnosis or another is correct, or whether certain facts considered in reaching that diagnosis were more or less compelling than others, or whether the underlying facts provided to the employer were even true.  Instead, the focus is on what motivated the employer –

7

i.e. did it act purely on myths and fears about disability and stereotype the employee on one hand, or did it act after making a legitimate determination based on the review of the employee's individual factual circumstances on the other.   Kozisek v. County of Seward, 539 F.3d 930 (8th Cir. 2008).[2]

As set forth in Point III below, it is undisputed that there is a individualized, factual basis for each plaintiff's referral to the CSU and for the CSU's diagnosis of each plaintiff. Because the NYPD acted on an assessment conducted by professionals who based their judgments on the fact of each plaintiffs' case, plaintiffs cannot establish that they were falsely perceived as disabled and therefore are unable to establish a *prima facie* case of disability discrimination.

### C.  Plaintiffs Cannot Established they were "Disabled" within the Meaning of the NYSHRL or NYCHRL

Plaintiffs are additionally not covered under either the NYHRL or the NYCHRL because they were not seeking recovery at the time of their referral to treatment.   While, alcoholism is a protected disability under state and local law, the statutes provide only limited protections and neither statute protects alcoholics who are not rehabilitating or seeking recovery. See, e.g., N.Y. EXEC. LAW § 292(21); N.Y.C. Admin. Code § 8-102(16)(c) (protecting recovering or recovered alcoholics only); McEniry v. Landi, 84 N.Y.2d 554, 558-59 (1994) (interpreting Mental Hygiene Law and NYHRL to hold that alcoholism is a disability under the Human Rights Law); Sills v. Kerik, 5 A.D.3d 247, 289 (1st Dep't 2004) (stating that alcoholism is a disability under NYHRL); Burka v. N.Y. City Trans. Auth., 680 F. Supp. 590, 601 (S.D.N.Y. 1988)

---

[2] For the same reason, plaintiffs cannot establish the fourth prong of their *prima facie* claim of discrimination.  There can be no dispute that defendants acted on specific individualized facts of each plaintiff's case, not any discriminatory stereotypes about disability, in making their decisions concerning plaintiffs.

(holding that Section 296 protects alcoholic workers who are rehabilitated or in rehabilitation). In fact, the NYCHRL expressly contains the requirement that an alcoholic be rehabilitating or seeking recovery in order to be "disabled." N.Y.C. ADMIN. CODE. § 8-102(16)(c).

Consequently, the state and local statutes do not cover plaintiffs who allege they were perceived as alcoholics uninterested in recovery. In Riddick v. City of New York, 4 A.D.3d 242 (1st Dep't 2004), the First Department interpreted the McEniry ruling as only protecting rehabilitated or rehabilitating alcoholics from retroactive punishment. 4 A.D.3d at 245-46. Similarly, in Sills v. Kerik, 5 A.D.3d 247 (1st Dep't 2004), the First Department dismissed a plaintiff's NYHRL claim because he failed to "allege that he was seeking rehabilitation at the time of his termination," removing him from the protective scope of the statute. 5 A.D.3d at 289. Therefore, although the NYHRL protects alcoholics as "disabled," it only does so if the employee is rehabilitated or rehabilitating at the time of his adverse employment action. See Flores v. Doherty, 71 A.D.3d 405 (1st Dep't 2010).

As set forth above, the plaintiffs were not alcoholics seeking recovery, nor were they incorrectly perceived as such. Thus, they are not covered under the NYCHRL and NYSHRL and their claims must be dismissed. See e.g. North Shore Univ. Hosp. v. Rosa, 194 A.D.2d 727, 729 (2d Dep't. 1993)(Petitioner's status as "a person erroneously thought to be [an alcoholic] should not afford him any rights or privileges superior to those which the law affords to a person who is actually [alcoholic]").

**D.     Plaintiffs Cannot Establish that They Suffered an Adverse Employment Action Because of Their Alleged Disability**

Plaintiffs have also failed to present sufficient evidence demonstrating that they suffered an adverse employment action as a result of their alleged disability. This branch of the

prima facie case is analyzed the same under the ADA and state law. See, e.g., Weinstock v. Columbia Univ., 224 F.3d 33, 42 n.1 (2d Cir. 2000); Lester v. M&M Knopf Auto Parts, No. 04 Civ. 850S, 2006 U.S. Dist. LEXIS 70371 at *24 (W.D.N.Y. Sept. 28, 2006); Forrest v. Jewish Guild for the Blind, 3 N.Y.3d 295, 305 n. 3 (2004); Ayromlooi v. St. Luke's-Roosevelt Hosp. Ctr., No. 123376/00, 2005 N.Y. Misc. LEXIS 1919 at *3-4 (Sup. Ct. N.Y. County July 18, 2005).  Plaintiffs must establish a causal relation or connection between the alleged adverse employment action and their disability.  See, e.g., Pace, 107 F. Supp. 2d at 262-63; Distasio v. Perkin Elmer Corp., 157 F.3d 55, 66 (2d Cir. 1998); Matthias v. Ready Workers Mgmt. Corp., No. 08 Civ. 7245 (PAC), 2009 U.S. Dist. LEXIS 85677 at *14-15 (S.D.N.Y. Sept. 22, 2009); Forrest, 3 N.Y.3d at 390-91, 393 (requiring a "causal relationship" between discrimination and adverse employment showing that latter "occurred under circumstances giving rise to an inference of discrimination").  The focus is on the plaintiff's status (i.e., alcoholism) at the time of the adverse employment action.  McEniry, 84 N.Y.2d at 560; Riddick, 4 A.D.3d at 246.

Plaintiffs have the burden of proving under federal and state law that they did in fact suffer an adverse employment action as a result of their disability.  To do so, plaintiffs must show that each plaintiff had a change in the terms and conditions of his or her employment that is more disruptive than a mere inconvenience or an alteration of job responsibilities.  See Simmons-Grant v. Quinn Emanuel Urquhart & Sullivan, LLP, 2013 U.S. Dist. LEXIS 969, at *13 (S.D.N.Y. January 2013), citing Galabya v. New York City Bd. of Educ., 202 F.3d 636, 640 (2d Cir. 2000).  Such "materially adverse" change is defined as  an action that action that "must result in a change in responsibilities so significant as to constitute a setback to the plaintiff's career."  Id. (internal quotations and citations omitted).  Threats of discipline, suspension and the like are not considered adverse employment action.

10

PROPOSED REDACTIONS

### (i) Plaintiff █████ Did not Suffer Any Adverse Employment Action

Perhaps the most egregious example of plaintiffs' failure to put forth evidence of an adverse employment action relates to ████████████████████████████ "A shift change, without anything else . . . is insufficient to establish an adverse employment action." DiBrino v. Dep't of Veteran's Affairs, 118 Fed. Appx. 533, 535 (2d Cir. 2004) (internal quotations omitted); accord Pacheco v. N.Y. Presbyterian Hosp., 593 F. Supp. 2d 599, 618 (S.D.N.Y. 2009) ("Plaintiff's transfer out of [his] unit resulted in no change in pay, benefits, or bargaining unit seniority."); Watson v. Paulson, 578 F. Supp. 2d 554, 563 (S.D.N.Y. 2008) ("A transfer that is truly lateral and involves no significant changes in an employee's conditions of employment is not an adverse employment action regardless of whether the employee views the transfer negatively.").

