UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
————————————————————————

KATHLEEN MAKINEN and JAMIE NARDINI,

                Plaintiffs,

    - against –

CITY OF NEW YORK; RAYMOND W. KELLY,
as Police Commissioner of the City of New York;
and SERGEANT DANIEL J. SWEENEY,
individually and in his official capacity,

                Defendants.

————————————————————————

**PLAINTIFFS' PROPOSED
JURY INSTRUCTIONS**

11 Civ. 7535 (ALC/GWG)

      Plaintiffs **Kathleen Makinen** and **Jamie Nardini** respectfully submit the following proposed instructions to the jury for consideration by the Court, based upon the evidence plaintiffs expect will be presented at trial.  With the Court's permission, plaintiffs wish to reserve their right to amend or supplement these proposed instructions at the close of the evidence, if unanticipated factual or legal issues arise during the course of the trial.

DATED:  April 20, 2015

    Respectfully Submitted,

    **GLEASON, DUNN, WALSH & O'SHEA**
    Attorneys for Plaintiffs

    By   _s/ Lisa F. Joslin, Esq._
        **Lisa F. Joslin, Esq.  (LF 9245)**

    40 Beaver Street
    Albany, New York 12207
    Tel: (518) 432-7511
    Fax: (518) 432-5221

**Index of Proposed Instructions**

1.    Jury Attentiveness ....................................................................................... 1

2.    Role of the Court ........................................................................................ 2

3.    Role of the Jury .......................................................................................... 2

4.    Juror Oath .................................................................................................. 3

5.    Burden of Proof – Preponderance of the Evidence ................................... 3

6.    What Is and What Is Not Evidence ........................................................... 4

7.    Direct and Circumstantial Evidence ......................................................... 5

8.    Inferences ................................................................................................... 6

9.    Witness Credibility .................................................................................... 7

10.   Discrepancies in Testimony ....................................................................... 8

11.   Deposition Testimony ................................................................................ 9

12.   Interest in Outcome and Other Bias ........................................................ 10

13.   Expert Witnesses ...................................................................................... 10

14.   Plaintiffs' Claims – Generally .................................................................. 11

15.   Americans with Disabilities Act (ADA)
      and New York State Human Rights Law ................................................. 12

16.   Individual Liability Under the New York State Human Rights Law ............................ 14

17.   New York City Human Rights Law ......................................................... 15

18.   Individual Liability Under the New York City Human Rights Law ............................ 16

19.   Damages – Generally ............................................................................... 17

20.   Compensatory Damages – Emotional Distress ........................................ 17

21.   Compensatory Damages – Economic Loss .............................................. 19

22.    <u>Punitive Damages</u> ...................................................................................... 20

23.    <u>Taxation of Damages</u> ................................................................................. 21

## JURY INSTRUCTION NO. 1

### <u>Jury Attentiveness</u>

Ladies and gentlemen, before you begin your final duty, which is to deliberate and decide the factual issues in this case, I am going to instruct you on the law. You must pay close attention, and I will be as clear as possible. It has been obvious to me and counsel that until now you have faithfully discharged your duty to listen carefully and observe each witness who testified. You have followed the testimony with close attention, and I ask that you give that same attention now, as I instruct you on the law.

<u>Source</u>: L. Sand, J. Siffert, W. Loughlin, S. Reiss, S. Allen, and J. Rakoff, *Modern Federal Jury Instructions* (Civil), No. 71-1.

## JURY INSTRUCTION NO. 2

### <u>Role of the Court</u>

You have now heard all of the evidence in the case, as well as the final argument of the lawyers for the parties. My duty at this point is to instruct you as to the law. It is your duty to accept these instructions of law and apply them to the facts as you determine them, just as it has been my duty to preside over the trial and decide what testimony and evidence is relevant under the law for your consideration. On these legal matters, you must take the law as I give it to you. If any attorney has stated a legal principle different from any that I state to you in my instructions, it is my instructions that you must follow.

You should not single out any instruction as alone stating the law, but you should consider my instructions as a whole when you retire to deliberate in the jury room. You should not be concerned about the wisdom of any rule that I state. Regardless of any opinion that you

may have as to what the law may be – or ought to be – it would violate your sworn duty to base a verdict upon any other view of the law than that which I give you.

Source:  Adapted from *Modern Federal Jury Instructions* (Civil), No. 71-2, citing <u>Franks v. United States Lines Co.</u>, 324 F.2d 126 (2d Cir. 1963).

## JURY INSTRUCTION NO. 3

### <u>Role of the Jury</u>

As members of the jury, you are the sole and exclusive judges of the facts.  You pass upon the evidence, determine the credibility of the witnesses, and you resolve any conflicts you perceive in the testimony.  You draw whatever reasonable inferences you decide to draw from the facts as you have determined them, and you determine the weight of the evidence.

In determining these issues, no one may invade your province or functions as jurors.  In order for you to determine the facts, you must rely upon your own recollection of the evidence.  What the lawyers have said in their opening statements, closing arguments, objections, or in their questions is not evidence.  Nor is what I may have said about a fact in issue to be considered by you as evidence.  However, you should not consider any answer that I directed you to disregard, or that I directed to be struck from the record.

Since you are the sole and exclusive judges of the facts, I do not mean to indicate any opinion as to the facts of what your verdict should be.  The rulings I have made during the trial are not any indication of my views of what your decision should be.  The Court has no opinion as to the verdict you should render in this case.  As the exclusive judges of the facts, you are to perform the duty of finding the facts without bias or prejudice to any party.