████████████████████████████████████████ Local Rule 56.1 Statement ¶¶209-210.   Plaintiff Nardini remained on full duty status and her pay and duties remained the same.   Local Rule 56.1 Statement ¶211.   Thus, there is no evidence that this slight and temporary change in Nardini's schedule had any "lasting harm [on her] ability to do [her] job."   See Mathirampuzha v. Potter, 548 F.3d 70,  Any feelings of inconvenience attendant to traveling to the CSU once-a-week for this brief period, do not rise to an actionable adverse employment action. See Simmons-Grant,

11

2013 U.S. Dist. LEXIS 969, at *13  (S.D.N.Y. January  2013); <u>Watson v</u>, 578 F. Supp. 2d at 563 (S.D.N.Y. 2008).[3]

### (ii) Plaintiff Makinen's Decision to Retire Was not a Constructive Discharge

Similarly, plaintiff Makinen, who voluntarily retired from NYPD, claimed that her retirement was adverse because she was constructively discharged.  A constructive discharge, satisfying the third element of a *prima facie* case of discrimination, occurs when an employer deliberately makes an employee's working conditions so intolerable that the employee is forced into an involuntary resignation.  <u>See Pena v Battleboro Retreat</u>, 702 F.2d 322, 325 (2d Cir. 1983).  A plaintiff faces "a very high threshold" to prove her constructive discharge claim.  <u>See Crean v. CP Kelco</u>, 2004 U.S. Dist. LEXIS 12413, at * 11 (N.D.N.Y. July 6, 2004).  Constructive discharge cannot be proven "merely by evidence that an employee . . . preferred not to continue working for that employer . . . [or that] the employee's working conditions were difficult or unpleasant." <u>Madray v. Long Island Univ.</u>, 789 F. Supp. 2d 403, 409-10 (E.D.N.Y. 2011), quoting <u>Spence v. Maryland Cas. Co.</u>, 995 F.2d 1147, 1156 (2d Cir. 1993); <u>see also</u> <u>Stetson v. NYNEX Corp.</u>, 995 F.2d 355, 360-361 (2d Cir 1993) (unpleasant working conditions and employer criticism inadequate to show compelled departure).

In order to meet the very high threshold of a constructive discharge claim, a plaintiff must show "(1) that the employer acted deliberately or intentionally in bringing about the complained of work conditions, and (2) that the conditions were 'intolerable.'"  <u>Rogers v.</u>

---

[3]  Further, ███████████████████ ██████████████████████ is a clear example of the sorts of petty slights and trivial inconveniences that are not actionable even under the City Human Rights Law.  <u>Cf.</u> <u>Levitant v. City of New York Human Res. Admin.</u>, 2012 U.S. Dist. LEXIS 176836 at *36-38 (E.D.N.Y. 2012) (no reasonable jury could find suspension and delay in assignment is anything more than petty slights).

Roosevelt Union Free Sch. Dist., 2012 U.S. Dist. LEXIS 175385  (E.D.N.Y. 2012), citing

Petrosino v. Bell Atlantic, 385 F.3d 210, 229 (2d Cir. 2004).  Plaintiff Makinen cannot come

close to meeting either of these elements.

        First, plaintiff Makinen cannot establish the NYPD intended to create intolerable

working conditions as she freely admits that it was her ex-husband, not the defendants, that

caused the alleged conditions that motivated plaintiff to retire.  Exhibit 7 at pp. 17-18.  The

defendants investigated the claims brought by Makinen's ex-husband, as they are required to do,

and only took action when a factual basis supported their response.  Far from acting "deliberately

or intentionally" in concert with plaintiff's ex-husband, CSU did not trust plaintiff's ex-husband

and at least once determined his allegations were unfounded.  Local Rule 56.1 Statement ¶¶83-

91.  Thus, there "is no evidence that any of the actions by [NYPD] were intended to create

intolerable working conditions."  Butts v. N.Y. City Dep't of Hous. Preservation & Dev., 2007

U.S. Dist. LEXIS 6534 (S.D.N.Y. 2007), aff'd, Butts v. N.Y. City Dep't of Hous. Pres. & Dev.,

307 Fed. Appx. 596 (2d Cir. 2009) (summary order).

        Additionally, even if attributable to the NYPD, plaintiff Makinen cannot

establish that the conditions of her employment were so intolerable that she had no choice but to

retire.  To the contrary, she continued to work in the allegedly intolerable conditions for *years*

until she reached 20 years of service and obtained a favorable pension.  Under such

circumstances, plaintiff is precluded from arguing that she was forced to leave the NYPD.  See

e.g. Epstein v. City of New York, 2009 U.S. Dist. LEXIS 68776 (S.D.N.Y. 2009) (no

constructive discharge when plaintiff waited to retire until he received a favorable twenty year

pension).  The simple fact that plaintiff Makinen was able to remain employed for years under

these conditions until her pension fully vested fatally undermines any constructive discharge claim.

### (iii) Participation in the CSU Program is not an Adverse Employment Action



Such an employment action cannot be construed as anything but beneficial and thus those plaintiffs cannot claim they suffered an adverse employment action in connection with their diagnosis and treatment.

Because plaintiffs cannot establish a _prima_ _facie_ claim of discrimination, their disability discrimination claims must be dismissed.

### POINT III

**ASSUMING PLAINTIFFS CAN ESTABLISH A PRIMA FACIE CASE OF DISCRIMINATION, THEIR CLAIMS MUST BE DISMISSED BECAUSE DEFENDANTS HAVE ARTICULATED LEGITIMATE NON-DISCRIMINATORY REASONS FOR THEIR ACTIONS THAT CANNOT BE SHOWN TO BE PRETEXTUAL**

Even if plaintiffs could establish a _prima facie_ case of discrimination, their claims would nonetheless fail. After establishing a _prima faice_ case, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for its action. See, e.g., Stephenson v. Hotel Employees. & Rest. Employees. Union Local 1, 6 N.Y.3d 265, 270 (2006) (stating that Executive Law parallels Title VII); Mittl v. N.Y. State Div. Human Rights, 100 N.Y.2d 326, 330

(2003) (stating employer's burden is of production only; employee's burden is of production and persuasion). The employer can also show that the employee was incapable of performing his job in a reasonable manner with or without reasonable accommodation. <u>Roberts v. N.Y. State Dept. of Correctional Servs.</u>, 63 F. Supp. 2d 272, 291 (W.D.N.Y. 1999); <u>McEniry</u>, 84 N.Y.2d at 558 (stating that burden of proof shifts to employer to show legitimate, nondiscriminatory reason for its action *or* that employee was unable to perform duties in a reasonable manner at time of termination). Defendants bear a minimal burden of production, not of persuasion. <u>Reeves v. Sanderson Plumbing Prods.</u>, 530 U.S. 133, 142 (2000). The employer need only allege some fact allowing the "trier of fact to conclude that petitioner was fired because of" a legitimate, nondiscriminatory reason. <u>Id.</u> It is not for the court to second guess the employer's nondiscriminatory decisions. <u>Russell</u>, No. 07 Civ. 1686, 2010 U.S. Dist. LEXIS 14018 at *38-39.