Source:  Adapted from *Modern Federal Jury Instructions* (Civil), No. 71-3, citing <u>Hupp v. N.Y. & Cuba Mail S. S. Co.</u> (SDNY 1952) (Bond, J. jury charge).

**JURY INSTRUCTION NO. 4**

**<u>Juror Oath</u>**

In determining the facts, you are reminded that you took an oath to render judgment impartially and fairly, without prejudice or sympathy and without fear, solely upon the evidence in the case and applicable law.  I know that you will do this and reach a just and true verdict.

<u>Source</u>:  Adapted from *Modern Federal Jury Instructions* (Civil), No. 73-4.

**JURY INSTRUCTION NO. 5**

**<u>Burden of Proof – Preponderance of the Evidence</u>**

In a civil action, the burden of proof is on the plaintiffs to prove the essential elements of their claims by a preponderance of the credible evidence.  The defendants have the burden of proving, also by a preponderance of the credible evidence, all elements essential to their affirmative defenses.

To establish a fact by a "preponderance of the evidence" means to prove that the fact is more likely true than not true.  A preponderance of the evidence means the greater weight of the evidence, which refers to the quality and persuasiveness of the evidence, in other words – the weight and effect that it has on your minds.  It does not refer to the number of witnesses or documents presented.  In determining whether a claim has been proved by a preponderance of the evidence, you should consider the relevant testimony of all witnesses, regardless of who may have called them, and all of the relevant exhibits received in evidence, regardless of who may have produced them.  This rule does not require proof to an absolute certainty, since proof to that degree is seldom possible in any case.  Instead, this standard is met if there is a greater than fifty (50) percent chance that the proposition is true.  As long as you find on a given issue that the

scales tip, however slightly, in favor of the party with the burden of proof, then you must find for that party on that issue, as that issue will have been proved by a preponderance of the evidence.

The "credible evidence" means the testimony or exhibits that you find to be worthy to be believed. There are two types of evidence that you may consider in properly finding the truth as to the facts in the case. One is direct evidence—such as testimony of an eyewitness. The other is indirect or circumstantial evidence—the proof of a chain of circumstances that indicates the existence or nonexistence of certain other facts. As a general truth, the law makes no distinction between direct and circumstantial evidence, but simply requires that you find the facts from a preponderance of all evidence, both direct and circumstantial.

While you should consider only the evidence in this case, you are permitted to draw such reasonable inferences from testimony and exhibits as you feel are justified in the light of common experiences. In other words, you may make deductions and reach conclusions that reason and common sense lead you to draw from the facts that have been established by the testimony and evidence in the case.

Some of you may have heard of the standard "proof beyond a reasonable doubt," which is a proper standard of proof in a criminal trial. That standard does not apply in a civil case like this one, and you should not consider it here.

<u>Source</u>: Adapted from Devitt, Blackmar and Wolff, *Federal Jury Practice and Instructions,* Vol. 3, Section §72.01, 72.03, 72.04 (West 1987); and *Modern Federal Jury Instructions* (Civil), No. 73-2.

## JURY INSTRUCTION NO. 6

### <u>What Is and Is Not Evidence</u>

The evidence in this case is the sworn testimony of the witnesses, both during trial and at depositions, the exhibits received in evidence, and any facts which have been identified for you as either having been stipulated to by the parties, or having been judicially noted.  By contrast, the questions asked by the attorneys are not evidence, nor are the statements the attorneys made in their openings and summations.  What the attorneys said to you in their opening statements and in their summations was intended only to help you understand the evidence, but was not evidence itself.  Attorneys are not witnesses.  Similarly, any objections, or my rulings on those objections, also are not evidence.

Further, any testimony that has been stricken or excluded from the record, and any documents or other exhibits which have not been admitted into evidence, also are not evidence and are not to be considered by you in your deliberations, or in reaching your verdict in this case.

The attorneys, on cross-examination, may have incorporated into a question a statement which assumed certain facts to be true.  If the witness denied the truth of a statement, and if there is no direct evidence in the record proving that assumed fact to be true, then you may not consider it to be true simply because it was contained in the attorney's question.

Exhibits which have been marked for identification may not be considered by you as evidence until and unless they have been received in evidence by the Court.  To constitute evidence, exhibits must be received in evidence.  As such, exhibits marked for identification, but not admitted, are not evidence.

Finally, any statements which I may have made concerning the quality of the evidence do not constitute evidence.  It is for you alone to decide the weight, if any, to be given to the testimony you have heard and the exhibits you have seen.

Source:  Adapted from *Modern Federal Jury Instructions* (Civil), No. 74-1, citing <u>United States v. Aluminum Co. of Am.</u>, 1 F.R.D. 62 (SDNY 1939).

## JURY INSTRUCTION NO. 7

### <u>Direct and Circumstantial Evidence</u>

There are two types of evidence which you may properly use in reaching your verdict – direct and circumstantial evidence.  Direct evidence is when a witness testifies about something she knows by virtue of her own senses – something she has seen, felt, touched or heard.  Direct evidence may also be in the form of an exhibit, where the fact to be proved is its present existence or condition.