## A. Defendants Have Articulated Legitimate, Non-Discriminatory Reasons for Their Actions in Each Case

As discussed above, all plaintiffs complain about being incorrectly diagnosed and "forced" to attend treatment for alcoholism under threat of suspension or termination. However, it is clear that the individual circumstances of each plaintiff provide a justification for their referral and evaluation by CSU. As discussed below, each plaintiff was referred to the CSU and offered treatment under circumstances that, despite each plaintiff's own denial, could lead to a determination that the plaintiff was suffering from alcohol dependence or abuse.

PROPOSED REDACTIONS





**B.** **Defendants Have Legitimate, Nondiscriminatory Reasons For Their Actions**

Where, as in the case of ████████████████, an employer has determined that an employee is unable to carry out his or her duties due to an alleged disability, the employer should provide an avenue to address that disability, such as referral to treatment or a "last chance agreement" that avoids termination so long as the employee seeks treatment.   If the employee fails to comply with the instructions of the employer, the latter is free to subject him to an adverse employment action.  See e.g. Mayo v. Columbia Univ., No. 01 Civ. 2002 (LMM), 2003 U.S. Dist. LEXIS 5639, at *19-20 (S.D.N.Y. April 7, 2003); Hinnershitz, 1998 U.S. Dist. LEXIS 20264, at *14-16; Wolfe v. Jurczynski, 241 A.D.2d 88, 90-91 (3d Dep't 1998).

Thus, the defendants' conduct in this case is precisely the sort of approach the disability discrimination laws would have an employer take toward a disabled employee.  As the Court in Wolfe explained:

> Because agreements such as the one at issue serve the salutary goals of encouraging rehabilitation and facilitating the nonjudicial settlement of disputes, there is no reason why the *Matter of McEniry* holding should be applied—as petitioner would have it—in a manner that would effectively preclude their enforcement.

Id. 91-92 (citation omitted).  Had those plaintiffs refused this opportunity, disobeying lawful orders of their supervisors in the process, the NYPD would have been justified in imposing discipline.  Such a decision, based upon the refusal to obey orders, not any alleged disability, would be legitimate and non-discriminatory.

████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████

███████████████████████████████████████████████████████

**C.    Plaintiff Cannot Establish That Defendant's Stated Reason for Their Actions Is False and that the True Reason Is Unlawful Discrimination**

███████████████████████████████████████████████████████ plaintiffs presented no evidence demonstrating that defendants' stated reasons for their adverse employment action is false and that the true reason is unlawful discrimination.    Where, as here, the defendant has provided a facially legitimate, nondiscriminatory reason for the adverse employment action or has shown that the employee is unable to perform the essential duties of the job in a reasonable manner, the burden shifts back to the plaintiff to prove by a preponderance of the evidence that the stated reason is a pretext to cover what is really disability discrimination.    <u>Pace</u>, 107 F. Supp. 2d at 263; <u>Roberts</u>, 63 F. Supp. 2d at 291.

Plaintiff must do more than simply say that the stated reason is false, however.    It is not enough for plaintiff to make the trier of fact disbelieve defendants.    <u>See</u> <u>Matthias</u>, 2009 U.S. Dist. LEXIS 85677, at *16; <u>Roberts</u>, 63 F. Supp. 2d at 291.    Plaintiff must prove that the stated reason is false and that the real reason for the employer's action is disability discrimination.    <u>St. Mary's Honor Ctr. v. Hicks</u>, 509 U.S. 502, 515 (1993); <u>Miller v. Yale-New Haven Hosp.</u>, No. 05 Civ. 00202 (PCD), 2006 U.S. Dist. LEXIS 73280 at *15 (D. Conn. Sept. 28, 2006); <u>Hawkins v. City Univ. of N.Y.</u>, 66 A.D.3d 553, 554 (1st Dep't 2009); <u>Edwards v. City of New York</u>, No. 03 Civ. 9407 (PAC), 2005 U.S. Dist. LEXIS 34376 (S.D.N.Y. Dec. 16, 2005) (plaintiff must offer more than his own "say so" to demonstrate pretext).

PROPOSED REDACTIONS

Plaintiffs cannot do so and therefore their discrimination claims must be dismissed.

## POINT IV

### PLAINTIFFS TORRES' AND MAKINEN'S FEDERAL AND STATE WAGE AND HOUR LAW CLAIMS MUST BE DISMISSED

Plaintiffs Torres and Makinen seek compensation for time spent undergoing substance abuse treatment, outside of their normal work hours, under circumstances in which they did not perform any normal policing duties. These claims are asserted under the Fair Labor Standards Act, 29 U.S.C. §§ 201 et seq. ("FLSA") and the New York Labor Law ("NYLL"). Such claims are not contemplated by these statutes and therefore must be dismissed.

**A.      The NYLL Does Not Apply to the City of New York or the NYPD**

As a threshold matter, "New York Labor Law § 190(3) provides that 'the term employer shall not include a governmental agency,' and the New York Police Department clearly is a governmental agency.  Estate of Hamilton v. City of New York, 627 F.3d 50, 57 (2d Cir. 2010).  Consequently, plaintiffs' state law wage and hour claims must be dismissed. See id.; see also El v. Potter, 2004 U.S. Dist. LEXIS 24447, *37 (S.D.N.Y. Dec. 6, 2004).  Plaintiffs appear to have conceded this point and do not dispute that their NYLL claims must be dismissed.

**B.      Any Claims That Accrued On or After October 7, 2009 Are Time Barred**

The FLSA "provides for a two-year statute of limitations unless the violations are 'willful,' in which case a three year statute of limitations applies."  Gustafason v. Bell Atl. Corp., 171 F. Supp. 2d 311, 322 (S.D.N.Y. 2001) (citing 29 U.S.C. § 255(a)).  "A cause of action under the FLSA for unpaid minimum wages . . . 'accrues' when the employer fails to pay the required compensation for any workweek at the regular pay day for the period in which the workweek ends." Edwards v. City of New York, 2011 U.S. Dist. LEXIS 97134, at *13 (S.D.N.Y. Aug. 26,

2011) (quoting 29 C.F.R. § 790.21(b)).  "The burden is on the employee to show willfulness." Young v. Cooper Cameron Corp., 586 F.3d 201, 207 (2d Cir. 2009).  Here, plaintiffs Torres and Makinen Plaintiffs neither pled nor proved willfulness and therefore cannot demonstrate entitlement to the three year statute of limitations reserved for willful violations.  Accordingly, any claims which accrued more than two years from the date plaintiff commenced this action are time-barred. See Edwards, 2011 U.S. Dist. LEXIS 97134 at *14-15.

"An employer willfully violates the FLSA only if it 'either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute.'"  Clarke v. J.P. Morgan Chase Bank, N.A., 2010 U.S. Dist. LEXIS 33264, at *27 (S.D.N.Y. Mar. 26, 2010), quoting McLaughlin v. Richland Shoe Co., 486 U.S. 128, 133 (1988)).  "Mere negligence is insufficient," to trigger the longer limitations period.  Young, 586 F.3d at 207.  The standard requires more than a showing that the defendant "knew the FLSA 'was in the picture' . . . . [as] it would be virtually impossible for an employer to show that he was unaware of the Act and its potential applicability."  McLaughlin, 486 U.S. at 129-30.  Rather, "reckless disregard involves actual knowledge of the legal requirement and deliberate disregard of the risk that one is in violation."  Clarke, 2010 U.S. Dist. LEXIS 33264, at *27; see also McClean v. Garage Mgmt. Corp., 2012 U.S. Dist. LEXIS 55425, at *18 (S.D.N.Y. Apr. 19, 2012) ("Recklessness is defined as, at the least, an extreme departure from the standards of ordinary care, to the extent that the danger was either known to the defendant or so obvious that the defendant must have been aware of it.") (internal quotations and alterations omitted).  Unless there is "evidence that defendants actually perceived the illegality" of their policies, there can be no finding of willfulness.  See Yourman v. Dinkins, 865 F. Supp. 154, 160 (S.D.N.Y. 1994).