Circumstantial evidence is evidence which tends to prove a disputed fact by proof of other facts. There is a simple example of circumstantial evidence which is often used to illustrate this point.  Assume that when you came into the Courthouse this morning the sun was shining and it was a nice day.  Then, assume that the Courtroom blinds were drawn and you could not look outside.  As you were sitting here, someone walked in with an umbrella which was dripping wet, and then another person entered shortly thereafter with a wet umbrella.  Because you cannot look outside, you have no direct evidence of the weather.  But, based on the combination of facts which I asked you to assume, it would be reasonable and logical to conclude that it is or was raining.  So, with respect to circumstantial evidence, you infer on the basis of reason, experience and common sense from one established fact, the existence or non-existence of some other fact.

Circumstantial evidence is of equal value to direct evidence. The law generally makes no distinctions between direct and circumstantial evidence. It simply requires that your verdict be based upon a preponderance of all of the evidence, both direct and circumstantial, that has been presented.

Source: Adapted from *Modern Federal Jury Instructions* (Civil), No. 74-2, citing <u>Michalic v. Cleveland Tankers, Inc.</u>, 364 U.S. 325, 330 (1960).

## JURY INSTRUCTION NO. 8

### <u>Inferences</u>

You are to consider only the evidence presented in the case. But in your consideration of the evidence, you need not rely on or believe any bald statements, assertions or conjecture of the witnesses. In other words, you are not limited solely to what you see and hear as the witnesses testify. You are permitted to draw, from facts which you find have been proved, such reasonable inferences that seem justified in the light of your experience. An inference is not a suspicion or a guess. Inferences are deductions or conclusions which reason and common sense lead the jury to draw from facts which have been established by the evidence in the case.

Source: Devitt, Blackmar and Wolff, *Federal Jury Practice and Instructions*, Vol. 3 §104.20.

## JURY INSTRUCTION NO. 9

### <u>Witness Credibility</u>

You have now had the opportunity to observe all the witnesses, and it is time to decide how believable each witness was in his or her testimony. You are the sole judges of the credibility of each witness and of the important of his or her testimony. In making these judgments, you should carefully scrutinize all of the testimony of each witness, the

circumstances under which each witness testified, and any other matter in evidence which may help you decide the truth and importance of each witness's testimony.

There is no magic formula for weighing the credibility of the witnesses. You should use your good judgment, common sense, and life experiences as you deliberate. Your determination of a witness's credibility will depend in large part upon the impression that witness made upon you. Everything a witness said or did on the witness stand counts in your determination. You should consider the probability or improbability of the witness's testimony when viewed in the light of all of the other evidence in the case. The witness's demeanor, his or her relationship, if any, to the dispute or to one or the other of the parties, and any other potential bias or partiality, are also all factors in determining the witness's credibility.

If it appears that there is a discrepancy in the evidence, you will have to consider whether the apparent discrepancy may be reconciled by fitting the two versions of the story together. If that is not possible, you will then have to determine which of the conflicting versions you will accept. Use common sense, and rely on your experiences and good judgment.

<u>Source</u>:  Adapted from *Modern Federal Jury Instructions* (Civil), No. 76-1 and 76-2.

## JURY INSTRUCTION NO. 10

### <u>Discrepancies in Testimony</u>

In considering the evidence presented at trial, you may find that there were discrepancies a witness's testimony. If you do, that may be a basis to disbelieve a witness's testimony. If you find that any witness has willfully testified falsely as to any material matter, you have the right to reject the testimony of that witness in its entirety. On the other hand, discrepancies in a witness's testimony or between his or her testimony and that of others do not necessarily mean that the witness's entire testimony should be discredited. Therefore, even if you find that a

8

witness has testified falsely or inaccurately about one matter, you may reject as false or inaccurate that portion of his or her testimony and accept as true any other portion of his or her testimony.

People sometimes forget things, and even a truthful witness may be nervous and contradict himself. It is also a fact that two people witnessing an event will see or hear it differently. Whether a discrepancy pertains to a fact of importance or only to a trivial detail should be considered in weighing its significance; but a willful falsehood always is a matter of importance and should be considered seriously.

Additionally, a witness may be discredited, or "impeached," by a showing that at some earlier time, the witness said or did something which is consistent with the witness's testimony here at trial. It is for you to determine, first, whether the prior statement or act was indeed inconsistent with the witness's trial testimony, and if so, whether the inconsistency is significant or inconsequential. If you believe that a witness has been impeached, it is your exclusive province to give the testimony of that witness such credibility or weight, if any, as you may think it deserves. If you find that the witness made an earlier statement that now conflicts with the testimony that witness gave here at trial, you may accept (in part or in whole) the earlier testimony; you may accept (in part or in whole) the witness's testimony here at trial; or you may reject (in part or in whole) both the prior testimony and the testimony here at trial.

In making this determination, you may consider whether the witness purposefully made a false statement now or previously, or whether it was an innocent mistake; whether the inconsistency concerns an important fact or a small detail; and whether the witness had a credible explanation for the inconsistency. It is for you to decide, based on your total impression

of the witness, how to weigh any discrepancies in testimony.  Again, always use common sense

and your own good judgment.

 Source:  Adapted from *Modern Federal Jury Instructions* (Civil), No. 76-4 and 76-5; Sims v.
Blot, 354 Fed. Appx. 504 (2d Cir. 2009).