Here, there is no evidence in the record that defendants had *actual* knowledge that their actions supposedly violated the FLSA.   Similarly, there is no evidence that defendants perceived any illegality in their actions or otherwise showed a reckless disregard for their obligations under the statute.   Accordingly, the applicable limitations period is two years and any claims that accrued on or before October 9, 2009 - two years prior to the commencement of this action - should be dismissed as time-barred.   See id.   This would include all claims regarding Makinen's 2007 referral and treatment and all of plaintiff Torres' claims.

**C.   Time Spent** ███████████████████ **is Not Compensable Work**

████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████ See Exhibit 52.   Time spent under these circumstances is not compensable for a simple reason: it cannot be reasonably construed as time spent "working" for the NYPD.   For this reasons plaintiffs Torres' and Makinen's claims under the FLSA should be dismissed.

"[T]he basic principal the underlies the FLSA [is that] [e]mployees are entitled to compensation only for 'work'" Reich v. New York City Transit Auth, 45 F.3d 646, 651 (2d Cir. 1995).   Under Second Circuit jurisprudence, an activity is not considered work under the FLSA unless it constitutes:

> exertion or loss of an employee's time that is (1) controlled or required by an employer, (2) pursued necessarily and primarily for the employer's benefit, and (3) if performed outside the scheduled work time, an integral and indispensable part of the employee's principal activities.

Chao v. Gotham Registry, Inc., 514 F.3d 280, 285 (2d Cir. 2008); accord Holzapfel v. Town of Newburgh, 145 F.3d 516, 522 (2d Cir.1998); Capasso v. Metro Transp. Auth., 198 F. Supp. 2d 452, 459 (S.D.N.Y. 2002). Activities that are not spent "primarily for the employer's benefit but rather [for an individual's] own" intention are not compensable under the FLSA. See Holzapfel v. Town of Newburgh, 145 F.3d at 522.

      In Capasso, a employee of the Metro North Police Department who suffered a work-related injury, sought compensation for time spent on sick leave under the FLSA. 198 F. Supp. 2d at 457-48. Under the defendant's sick leave policy, plaintiff continued to receive her full salary during the time she was on leave. Id. at 456. However, under that policy, plaintiff was limited to her sick location, in that case her home, and needed permission from her defendant employer to leave that location. Id. at 457. Plaintiff claimed that the time spent confined to her home was compensable under the FLSA because "it was required by [her employer] and because it primarily served defendant's interest in managing their sick leave policy." Id. at 459.

      The Capasso court dismissed plaintiff's claims under the FLSA. Id. at 460. The court reasoned that an officer that is sick and away from her duties "is not, under any reasonable interpretation of the word, working." See id. To state otherwise "overlooks obvious facts . . . that the officers [that] are 'sick and injured' are not fit to work and therefore are not working." The fact that plaintiffs were required to seek permission before leaving their home, did "not alter the . . . fact that the sick leave policy primarily benefit[ed] [the] plaintiff." Id.

      Here, as in Capasso, there is no dispute that plaintiffs are paid their regular salary during the time periods ████████████████████████████████████████████

23

Not only does CSU exist for the employees benefit by approaching alcohol abuse issues in a manner that prevents them from receiving harsher discipline and potentially even avoid separation from employment, but plaintiffs are also indisputably not performing any activities that are related to their principal duties as police officers. Consequently, time spent receiving alcohol abuse treatment is not compensable under the FLSA. See id.; see also Reich v. New York City Transit Auth, 45 F.3d at 651.

Further, plaintiffs' reliance on the Department of Labor regulations relating to attendance at lectures, meetings, and trainings, 29 C.F.R. § 785.27 is inapposite. To begin with, on its face, the provision of alcohol treatment is not susceptible to the definition of "trainings" contemplated by a plain reading of the regulation. Rather, the regulation contemplates lectures and trainings that are "related to the employee's job," which is not applicable to the circumstances of this case. See 29 C.F.R. § 785.27(c). Indeed, courts construing this regulation have adopted a common sense approach to its application. See Bienkowski v. Northeastern Univ., 285 F.3d 138, 141 (1st Cir. 2002) (declining to impose FLSA liability for a training required by an employer and "reject[ing] the notion that the training was integral and indispensible . . . simply because the employee could be terminated for failing to complete it"); Chao v. Tradesman Int'l, Inc., 310 F.3d 904, 910 (6th Cir. 2002) (holding that a time spent at an employer mandated training in which plaintiffs "perform[ed] no work while attending . . . [and] the subject matter was not directly related to their job skills" was not compensable under the FLSA).

Here, as in Bienkowski and Chao, the fact that plaintiffs may face potential disciplinary consequences if they do not cooperate with their substance abuse treatment does not

compel a finding that the time they spent in alcohol abuse treatment is compensable.  Plaintiffs

indisputably do not perform work that benefits the NYPD while they are in treatment and the

subject matter of their treatment does not directly relate to their job skills as police officers.  See

Chao, 310 F.3d at 910.  Simply put, the NYPD should not be penalized for offering substance

abuse treatment to its employees in an effort to rehabilitate them and assist them in returning to

full duty status.  See id.; Bienkowski, 285 F.3d at141.  For these reasons plaintiffs Torres' and

Makinen's claims under the FLSA should be dismissed.

## POINT V

### PLAINTIFFS STATE LAW TORT CLAIMS MUST BE DISMISSED FOR FAILURE TO FILE TIMELY AND ADEQUATE NOTICES OF CLAIM

Plaintiffs Torres and Makinen filed notices of claim with the New York City

Office of the Comptroller on May 13, 2011 and June 3, 2011 respectively.  Exhibit 4; Exhibit 5.

Because these notices claims were untimely, these plaintiffs' claims for negligence, defamation,

and breach of confidentiality[4] must be dismissed.

Pursuant to Sections 50-e and 50-i of New York General Municipal Law,

"plaintiffs asserting state tort law claims against a municipal entity or its employees acting in the

scope of employment must (1) file a notice of claim within ninety days after the incident giving

rise to the claim, and (2) commence the action within a year and ninety days from the date on

which the cause of action accrues."  Guentangue v. City of New York, 2011 U.S. Dist. LEXIS

---

[4] As discussed more fully below, section 18 of the Public Health Law does not provide for a private cause of action to remedy an alleged wrongful disclosure of an individual's private medical information.  Thus, to the extent that plaintiffs' may pursue any such claim, it must be grounded upon defendants' fiduciary duty to safeguard plaintiffs' medical information, a breach of which sounds in tort.  See e.g., Doe v. Cmty Health Plan – Kaiser Corp., 268 A.D.2d 183, 186-87 (3d Dep't 2000).