## JURY INSTRUCTION NO. 11

### Deposition Testimony

During the trial, certain testimony has been read to you from transcripts of depositions

taken at an earlier stage of the case.  Depositions are examinations of witnesses, under oath, by

one or more of the attorneys in the case before trial.  The attorney's questions, and the witness's

answers, are recorded by a stenographic reporter.   You should treat a witness's deposition

testimony the same as if that testimony had been given live here in court, and weigh and consider

it, and judge its credibility, using the same standards you would use with respect to any other

evidence.

Source:  Adapted from *Modern Federal Jury Instructions* (Civil), No. 74-14; PJI 1:25.

## JURY INSTRUCTION NO. 12

### Interest in the Outcome and Other Bias

In considering a witness's testimony, you should consider whether he or she has an

interest, or lack of interest, in the outcome of the case.  The plaintiffs and individual defendants,

for example, all have interests in how this case is decided.  As parties, they are all interested

witnesses.  Witnesses who are employed by the New York City Police Department also have

interests in how this case is decided.

An interested witness is not necessarily less believable than a disinterested witness, and

having an interest does not mean that the witness has not told the truth.  It is for you to decide

10

from the demeanor and testimony of each interested witness on the stand and such other tests as your experience dictates whether or not the testimony has been influenced, intentionally or unintentionally, by this interest. You may accept all, or as much of an interested witness's testimony as you find reliable, and you may reject as much as you fund unworthy of belief.

Source: Adapted from *Modern Federal Jury Instructions* (Civil), No. 76-2.

## JURY INSTRUCTION NO. 13

### Expert Witnesses

In this case, I have permitted Dr. Richard Frances to express his opinions about matters that are in issue, and about which he has special knowledge, skill, experience and training. Expert testimony is present to you on the theory that someone who is experienced and knowledgeable in the field can assist you in understanding the evidence or in reaching an independent decision on the facts. In weighing Dr. Frances' opinion, you many consider his qualifications, his opinions, the reasons for testifying, as well as all of the other considerations that ordinarily apply when you are deciding whether or not to believe a witness's testimony. You may give the opinion testimony whatever weight, if any, you find it deserves in light of all the evidence in this case. You should not, however, accept opinion testimony merely because I allowed the witness to testify concerning his opinion. Nor should you substitute it for your own reason, judgment and common sense. Determination of the facts in this case rests solely with you.

Source: Adapted from *Modern Federal Jury Instructions* (Civil), No. 76-9, citing Unites States v. Simon, 425 F.2d 796 (2d Cir. 1969).

## JURY INSTRUCTION NO. 14

### **Plaintiffs' Claims – Generally**

I am now going to tell you about the law that you will have to apply to the facts as you find them.  At the beginning of the trial, I gave you preliminary instructions on the law.  Now I will give you the final instructions.  To the extent that that there are any differences between the preliminary instructions that I gave at the beginning of the trial and these final instructions, the final instructions are controlling, meaning that these final instructions are the ones you must follow in your deliberations.

In this case, the claims brought by plaintiffs Kathleen Makinen and Jamie Nardini involve three different statutes - the federal Americans with Disabilities Act ("ADA"), the New York State Human Rights Law, and the New York City Human Rights Law.  All three statutes prohibit employers from discriminating against employees on the basis of a "perception" of disability.  In other words, an employee does not have to actually suffer from a disability, in order to find protection under these statutes. Rather, an employee is protected from discrimination that is based on the employer's mistaken belief that he or she suffers from a disability.  Alcoholism constitutes a "disability" under all three statutes.

The plaintiffs allege that the defendants discriminated against them at work on the basis of a false perception that they suffer from alcohol-related illnesses or disorders.  Defendants argue that plaintiffs were properly diagnosed as suffering from alcohol-related illnesses, and thus, cannot demonstrate unlawful discrimination.  Plaintiffs, on the other hand, deny that they suffer (or have ever suffered) from any alcohol-related illness, and argue that the defendants' false perception that they suffer from alcoholism resulted in unlawful discrimination in the terms and conditions of their employment.

12

The standards for applying these three laws to the facts of this case will be similar. However, the New York City Human Rights Law is intended to be more protective than the state and federal laws.

Source:  Americans with Disabilities Act, 42 U.S.C. §12101 *et seq*.; New York Executive Law §290 *et seq*.; Administrative Code of the City of New York §8-107; <u>Regional Economic Community Action Program, Inc. v. City of Middletown</u>, 294 F.3d 35, 46 (2d Cir. 2002) ("Alcoholism . . . is an impairment under the definitions of a disability set forth in the . . . ADA"); <u>Roberts v. New York State Dept. of Corrections</u>, 63 F. Supp. 2d 272, 290 (WDNY 1999) (acknowledging that alcoholism is considered a disability under the NYSHRL); <u>Wagner v. County of Nassau</u>, 11-CV-1613 (JS)(ARL), 2014 WL 3489747, at *5 n.3 (EDNY July 11, 2014) (noting, "The inquiry under the NYSHRL as it pertains to 'regarded as' claims is the same as that under the ADA"); <u>Morse v. JetBlue Airways Corp</u>., 941 F. Supp. 2d 274, 292 (EDNY 2013), quoting <u>Loeffler v. Staten Island Univ. Hosp.</u>, 582 F3d 268, 278 (2d Cir. 2009) (explaining that "similarly worded provisions of federal and state civil rights laws" are to be treated "as a floor below which the City's Human Rights law cannot fall").