88262, *14-15 (S.D.N.Y. 2011) (internal quotations and alterations removed); see also Davidson v. Bronx Mun. Hosp., 64 N.Y.2d 59, 62 (1984) ("Service of a notice of claim - the contents of which are prescribed by section 50-e of the General Municipal Law and section 7401 of McKinney's Unconsolidated Laws of NY - is a condition precedent to a lawsuit against a municipal corporation"); Fitzgerald v. Lyons, 39 A.D.2d 473, 474 (4th Dep't 1972) ("Where a municipal employee is operating . . . within the scope of his employment at the time of [the alleged wrong] . . . the municipality is the real party defendant in interest and the provisions of sections 50-e and 50-i . . . are applicable."). These "[s]tate notice of claim requirements apply to state law claims regardless of whether those claims were brought in state or federal court." Gear v. Dep't of Educ., 2009 U.S. Dist. LEXIS 17885, at *15 (S.D.N.Y. Feb. 23, 2009) (citing Felder v. Casey, 487 U.S. 131 (1988)).   Accordingly, plaintiffs claims for negligence, defamation, and breach of confidentiality, all of which sound in tort, are subject to the General Municipal Law's notice of claim requirements.  See Moore v. New York City Dep't of Educ., 2004 U.S. Dist. LEXIS 5448, at *8 (S.D.N.Y. Mar. 31, 2004); Doe v. Cmty Health Plan – Kaiser Corp., 268 A.D.2d 183, 186-87 (3d Dep't 2000).

In New York State, Notice of Claim requirements are strictly construed.   Hardy v. New York City Health and Hosps. Corp., 164 F.3d 789, 793-94 (2d Cir. 1998).  Consequently, if a plaintiff fails to properly file a notice of claim, he or she will be deemed to have failed to satisfy a necessary condition to initiate his or her state law causes of action.  See McCullagh Co., Inc. v. S. Huntington Union Free Sch. Dist., 39 A.D.3d 480, 480-81 (2d Dep't 2007) (dismissing complaint for failure to comply with the Notice of Claim requirements of the Education Law § 3813).   Courts are without power to disregard failure to comply with notice of claim requirements, even to avoid a harsh result.  See Varsity Tr., Inc. v. Bd. of Educ. of City of New

York, 5 N.Y.3d 532, 536 (2005); see also PBS Building Sys, Inc. v. City of New York, 1996 U.S. Dist. LEXIS 15006, at *9 (S.D.N.Y. 1996).

Plaintiff Makinen negligence claim is apparently premised upon her allegation that the CSU misdiagnosed her in May of 2007.   Further, her claims regarding defamation and breach of confidentiality are premised upon  her allegations that the CSU discussed her issues with alcohol with other individuals, which according to her notice of claim, occurred in August of 2010.  Exhibit 4.   Since plaintiff Makinen served her notice or claim more than 90 days after her state law tort claims accrued, these claims must be dismissed.  See Varsity Tr., 5 N.Y.3d at 546; Harding v. Hernandez, 48 A.D.3d 252, 252-53 (1st Dep't 2008).

Plaintiff Torres' state law tort claims suffer from the same deficiency. ████████████ ████████████████████████████████████████████████████████████ ████████████████████████ Consequently, Torres' state law tort claims, which  arose more than 90 days before he served his untimely notice of claim, must be dismissed.  See Varsity Tr., 5 N.Y.3d at 546; Harding, 48 A.D.3d at 252-53 (1st Dep't 2008).[5]

---

[5] Plaintiffs cannot escape this result by arguing that their claims arose on dates or under circumstances not specified in their notices of claim.  A notice of claim must "correctly state the date and location of the incident" that a plaintiff alleges gives rise to the claim asserted.  See Rankine v. New York City Tr. Auth., 48 A.D.3d 659, 661 (2d Dep't 2008); see also Elliot v. County of Nassau, 53 A.D.3d 561, 563 (2d Dep't 2008) ("Contrary to the plaintiff's contention, she could not merely amend her notices of claim to reflect the actual accident date without leave of court."); Kasachkoff v. City of New York, 107 A.D.2d 130, 133 (1st Dep't 1985) ("A notice of claim that on a particular date, the time or approximate time not being specified, somewhere in the complex of buildings that constitute [defendant's situs], unnamed employees made defamatory statements" was not sufficient); Silverman v. City of New York, 2001 U.S. Dist. LEXIS 2631, at *23 (S.D.N.Y. Feb. 12, 2001) (Under New York law, "a notice of claim must provide the time of day that the allegedly defamatory statement was made, specify the exact location where the statement was made, and name the individuals who made the statement.").

## POINT VI

## PLAINTIFFS' DEFAMATION CLAIMS MUST BE DISMISSED

New York law requires a plaintiff to establish four elements to make out a claim for defamation:

> (1) a false statement about the plaintiff; (2) published to a third party without authorization or privilege; (3) through fault amounting to at least negligence on the part of the publisher; (4) that either constitutes defamation per se or caused 'special damages.'

Vaughn v. Am. Multi Cinema, Inc., 2010 U.S. Dist. LEXIS 96609, at *7 (S.D.N.Y. Sept. 11, 2010) (internal quotations and alterations omitted); accord Mark v. Brookdale Univ. Hosp. & Med. Ctr., 2005 U.S. Dist. LEXIS 12584, *61-62 (E.D.N.Y. June 22, 2005).

Plaintiffs defamation claims are apparently premised on Sergeant Sweeney and other CSU counselors' discussing plaintiffs issues with alcohol with "personnel at the [NYPD's] Lefrak Medical Division," and with individuals for whom they signed releases authorizing the CSU to conduct such discussions.   See Exhibit 1 (Compl) ¶ 202.   Plaintiffs, however, have not put forward any admissible evidence regarding the specific substance and content of these allegedly defamatory statements.   In any event, the allegedly defamatory statements that plaintiffs vaguely challenge do not provide any basis for their claims.

### A.     Plaintiffs' Defamation Claims Are Barred by the Statute of Limitations

As a threshold matter, any defamation claims that accrued more than on year and ninety days before plaintiffs commenced this action are barred by the statute of limitations set forth in the General Municipal Law.  Section 50-i of the General Municipal Law provides that an action must be commenced "within one year and ninety days after the happening of the event upon which the claim is based."  N.Y. Gen. Mun. Law 50-i. The statute of limitations for a

28

PROPOSED REDACTIONS

defamation claim begins to run from the date of the publication of the statement.  See Bachrach

v. Farbenfabriken Bayer AG, 42 A.D.2d 514, 515 (1st Dep't 1973).  The fact that the defamatory

statement "may not have been discovered until later" does not toll the statute of limitations.  See

Fleisher v. Inst. for Research in Hypnosis, 57 A.D.2d 535 (1st Dep't 1977); accord ACTV, Inc.

v. Walt Disney Co., 2002 U.S. Dist. LEXIS 8087, at *7 (S.D.N.Y. May 6, 2002).

      Plaintiffs commenced this action in New York State Supreme Court on October 7,

2011.  See Exhibit 3.  Accordingly, any allegedly defamatory statements that were published on

or before July 8, 2010 are time barred.  The statements that plaintiffs allege are defamatory are

apparently those made by CSU counselors to individuals at the NYPD Medical Division and to

those made individuals who the CSU when contacted to investigate plaintiffs' drinking habits.