## JURY INSTRUCTION NO. 15

### American with Disabilities Act ("ADA")
### and New York State Human Rights Law

In this case, plaintiff Kathleen Makinen brings claims against all three defendants under both the ADA and the New York State Human Rights Law.  The law requires that these claims be analyzed in the same fashion.

Ms. Makinen establishes her claims against defendants under the ADA and New York State Human Rights Law if she proves that: (1) defendants are subject to both statutes; (2) Ms. Makinen was perceived as suffering from a disability; (3) Ms. Makinen was qualified to perform the essential functions of her job; and (4) Ms. Makinen suffered an adverse employment action because of defendants' perception that she is disabled.

Certain of these elements to Ms. Makinen's claims are not in dispute here, and thus need not be determined.  With respect to the first element that defendants are subject to the statutes, the parties agree that the City of New York is subject to the provisions of the ADA, and that all

13

three defendants are subject to the provisions of the New York State Human Rights Law. As to the second element of her claims, the parties agree that defendants perceived Ms. Makinen as suffering from alcohol dependence, and that a perception of alcohol dependence is considered to be a perception of a "disability." Further, it has already been determined by the Court that Ms. Makinen's CSU treatment regimen constitutes an "adverse employment action." As a result, you need not determine any of these elements.

Rather, your determination will focus solely on the third element: whether Ms. Makinen was qualified to perform the essential functions of her job as a police officer.

Ms. Makinen can meet this element to her claim by proving by a preponderance of the credible evidence that she possesses the "basic skills necessary for the performance of [her] job." To meet this burden of proof, Ms. Makinen may show a history of successful performance in her police officer role.

Defendants can dispute this element regarding Ms. Makinen's qualifications by proving by a preponderance of the credible evidence that Ms. Makinen "posed a direct threat" to herself or others at work. This is defendants' burden of proof. Defendants cannot meet this burden by showing a "remote" or "slightly increased risk;" but instead, must demonstrate that Ms. Makinen posed "a significant risk of substantial harm" to the health or safety of herself or others. In order to prove that Ms. Makinen posed a "significant risk of substantial harm," defendants must prove that their determination was based upon an individualized, reasonable assessment, and that such assessment was based on current medical knowledge or the best available objective evidence. In determining whether Ms. Makinen posed a direct threat, you must consider: (i) how long the risk will last; (ii) the nature and severity of the potential harm; (iii) how likely it is that the harm will occur; and (iv) whether the potential harm is likely to occur in the near future.

If you find that Ms. Makinen was qualified to perform the essential functions of her job, and that defendant did not prove that she posed a direct threat to herself or others based upon an individualized, reasonable assessment using current medical knowledge or the best available objective evidence, then you must find in favor of Ms. Makinen on her claims under the ADA and the New York State Human Rights Law.

On the other hand, if you find that Ms. Makinen was not qualified to perform the essential functions of her job, or that defendant proved that she posed a direct threat based upon an individualized, reasonable assessment using current medical knowledge or the best available objective evidence, , then you must find in favor of the defendants on these claims.

Source:  Docket No. 64, at pp. 23-24; Americans with Disabilities Act, 42 U.S.C. §12111(8), §12113(a) and §12113(b); 29 CFR part 1630, §1630.2(r), §1630.2(l) and §1630.15(c); McMillan v. City of New York, 711 F.3d 120, 125-126 (2d Cir. 2013), quoting Sista v. CDC Ixis N. America, Inc., 445 F.3d 161, 169 (2d Cir. 2006); Stanley v. NYP Holdings, Inc. 358 F. Supp. 317, 323 (SDNY 2005); Stone v. City of Mount Vernon, 118 F.3d 92, 97 (2d Cir. 2009); Mattera v. JP Morgan Chase Corp., 740 F. Supp. 2d 561, 572 (SDNY 2010); Doe v. Deer Mountain Day Camp, Inc., 682 F. Supp. 324, 346 (SDNY 2010); Nelson v. City of New York, 11-CV2732, 2013 WL 4437224 (SDNY Aug. 19, 2013); Brennan v. N.Y.C. Police Dept., 93-CV-8461 (BSJ), 1997 WL 811543, at *4-*7 (SDNY May 27, 1997), aff'd 141 F.3d 1151 (2d Cir. 1998).

## JURY INSTRUCTION NO. 16

### Individual Liability Under the
### New York State Human Rights Law

Individual defendants may be found liable for discrimination under the New York State Human Rights Law in two different ways.  First, individuals may be held liable under the NYS statute as an "employer," if they "have any power to do more than carry out the personnel decisions made by others."  Examples of this type of authority include: the power to hire or fire employees; the power to discipline subordinates; control over subordinates' job duties and assignments; and/or control over the daily operations of the workplace.

15

If you find that defendant Sergeant Daniel Sweeney possessed this type of authority over employees of the NYPD, then you may find him personally liable for damages to Ms. Makinen.

With respect to defendant Commissioner Raymond W. Kelly, it is a matter of law that, as Commissioner of the New York City Police Department, defendant Kelly possesses sufficient power, authority and control over the governance, administration, policies and practices of the NYPD, that he may be found personally liable for damages to Ms. Makinen.

Individuals may also be held liable under this statute if they "aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this article, or to attempt to do so." If you find that any of the individual defendants actually participated in the conduct giving rise to a discrimination claim, then you many find such individual(s) personally liable for damages to Ms. Makinen.