See Exhibits 4-6.  Accordingly, plaintiff Torres' defamation claims are barred by the statute of

limitations provided by Section 50-i of the General Municipal Law and should be dismissed.  See

ACTV, Inc., 2002 U.S. Dist. LEXIS 8087, at *7.  Further, to the extent that plaintiff Nardini's

and plaintiff Makinen's claims are premised upon statements that were published on or before

July 8, 2010, those claims must also be dismissed.  See id.

## B.      The Challenged Statements Are Protected by Qualified Privilege

      New York courts "have long recognized that the public interest is served by

shielding certain communications, though possible defamatory, from litigation, rather than risk

stifling them altogether."  Liberman v. Gelstein, 80 N.Y.2d 429, 437 (1992).  Thus, "New York

recognizes a qualified privilege for allegedly defamatory statements made between persons who

share a common interest in the subject matter."  Vaughn, 2010 U.S. Dist. LEXIS 96609, at *7;

accord Liberman, 80 N.Y.2d at 437.  "[S]tatements made in the employment context concerning

the qualifications and actions of employees concerning the qualifications and actions of

employees" are protected by a qualified privilege.  Huntemann v. City of Yonkers, 1997 U.S. Dist. LEXIS 12714, at *23 (S.D.N.Y. Aug. 25, 1997); accord Vaughn, 2010 U.S. Dist. LEXIS 96609, at *8; Mark, 2005 U.S. Dist. LEXIS 12584, *3; Moore, 2004 U.S. Dist. LEXIS 5448, at *7; Sanderson v. Bellevue Maternity Hosp., Inc., 259 A.D.2d 888, 889-90 (3d Dep't 1999); Halegoua v. Doyle, 171 Misc. 2d 986, 989 (Sup Ct, New York County 1997).  This is because "[i]t is essential for the functioning of a[n] [organization] that an employer's agents . . . be free, within certain bounds, to communicate with it regarding the performance of persons in its employ."  Vaughn, 2010 U.S. Dist. LEXIS 96609, at *8. Statements made in this a context are not actionable unless they "were motivated by actual malice [meaning] ill-will, personal spite, or culpable recklessness or negligence."  Kasachkoff v. City of New York, 107 A.D.2d 130, 135 (1st Dep't 1985) (internal citations and alterations omitted); accord Huntemann, 1997 U.S. Dist. LEXIS 12714, at *25.

Here, to the extent that plaintiffs' defamation claims are premised upon statements that CSU counselors made to individuals in the NYPD's Medical Division, such statements are protected by the qualified common interest privilege.  First, both the CSU and the NYPD's Medical Division have an interest and a duty in an accurate assessment in the qualifications of police officers under their charge.  See Huntemann, 1997 U.S. Dist. LEXIS 12714, at *24 (holding that common interest privilege applies where "both the makers and the recipients of the statements had a common interest in achieving an accurate evaluation of plaintiff's capabilities as a law enforcement officer").  Moreover, both the CSU and the NYPD's Medical Division have an interest and a duty in protecting the public from a police officer whose judgments or abilities may be impaired by an issue with alcohol.  See Moore, 2004 U.S. Dist. LEXIS 5448, at *7 (holding that the common interest privilege applied to employees of the

Department of Education given their common interest in student safety).   Nor is there any evidence in the record that any of the challenged statements were made with ill-will or a reckless disregard for their accuracy.   Accordingly, such communications do not provide a basis for plaintiffs claims of defamation and plaintiffs should be dismissed.

## C.      Plaintiffs Have Waived Their Defamation Claims

Finally, to the extent that plaintiffs' defamation claims are based upon the discussions that CSU counselors had with individuals whom plaintiffs identified to the CSU as having information about their drinking habits, such claims are barred by the doctrine of waiver. "It is well-settled in the state of New York that [a] release provides a complete defense" a claim of defamation.  Johnson v. Univ. of Rochester Med. Ctr., 686 F. Supp. 2d 259, 271 (W.D.N.Y. 2010).  Where a plaintiff authorizes the publication of a statement, "such consent has been held to bar a defamation claim in New York." Hirschfeld v. Institutional Investor, Inc., 260 A.D.2d 171, 172 (1st Dep't 1999); see Huntemann, 1997 U.S. Dist. LEXIS 12714, at *34 ("By signing the authorization forms . . . plaintiff has clearly waived any claims that he might have regarding statements made by [his former employer] in connection with the background investigation."); LeBreton v. Weiss, 256 A.D.2d 47 (1st Dep't 1998) (plaintiff consented to the publication of statements made by a former landlord where  he "had two individuals contact defendant 'under the pretense of being landlords' and had them make certain inquiries to which defendant responded by making the defamatory statements").  Plaintiffs signed authorizations enabling CSU counselors to contact and inquire about their drinking habits with selected individuals. Exhibits 16, 23, 26, 35 and 45.  As a result, any defamation claims premised upon these conversations are barred by the doctrine of waiver.   See Hirschfeld, 260 A.D.2d at 172; Huntemann, 1997 U.S. Dist. LEXIS 12714, at *34.

PROPOSED REDACTIONS

## POINT VII

### PLAINTIFF'S        BREACH        OF CONFIDENTIALITY   CLAIMS   MUST   BE DISMISSED

As a threshold matter, to the extent that plaintiffs seek to assert a cause of action based upon an alleged violation of Section 18 of Public Health Law, such a claim is without merit.   "Although the statutes and regulations requiring physicians . . . to protect the confidentiality of patient information . . . clearly express the State's public policy, they do not constitute a basis upon which plaintiff may maintain a cause of action." Doe v. Guthrie Clinic, Ltd., 2013 U.S. App. LEXIS 5935, at *9-10 n.3 (2d Cir. 2013) (citing Lightman v. Flaum, 97 N.Y.2d 128, 135 (2001) ("[S]tatutory privileges are not themselves the source of fiduciary duties but are merely reflections of the public policy of this State."); see also Doe v. Cmty Health Plan – Kaiser Corp., 268 A.D.2d 183, 186-87 (3d Dep't 2000); MacDonald v. Clinger, 84 A.D.2d 482, 484 (4th Dep't 1982).  Accordingly, plaintiffs' sixth cause of action under the Public Health Law must be dismissed.  See id.

Thus, to the extent that plaintiffs may assert a claim for the disclosure of their counseling information, it must be premised upon the common law duty "not to disclose confidential patient information that is inherent in the physician patient relationship, the breach of which is actionable as a tort." See Cmty Health Plan, 268 A.D.2d 186-87; accord Guthrie Clinic, Ltd., 2013 U.S. App. LEXIS 5935, at *8-9; MacDonald, 84 A.D.2d at 486.  "Such a duty, however, is not absolute, and its breach is actionable only it is wrongful, that is to say, without justification or excuse." MacDonald, 84 A.D.2d at 487.  "Thus, where a patient may be danger to himself or others, a physician is required to disclose to the extent necessary to protect the threatened interest." Id. (internal citations omitted); see also Clark v. Geraci, 29 Misc. 2d 791, 793 (Sup Ct, Kings County 1960) (explaining that a doctor has a duty to disclose a patient's

32

information "to safeguard the security of the Government or the safety of the public"). Further, there is no breach of the duty where a patient has waived or consented to the disclosure of his or her information. See id.