Source:   N.Y. Executive Law §296(1) and §296(6); New York City Charter §434; Malena v. Victoria's Secret Direct, LLC, 886 F. Supp. 2d 349, 365-366 (SDNY 2012); Stordeur v. Computer Assoc. International, Inc., 995 F. Supp. 94, 103 (EDNY 1998); Patrowich v. Chemical Bank, 63 N.Y.2d 541, 542 (1984); Edwards v. Jericho Union Free School Dist., 904 F. Supp. 2d 294, 304 (EDNY 2012);  Krause v. Lancer & Loader Group, Inc., 40 Misc.3d 385, 398 (Sup. Ct., NY Co. 2013).

## JURY INSTRUCTION NO. 17

### New York City Human Rights Law

In this case, both Ms. Makinen and Ms. Nardini bring disability discrimination claims under the New York City Human Rights Law against all of the defendants.  The plaintiffs' claims under the City Law statute are similarly based on their allegations that defendants misperceived them as suffering from an alcohol-related illness or disorder, and that defendants treated them in a discriminatory manner as a result of this perception.  As I mentioned

previously, the New York City Human Rights Law is intended to be more protective than the state and federal laws discussed a moment ago.

To establish their claims under the New York City Human Rights Laws, Ms. Makinen and Ms. Nardini must show only that they were subjected to "differential treatment" based on their perceived disabilities. This is their only burden of proof on the City law claim.

It has already been determined by the Court that Ms. Makinen's treatment regimen meets this standard under the law. However, you will be asked to determine whether defendants' actions toward Ms. Nardini constitute "differential" treatment based on their perception that she suffers from alcohol abuse.

For defendants to prevail on the plaintiffs' New York City Human Rights Law claims, defendants must prove by a preponderance of the credible evidence that plaintiffs could not satisfy the essential requisites of their jobs. To meet this burden, defendants must prove by a preponderance of the credible evidence that plaintiffs' alleged alcoholism prevented them from satisfying the essential requisites of their jobs.

With respect to Ms. Makinen, if you find that she satisfied the essential requisites of her job, then you must find in favor of Ms. Makinen on her New York City Human Rights Law claim. On the other hand, if you find that defendants have proven that Ms. Makinen did not satisfy the essential requisites of her job, then you will find in favor of the defendants on this claim.

With respect to Ms. Nardini, if you find that she satisfied the essential requisites of her job, and was treated "differently" or "less well" than her fellow police officers based on her alcohol-abuse diagnosis, then you must find in her favor on her claim under the New York City Human Rights Law. However, if you find that Ms. Nardini either did not satisfy the essential

requisites of her job, or was not treated differently than her fellow officers, then you will find in favor of the defendants on Ms. Nardini's claim.

<u>Source</u>:  Administrative Code § 8–107(15)(b); <u>Gorokhovsky v. N.Y.C. Housing Auth.</u>, 552 F. App'x 100, 102 (2d Cir. 2014) (summary order) ("a plaintiff must only show differential treatment of any degree based on a discriminatory motive; the NYCHRL does not require either materially adverse employment actions or severe and pervasive conduct"); <u>Romanello v. Intesa Sanpaolo, S.P.A.</u> 22 NY3d 881, 886 (2013) ("the City HRL provides employers an affirmative defense if the employee cannot, with reasonable accommodation, 'satisfy the essential requisites of the job'"), quoting Administrative Code § 8–107(15)(b); <u>Williams v. New York City Housing Auth.</u>, 61 AD3d 62, 78 (1st Dept. 2009) ("the primary issue for a trier of fact in harassment cases, as in other terms-and-conditions cases, is whether the plaintiff has proven by a preponderance of the evidence that she has been treated less well than other employees"); <u>Brightman v. Prison Health Servs., Inc.</u>, 62 A.D.3d 472 (1st Dept. 2009); Docket No. 64, at pp.23-24;  <u>Brennan v. N.Y.C. Police Dept.</u>, 93-CV-8461 (BSJ), 1997 WL 811543, at *4-*7 (SDNY May 27, 1997), aff'd 141 F.3d 1151 (2d Cir. 1998).

### JURY INSTRUCTION NO. 18

### Individual Liability Under the
### New York City Human Rights Law

Similar to the state claim, individual defendants may be found liable for discrimination under the New York City Human Rights Law if they: "have any power to do more than carry out the personnel decisions made by others;" or if they "aid, abet, incite, compel or coerce" the discriminatory acts of another.

Again, with respect to defendant Commissioner Raymond W. Kelly, it is a matter of law that, as Commissioner of the New York City Police Department, defendant Kelly possesses sufficient power, authority and control over the governance, administration, policies and practices of the NYPD, that he may be found personally liable for damages to the plaintiffs.

With respect to defendant Sweeney, if you find that he possessed sufficient power and authority over the NYPD workplace, *or* actually participated in the conduct giving rise to a

18

discrimination claim, then you many find him personally liable for damages to the plaintiffs under the New York City Human Rights Law.

Source:  NYC Admin. Code §§ 8–107(6) and (13)(a)(b), 8–130; <u>New York City Charter §434;</u> <u>Malena v. Victoria's Secret Direct, LLC</u>, 886 F. Supp. 2d 349, 367 (SDNY 2012); <u>Williams v.</u> <u>New York City Hous. Auth.</u>, 61 A.D.3d 62, 66–67 (1st Dept. 2009); <u>Artis v. Random House,</u> <u>Inc.</u>, 34 Misc. 3d 858, 868 (Sup. Ct., NY Co. 2011).