To begin with, since a breach of the duty not to disclose confidential patient information sounds in tort, it is subject to the one year and ninety day statute of limitations set forth in Section 50-i of the General Municipal Law. A claim for the breach of this duty accrues on the date that the unauthorized disclosure takes place. See Harley v. Druzba, 169 A.D.2d 1001, 1001 (3d Dep't 1991); Tighe v. Ginsberg, 146 A.D.2d 268, 272 (4th Dep't 1989). Accordingly, any alleged breach of confidential information that occurred on or before July 8, 2010, one year and ninety days from the date that plaintiffs commenced this action, are time barred. See id., N.Y. Gen. Mun. Law § 50-i.

In any event, to the extent that plaintiffs claims are not barred by the statue of limitations they are without merit. Plaintiffs claims are apparently premised upon the disclosure of their information to individuals who they authorized the CSU to discuss their drinking habits and to individuals in the NYPD's Medical Division. See Exhibits 4-. For example, plaintiff Nardini identified her ex-boyfriend's sister, Tracy Eiseman Sinatra, as an individual to whom the CSU disclosed her confidential information. See Local Rule 56.1 Statement ¶199. However, plaintiff Nardini, like all plaintiffs in this case, signed releases that explicitly authorized the CSU to discuss her drinking behavior with these individuals. See Exhibit 45. Accordingly, such "disclosure" does not give rise to a cause action because it was authorized by plaintiffs. See MacDonald, 84 A.D.2d at 487; Clark, 29 Misc. 2d at 793-94.

Moreover, to the extent that the CSU allegedly disclosed confidential information to individuals at the NYPD's Medical Division, such conduct does not constitute an actionable

breach.   First, the CSU works with the NYPD's Medical Division in its treatment of NYPD employees.   Local Rule 56.1 Statement ¶13.   As a result, the discussions that the CSU has with individuals from the Medical Division regarding their treatment of NYPD employees does not constitute a disclosure that is contemplated by a New York state common law duty.   Further, even if such discussions could constitute a disclosure of patient information, they would not be wrongful and therefore would not constitute a breach of duty.   Given the "safety-sensitive" nature of a police officers job functions, the CSU has a duty to the public and to the NYPD to disclose an officer's potential issues with alcohol to the Medical Division.   See Brennan, 1997 U.S. Dist. LEXIS 23193 at *17-18; see also MacDonald, 84 A.D.2d at 487; Clark, 29 Misc. 2d at 793-94 (explaining that a doctor had a potential duty to disclose that the absences of a civilian employee of the United States Air Force was due to his alcoholism).   Accordingly, plaintiffs' claims for the CSU's breach of their duty of confidentiality should be dismissed.

### POINT VIII

### PLAINTIFFS' NEGLIGENCE CLAIMS MUST BE DISMISSED

In their eleventh cause of action, plaintiffs assert a claim solely against Sergeant Daniel Sweeney negligence.   Plaintiffs' theory appears to be one of negligent supervision, claiming that under his supervision, CSU breached an alleged duty of care to plaintiffs by "misdiagnosing" them and allegedly breached their confidentiality.   Those claims are flawed for a number of reasons and must be dismissed.

**A.      Plaintiff's Negligence Claims are Barred By the Statute of Limitations and Their Failure to File Timely Notices of Claim**

In addition to being barred by their failure to file timely notices of claim, all of plaintiff Torres' negligence claims and some of plaintiff Makinen's negligence claims are time barred as a result of plaintiffs' failure to file commence this suit within the one year and 90 day

34

statute of limitation applicable to such claims.  General Municipal Law §§50-e and 50-i.  This action was commenced on October 7, 2011 and any claim that accrued prior to July 8, 2010 is time barred.  This would include any claim for an allegedly negligent misdiagnosis of Angel Torres in March 2009 and an allegedly negligent misdiagnosis of Kathleen Makinen in 2007.

**B.    Sergeant Sweeney is Entitled to Governmental Immunity**

However, even assuming that the negligence claims were timely, that Sergeant Sweeney was somehow negligent and his alleged negligence was the proximate cause of any injuries, Sergeant Sweeney nonetheless is entitled to governmental immunity.  "A municipal defendant generally is not answerable in damages for the injurious consequences of official action involving the exercise of discretion or expert judgment in policy matters, and is not exclusively ministerial."  Amodio v. City of New York, 33 A.D.3d 456 (1st Dept. 2006).

Such determinations are undeniably discretionary and governmental functions.  The gravamen of this action is a challenge of the CSU's exercise of their expertise and their discretion as governmental employees.   The law is clear that Sergeant Sweeny is entitled to immunity when performing those functions.

As explained by the Court of Appeals:

> Unquestionably, the responsibilities of [Sergeant Sweeney] for investigating and evaluating the [fitness and counseling needs] of police officer[s] and making the recommendations and final decisions . . . entailed the exercise of some judgment and discretion. We have no difficulty in concluding that these functions and duties were sufficiently discretionary to call for immunity. Haddock v City of New York (supra) supports this conclusion.

35

PROPOSED REDACTIONS

Mon v. New York, 78 N.Y.2d 309, 313-314 (1991).

Like the municipal defendants in Mon, "because the essence of [plaintiff's] [negligence] claims is the allegedly mistaken exercise of discretion" by the individual defendant, Sergeant Sweeney protected from "liability therefore under the doctrine of governmental immunity." Mon, 78 N.Y.2d at 313. As such, these claims must be dismissed.

**C.      Plaintiff's Negligence Claims Fail on their Merits**

Finally, plaintiff's negligence claims fail on their merits. Plaintiffs cannot establish that Sergeant Sweeney breached any duty to them.

Thus, plaintiff's negligence claims must be dismissed.

## POINT IX

### PLAINTIFF'S PURPORTED EXPERT REPORT IS INADMISSIBLE AND SHOULD NOT BE ACCORDED ANY WEIGHT

Plaintiff, in opposing the defendants' summary judgment motion, will attempt to offer an irrelevant and inadmissible expert report, that is neither reliable nor probative. For the reasons set forth below, the Court should exclude the report when considering defendants' summary judgment motion.

**A.      Standard For The Admissibility of Expert Scientific Evidence**

Rule 702 of the Federal Rules of Evidence, which governs the admissibility of expert and other scientific or technical expert testimony, provides as follows:

> scientific, technical, or other specialized knowledge
> will assist the trier of fact to understand the
> evidence or to determine a fact in issue, a witness
> qualified as an expert by knowledge, skill,
> experience, training, or education, may testify
> thereto in the form of an opinion or otherwise, if (1)
> the testimony is based upon sufficient facts or data,
> (2) the testimony is the product of reliable
> principles and methods, and (3) the witness has
> applied the principles and methods reliably to the
> facts of the case.

Fed. R. Evid. 702.  In <u>Daubert v. Merrell Dow Pharmaceuticals, Inc.</u>, 509 U.S. 579(1993), the

Supreme Court made clear the district court has a "gatekeeping" function under Rule 702.  In

other words,  it is charged with "the task of ensuring that an expert's testimony both rests on a

reliable foundation and is relevant to the task at hand."  <u>Id.</u> at 597; <u>accord</u> <u>Amorgianos v.</u>

<u>Amtrak</u>, 303 F.3d 256, 265 (2d Cir. N.Y. 2002).