## JURY INSTRUCTION NO. 19

### <u>Damages - Generally</u>

If you find that defendants are liable to Ms. Makinen under the ADA, New York State Human Rights Law and/or New York City Human Rights Law, then you shall award Ms. Makinen such sum of money as you believe will fairly and justly compensate her for any injury you believe she has sustained, or will sustain, as a result of the conduct of the defendants in this case.  Similarly, if you find that defendants are liable to Ms. Nardini under the New York City Human Rights Law, then you shall award Ms. Nardini such sum of money as you believe will fairly and justly compensate her for any injury you believe she has sustained, or will sustain, as a result of the conduct of the defendants in this case.

The purpose of the law is to make the plaintiffs whole by putting them in the positions they would have been in if there had been no discrimination.  The damages that you award must be fair and reasonable, neither inadequate nor excessive.  You should not award damages for speculative injuries, but only for those injuries that the plaintiffs actually suffered, or which they are reasonably likely to suffer in the future.

Source:  <u>McIntyre v. Manhattan Ford</u>, 256 AD2d 269 (1st Dept. 1998); <u>Walsh v. Covenant</u> <u>House</u>, 244 AD2d 214 (1st Dept. 1997); <u>Bracker v. Cohen</u>, 204 AD2d 115 (1st Dept. 1994); <u>Boodram v. Brooklyn Developmental Ctr</u>., 2 Misc.3d 574 (NY City Civ. Ct, Kings Co. 2003) (collecting cases and recognizing award for future emotional distress); Adapted from *Modern Federal Jury Instructions* (Civil), No. 77-3.

## JURY INSTRUCTION NO. 20

### <u>Compensatory Damages – Emotional Distress</u>

If you find that plaintiffs have established any of their claims of discrimination, you may award them compensatory damages for injuries such as emotional pain, suffering, mental anguish and humiliation.  There is no requirement that a claim of emotional distress be supported by proof of expenses, lost earnings, or specifically measurable damage.  There is also no requirement that a claim of emotional distress be supported by evidence from a medical or mental health professional who may have treated the plaintiffs.  No exact standard exists for fixing the compensation to be awarded for emotional distress.  The damages you award must be fair compensation – no more, no less.

In considering the amount of monetary damages to which plaintiffs may be entitled to remedy emotional distress, you should consider the nature, character and seriousness of any mental anguish and distress the plaintiffs experienced.  You should also consider its extent or duration, as any award you make must cover the damages endured by the plaintiffs since the wrongdoing began, to the present time, and even into the future – if you find as fact that the proof presented justifies the conclusion that plaintiffs' emotional distress and mental anguish (and their consequences) have continued to the present time, or can reasonably be expected to continue in the future.

If you find more than one defendant liable to Ms. Makinen and/or Ms. Nardini for emotional distress, you may allocate the payment of these damages as you see fit among the defendants.

<u>Source</u>:  Devitt, Blackmar and Wolff, *Federal Civil Jury Practice and Instructions*, Vol. 3, §103, §104.06; ABA Model Jury Instructions, Employment Litigation §1.07(3) (1994); NY Executive Law §297; NYC Admin. Code §8-502; <u>Boodram v. Brooklyn Developmental Ctr</u>., 2 Misc.3d 574 (NY City Civ. Ct, Kings Co. 2003) (collecting cases and recognizing award for future

20

emotional distress); <u>McIntyre v. Manhattan Ford</u>, 256 AD2d 269 (1st Dept. 1998); <u>Walsh v. Covenant House</u>, 244 AD2d 214 (1st Dept. 1997); <u>Bracker v. Cohen</u>, 204 AD2d 115 (1st Dept. 1994); <u>New York City Transit Auth. v. State Division of Human Rights</u>, 78 NY2d 207, 216 (1991), *on remand*, 181 AD2d 891 (2d Dept. 1992); <u>Schulman v. Group Health, Inc.</u>, 39 AD3d 223, 225 (1st Dept. 2007).

**JURY INSTRUCTION NO. 21**

**<u>Compensatory Damages – Economic Loss</u>**

If you find that Ms. Makinen has established any of her claims of discrimination, you may award her monetary damages for out-of-pocket losses caused by the defendants' unlawful conduct.  You should use sound discretion in fixing an award of damages, drawing reasonable inferences from the facts in evidence.  You may not award damages based on sympathy, speculation or guess work.  On the other hand, the law does not require that a plaintiff prove the amount of her loss with mathematical precision, but only with as much definiteness and accuracy as circumstances permit.  Again, the damages you award must be fair compensation – no more, no less.

With respect to such economic damages, you may award Ms. Makinen: (a) an amount equal to any lost wages and benefits which she would have received from the City had she not been subjected to disability-based discrimination; (b) an amount equal to any out-of-pocket costs and expenses Ms. Makinen incurred as a result of the defendants' actions; and (c) an amount equal to any lost earnings and retirement benefits Ms. Makinen suffered as a result of defendants' actions.

Ms. Makinen has provided you with information pertaining to her alleged economic losses.  It is your duty to calculate these damages from the information provided.  If you find more than one defendant liable to Ms. Makinen, you may allocate the payment of these damages as you see fit among the defendants.