     In <u>Amorgianos</u>, the Second Circuit interpreted the Supreme Court's holding in

<u>Daubert</u>, and explained that:

> In fulfilling this gatekeeping role, the trial court
> should look to the standards of Rule 401 in
> analyzing whether proffered expert testimony is
> relevant, i.e., whether it has any tendency to make
> the existence of any fact that is of consequence to
> the determination of the action more probable or
> less probable than it would be without the evidence.
> Next, the district court must determine whether the
> proffered testimony has a sufficiently reliable
> foundation to permit it to be considered.  In this
> inquiry, the district court should consider the indicia
> of reliability identified in Rule 702, namely, (1) that
> the testimony is grounded on sufficient facts or
> data; (2) that the testimony is the product of reliable
> principles and methods; and (3) that the witness has
> applied the principles and methods reliably to the
> facts of the case.  In short, the district court must
> make certain that an expert, whether basing
> testimony upon professional studies or personal
> experience, employs in the courtroom the same

PROPOSED REDACTIONS

> level of intellectual rigor that characterizes the
> practice of an expert in the relevant field.

303 F.3d at 265-66 (internal citations and quotations omitted).

As shown below, the plaintiffs' expert report is flawed on many levels, as it relies on different data than the CSU relied on, relies on facts that are demonstrably incorrect and draws conclusions that are belied by the undisputed record before the Court. On a more fundamental level, the report is inadmissible because it is not relevant to any material issues, and would not assist the trier of fact "to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702.

**B.     Application – The Report Does Not Meet the <u>Daubert</u> Standard and is Irrelevant**

**a.  The Report Is Irrelevant**



PROPOSED REDACTIONS



**b.  The Report Fails to Meet the Most Basic Requirements of <u>Daubert</u>**

Assuming, <u>arguendo</u>, that the report met the threshold relevancy requirement, the report should nevertheless be excluded on summary judgment, because it is woefully inadequate, incomplete, and unreliable.   First, many aspects of the Dr. Francis' conclusions are not "grounded on sufficient facts."   In addition to ignoring much of the data the CSU relied on, the expert did not reliably engage in an independent and intellectually honest review of the CSU's findings, often misstating critical facts and resorting to unjustified hyperbole and exaggeration.[6]

PROPOSED REDACTIONS



---

[8] Plaintiffs have been unable to produce a clearer copy of this document to defendants.



Dr. Francis claimed the information he reviewed showed the CSU to be a "grinding machine where everyone gets the same approach." Exhibit 62 at pp. 70-71  Dr. Francis claimed that, to him, it appeared "no matter what is going on with [the client, he or she] will get **the same diagnosis and the same treatment as everyone else**." Id. at p. 70.

Dr. Francis' conclusion is demonstrably false.

<span style="color:red">PROPOSED REDACTIONS</span>



Dr. Francis' characterization of the CSU as a "grinding machine" that issues the same diagnosis to everyone required him to disregard or ignore these undisputed facts.

Whether Dr. Francis is intentionally misstating facts to support a conclusion he was paid to reach or whether he was just careless in his review of the facts is of no moment.[9]  The fact remains that his conclusions about how the CSU operates demonstrate a striking lack of understanding of the undisputed material facts and underscore the unreliable nature of Dr. Francis' analysis.

While there is no doubt that Dr. Francis has the education and experience to properly assess plaintiffs and analyze defendants' assessment, Dr. Francis' analysis in this case

43

presents a classic example of the old axiom of "garbage in, garbage out", or "GIGO."[10]   As detailed above Dr. Francis' conclusion is hopelessly tainted by facts that are demonstrably incorrect and erroneous assumptions that would have been apparent with a more careful analysis. Moreover, by often parroting what the plaintiffs told him and finding information credible by relying on hand-picked friends and relatives whose source of information was often the plaintiffs themselves, Dr. Francis' so-called independent analysis became nothing more than an inaccurate, unchecked echo chamber of the plaintiffs.   For all of these reasons, Dr. Francis' report is unreliable and must be excluded.   See e.g. Argus, Inc. v. Eastman Kodak Co., 612 F. Supp. 904, 926 (S.D.N.Y. 1985) *affirmed* 801 F.2d 38 (2d Cir. N.Y. 1986) ; *Cert. denied* 479 U.S. 1088 (U.S. 1987) ("Dr. Warwick **based his opinion on the conclusory statements of management, and not on his independent evaluation of the facts**. The speculative and conclusory testimony of Dr. Warwick is of little worth to a jury and his conclusions must be excluded to avoid confusion.") (emphasis added); CIT Group/Business Credit, Inc. v. Graco Fishing & Rental, 815 F. Supp. 2d 673 (S.D.N.Y. 2012) (rejecting expert report who grounded an opinion, in part, on conclusory statements of the offering party); Arista Records LLC v. Usenet.com, Inc., 608 F. Supp. 2d 409 (S.D.N.Y. 2009) (holding expert report inadmissible under Daubert where, as here, the expert merely restates the views of one of the parties);   Gary Price Studios, Inc. v. Randolph Rose Collection, Inc., 2006 U.S. Dist. LEXIS 28968, (S.D.N.Y. 2006) (ruling an expert report inadmissible where, *inter alia*, the expert assumed that the version of facts provided to him by plaintiff was correct and therefore the expert would simply parrot the claims of plaintiffs at trial);

---

[10] United States v. Coriaty, 300 F.3d 244, 256 n.8 (2d Cir. 2002)("Often abbreviated as GIGO, ['garbage in, garbage out'] is a famous computer axiom meaning that if invalid data is entered into a system, the resulting output will also be invalid. Although originally applied to computer software, the axiom holds true for all systems, including, for example, decision-making systems.") (internal citations and quotations omitted).

Supply & Bldg. Co. v. Estee Lauder Int'l, Inc., 2001 U.S. Dist. LEXIS 20737 (S.D.N.Y. 2001)

(citing Argus and holding that assumptions based on conclusory statements of a party, rather

than the expert's own independent evaluation, is inadmissible).

PROPOSED REDACTIONS

## CONCLUSION

For the foregoing reasons, defendants respectfully request that this Court grant defendants' motion for summary judgment and dismiss the complaint in its entirety, with costs, disbursements and such other and further relief as the Court deems just and proper.

Dated:     New York, New York
           May 6, 2013

                                        MICHAEL A. CARDOZO
                                        Corporation Counsel of the
                                            City of New York
                                        Attorney for Defendants
                                        100 Church Street, Room 2-100
                                        New York, New York 10007
                                        (212) 788-0885
                                        eeichenh@law.nyc.gov

                         By:     _____
                                 Eric Eichenholtz
                                 Benjamin Welikson
                                 Assistants Corporation Counsel

PROPOSED REDACTIONS

Docket No.  11 Civ. 7535 (ALC)(GWG)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

KATHLEEN MAKINEN, JAMIE NARDINI, and
ANGEL TORRES,

                                                    Plaintiffs,

                     -against-

CITY OF NEW YORK; RAYMOND W. KELLY, as
Police Commissioner of the City of New York; NEW
YORK CITY POLICE DEPARTMENT; and
SERGEANT DANIEL J. SWEENEY, individually and
in his official capacity,

                                            Defendants.

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT**

*MICHAEL A. CARDOZO*
*Corporation Counsel of the City of New York*
*Attorney for Defendants*
*100 Church Street*
*New York, N.Y.  10007*

*Of Counsel: Eric Eichenholtz,*
*Benjamin Welikson*

*Tel:  (212) 788-0885*
*Matter No. 2011-032141*