21

<u>Source</u>:  Devitt, Blackmar and Wolff, *Federal Civil Jury Practice and Instructions*, Vol. 3, §103, §104.05, §104.06, §104A.11; NY Executive Law §297; NYC Admin. Code §8-502; <u>Boodram v. Brooklyn Developmental Ctr</u>., 2 Misc.3d 574 (NY City Civ. Ct., Kings Co. 2003); <u>McIntyre v. Manhattan Ford</u>, 256 AD2d 269 (1st Dept. 1998); <u>Walsh v. Covenant House</u>, 244 AD2d 214 (1st Dept. 1997); <u>Bracker v. Cohen</u>, 204 AD2d 115 (1st Dept. 1994).

**JURY INSTRUCTION NO. 22**

**<u>Punitive Damages</u>**

In addition to compensation for their injuries, Ms. Makinen and Ms. Nardini seek punitive damages against the individual defendants pursuant to the New York City Human Rights Law.  If you find that either of the individual defendants – Commissioner Raymond Kelly or Sgt. Daniel Sweeney – are liable to the plaintiffs under the City law, the law allows you (but does not require you) to determine that plaintiffs are entitled to punitive damages.  Punitive damages are awarded in cases to punish the defendants for misconduct, and to deter any such future misconduct by the defendants or others.  In order to award the plaintiffs punitive damages, you must find that the individual defendants' conduct which caused the injuries was wanton, or showed reckless disregard for the rights of others.  It is entirely within your discretion to determine whether an award of punitive damages is appropriate in this case.

If you decide to award punitive damages to plaintiffs, you should consider the following factors in assessing the amount of such damages:

(1)     The nature and reprehensibility of what defendants did, including the character of the wrongdoing; whether their conduct demonstrated an indifference to, or reckless disregard of, the rights of others; the vulnerability of the plaintiffs; how long the conduct went on; the defendants' awareness of the harm caused by the conduct; and any concealment of the conduct.

22

(2)    The actual and potential harm created by defendants' conduct.  The amount of
punitive damages you award must be reasonable in light of the harm caused by
defendants.  However, there is no rigid formula by which to determine a proper
amount of punitive damages and it need bear no definite relationship to
compensatory damages.

(3)    The impact that your award will have on the individual defendants, and whether it
will discourage them (and others) from acting in a similar manner in the future.

In reporting your verdict, if you find that plaintiffs are entitled to damages to compensate them
for their injuries, and if you further find that punitive damages should be awarded, you will
separately state the amounts awarded for each.

Source:  NYC Admin. Code §8-126 and §8-502; PJI §2:278; Devitt, Blackmar and Wolff,
*Federal Civil Jury Practice and Instructions*, Vol. 3, §104.07; Kolstad v. American Dental
Association, 527 U.S. 526 (1999); Farias v. Instructional Sys., Inc., 259 F.3d 91, 101 (2d Cir.
2001) (relying on federal standards for punitive damages); Umansky v. Masterpiece Int'l Ltd.,
276 AD2d 692 (2d Dept. 2000) (relying on federal standards for punitive damages); Boodram v.
Brooklyn Developmental Ctr., 2 Misc.3d 574 (NY City Civ. Ct., Kings Co. 2003); McIntyre v.
Manhattan Ford, 256 AD2d 269 (1st Dept. 1998); Walsh v. Covenant House, 244 AD2d 214 (1st
Dept. 1997); Bracker v. Cohen, 204 AD2d 115 (1st Dept. 1994); Parkin v. Cornell University
Inc., 182 A.D.2d 850 (3rd Dept.1992); Micari v. Mann, 126 Misc.2d 422, 425 (Sup. Ct., NY Co.
1984); Hartford Accident & Indemnity Co. v. Village of Hempstead, 48 N.Y.2d 218,  (1979).

## JURY INSTRUCTION NO. 23

### Taxation of Damages

When determining the amount of damages to award to the plaintiffs, you may consider

the fact that they will be taxed on the damage award, and that their taxes will accrue at a higher

rate than they would have had she earned the same amount of income over a longer period.  You

may consider adjusting their award to compensate them for this additional tax burden.  For this

purpose, you are instructed that the applicable federal 2015 tax rate schedules provide as follows:

Individuals

| Over | But Not Over | Tax Rate |
|------|--------------|----------|
| $0 | $9,225 | 10% |
| $9,225 | $37,450 | 15% |
| $37,450 | $90,750 | 25% |
| $90,750 | $189,300 | 28% |
| $189,300 | $411,500 | 33% |
| $411,500 | $413,200 | 35% |
| $413,200 | And over | 39.6% |

Head of Household

| Over | But Not Over | Tax Rate |
|------|--------------|----------|
| $0 | $13,150 | 10% |
| $13,150 | $50,200 | 15% |
| $50,200 | $129,600 | 25% |
| $129,600 | $209,850 | 28% |
| $209,850 | $411,500 | 33% |
| $411,500 | $439,000 | 35% |
| $413,200 | And over | 39.6% |

Source: Mazur v. C.I.R., 986 F. Supp. 752 (WDNY 1997); O'Neill v. Sears, Roebuck & Company, 108 F.Supp.2d 443, 446 (ED Pa. 2000); Sears v. Atchinson, Topeka & Santa Fe Ry. Co., 749 F.2d 1451, 1456 (10th Cir. 1984); Hukkanen v. Intern. Union of Operating Engineers, 3 F.3d 281, 287 (8th Cir.1993);

http://www.irs.gov/publications/p505/ch02.html#en_US_2015_publink1000194739