11 CV 7535 (ALC)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

KATHLEEN MAKINEN and JAMIE NARDINI,

Plaintiffs

-against-

CITY OF NEW YORK; RAYMOND W. KELLY, as
Police Commissioner of the City of New York; NEW
YORK CITY POLICE DEPARTMENT; and
SERGEANT DANIEL J. SWEENEY, individually and in
his official capacity,

Defendants.

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS' MOTION FOR JUDGMENT AS A
MATTER OF LAW OR, IN THE ALTERNATIVE,
FOR A NEW TRIAL**

*ZACHARY W. CARTER*
*Corporation Counsel of the City of New York*
*Attorney for Defendants*
*100 Church Street*
*New York, N.Y.  10007*

*Of Counsel:  Yuval Rubinstein*
*Christopher S. Bouriat*
*Tel:  (212) 356-2467*
*Matter No. 2011-032141*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................ iii

PRELIMINARY STATEMENT ........................................................................................... 1

ARGUMENT

    POINT I

        PLAINTIFFS' CHRL CLAIMS SHOULD BE
        DISMISSED PURSUANT TO RULE 50 ................................................. 2

        A.     Plaintiffs' CHRL Claims Are Deficient as a
               Matter of Law Because Plaintiffs Admitted
               They Were Not Recovering Alcoholics .......................................... 3

        B.     Nardini's CHRL Claim is Deficient as a
               Matter of Law Because She Did Not Incur
               an Adverse Employment Action, and Was
               Not Treated Differently .................................................................. 6

        C.     Dr. Frances's Expert Report and Testimony
               Are Inadmissible Under *Daubert* ..................................................... 8

        D.     Plaintiffs Cannot Demonstrate That They
               Were Wrongfully Perceived as Alcoholic ..................................... 9

        E.     Plaintiffs Fail To Demonstrate That Kelly or
               Sweeney Are Individually Liable ................................................. 10

        F.     Plaintiffs' Claims for Damages Fail as a
               Matter of Law ............................................................................. 12

            1.     Punitive Damages ............................................................ 12

            2.     Compensatory Damages .................................................... 15

    POINT II

        THE COURT SHOULD GRANT A NEW TRIAL
        PURSUANT TO RULE 59 ...................................................................... 16

        A.     The Court's Jury Instructions Were
               Erroneous ..................................................................................... 17

B.    The Court Erred in Admitting Into Evidence Joseph Stassi's April 2, 2007 Letter ............................................. 18

C.    The Jury's Damages Awards Should be Vacated ....................................................................................... 20

    1.    Punitive Damages ....................................................... 20

    2.    Compensatory Damages ..................................................... 21

    3.    Makinen's Economic Damages ........................................... 22

CONCLUSION .......................................................................................... 22

# TABLE OF AUTHORITIES

**Cases** **Pages**

*Amorgianos v. Amtrak,*
    303 F.3d 256 (2d Cir. 2002)..................................................................... 9

*Bennett v. Health Mgt. Sys., Inc.,*
    92 A.D.3d 29 (1st Dep't 2011) ............................................................. 6, 7

*BMW of N. Am., Inc. v. Gore,*
    517 U.S. 559 (1996)............................................................................... 20

*Cameron v. City of New York,*
    598 F.3d 50 (2d Cir. 2010)................................................................ 18, 19

*Cassotto v. Donahoe,*
    600 Fed. Appx. 4 (2d Cir. 2015)........................................................ 17, 18

*Cobb v. Pozzi,*
    363 F.3d 89 (2d Cir. 2004)..................................................................... 17

*Connecticut Nat'l Bank v. Germain,*
    503 U.S. 249 (1992)................................................................................. 4

*Cruz v. Local Union,*
    No. 3 of the Int'l Board. of Elec. Workers, 34 F.3d 1148 (2d Cir. 1994)................... 3

*CTS Corp. v. Waldburger,*
    134 S. Ct. 2175 (2014)............................................................................ 4

*Daubert v. Merrell Dow Pharms.,*
    509 U.S. 579 (1993)............................................................................ 8, 9

*Dilaura v. Power Auth. of Ny,*
    982 F.2d 73 (2d Cir. 1992)..................................................................... 3

*Drake v. Delta Air Lines, Inc.,*
    94-5594 (FB)(RLM), 2005 U.S. Dist. LEXIS 14789 (E.D.N.Y. July 21, 2005),
    *aff'd*, 216 Fed. Appx. 95 ....................................................................... 9

*Exxon Shipping Co. v. Baker,*
    554 U.S. 471 (2008)............................................................................. 14

*Farias v. Instructional Sys.,*
    259 F.3d 91 (2d Cir. 2001)................................................................ 12, 13

**Cases**                                                                     **Pages**

*Farzan v. Wells Fargo Bank, N.A.,*
  12-1217 (RJS), 2013 U.S. Dist. LEXIS 82623 (S.D.N.Y. June 11, 2013) .............................. 11

*Fenner v. News Corp.,*
  09-9832 (LGS), 2013 U.S. Dist. LEXIS 170187 (S.D.N.Y. Dec. 2, 2013) ............................ 11

*Fortunoff Fine Jewelry & Silverware, Inc., Petitioner, v.*
  *New York State Division of Human Rights et al.,*
  227 A.D.2d 557 (2d Dep't 1996) ......................................................................................... 17

*Fruchtman v. City of New York,*
  2015 N.Y. App. Div. LEXIS 4838 (1st Dep't June 11, 2015)................................................. 6

*Gibbs and Drew v. City of New York,*
  12-8340 (RA), 2015 U.S. Dist. LEXIS 7960 (S.D.N.Y. Jan. 23, 2015) ................................. 5

*Gorokhovsky v. NYC. Hous. Auth.,*
  552 F. App'x 100 (2d Cir. 2014) .......................................................................................... 6

*Green v. City of New York,*
  359 Fed. Appx. 197 (2d Cir. 2009)..................................................................................... 17

*Gue v. Suleiman,*
  10-8958 (RLE), 2012 U.S. Dist. LEXIS 141295 (S.D.N.Y. Sept. 27, 2012) ........................ 10

*Hiller v. County of Suffolk,*
  199 F.R.D. 101 (E.D.N.Y. 2001) ......................................................................................... 15

*Kellman v. Metro. Transp. Auth.,*
  8 F. Supp. 3d 351 (S.D.N.Y. 2014)..................................................................................... 11

*Kolstad v. American Dental Association,*
  527 U.S. 526 (1999)......................................................................................... 12, 13, 14, 15

*Krohn v. N.Y. City Police Dep't,*
  372 F.3d 83 (2d Cir. 2004).................................................................................................. 15

*Macmillan v. Millenium Broadway Hotel,*
  873 F. Supp. 2d 546 (S.D.N.Y. 2012).............................................................................. 20, 21

*Manley v. AmBase Corp.,*
  337 F.3d 237 (2d Cir. 2003)................................................................................................ 16

*McEniry v. Landi,*
  84 N.Y.2d 554 (1994) ......................................................................................................... 4

**Cases**                                                                                                   **Pages**

*Melman v. Montefiore Med. Ctr.,*
    98 A.D.3d 107 (1st Dep't 2012) ....................................................................... 6, 10

*Meloff v. New York Life Ins. Co.,*
    240 F.3d 138 (2d Cir. 2001) .............................................................................. 17

*Munafo v. Metropolitan Transportation Authority,*
    381 F.3d 99 (2d Cir. 2004) ................................................................................ 16

*Nimely v. City of New York,*
    414 F.3d 381 (2d Cir. 2005) ............................................................................ 9, 16

*Russul Corp. v. Zim Am. Integrated Shipping Services Co., Inc.,*
    06-0037 (JCF), 2009 U.S. Dist. LEXIS 91098 (S.D.N.Y. Oct. 5, 2009) .................... 3

*Song v. Ives Labs., Inc.,*
    957 F.2d 1041 (2d Cir. 1992) ............................................................................ 16

*State Farm Mut. Auto. Ins. Co. v. Campbell,*
    538 U.S. 408 (2003) ......................................................................................... 21

*Taylor v. New York Univ. Med. Ctr.,*
    871 N.Y.S.2d 568 (1st Dep't 2008) ................................................................... 13

*Tepperwien v. Entergy Nuclear Operations, Inc.,*
    663 F.3d 556 (2d Cir. 2011) .......................................................................... 13, 15

*Turley v. ISG Lackawanna, Inc.,*
    774 F.3d 140 (2d Cir. 2014) .............................................................................. 20

*United States ex rel. Eisenstein v. City of New York,*
    556 U.S. 928 (2009) ........................................................................................... 4

*United States v. Quintieri,*
    306 F.3d 1217 (2d Cir. 2001) ........................................................................... 3, 6

*Whitfield-Ortiz v. Department of Educ. of the City of New York,*
    116 A.D.3d 580 (1st Dep't 2014) ........................................................................ 6

*Williams v. New York City Hous. Auth.,*
    61 A.D.3d 62 (1st Dep't 2008) ............................................................................ 6

*Wilson v. Phoenix House,*
    42 Misc. 3d 677 (Sup. Ct. Kings Co. 2013) ....................................................... 13

**Cases**                                                                    **Pages**

*Zambrano-Lamhaouhi v. N.Y. City Bd. of Educ.*,
   866 F. Supp. 2d 147 (E.D.N.Y. 2011) .................................................................. 11

**Statutes**

Fed. R. Civ. P. 50 ....................................................................................................... 3, 23

Fed. R. Civ. P. 50(a) .................................................................................................... 1, 4

Fed. R. Civ. P. 50(b) ....................................................................................................... 2

Fed. R. Civ. P. 59 ............................................................................................... 2, 17, 23

Fed. R. Evid. 702 ................................................................................................... 2, 8, 9

N.Y.C. Admin. Code § 8-102(16)(a) and (b)................................................................ 17

N.Y.C. Admin. Code § 8-102(16)(c) .................................................................. 3, 4, 17

N.Y.C. Admin. Code § 8-107(1)(a) ............................................................................... 7

N.Y.C. Admin. Code § 8-502(a) .................................................................................. 12

**Other Authorities**

Restatement (Second) of Torts § 908 (1977) ............................................................... 14

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------------- x

KATHLEEN MAKINEN and JAMIE NARDINI,

                                    Plaintiffs,

-against-                                       11 CV 7535 (ALC)

CITY OF NEW YORK; RAYMOND W. KELLY, as
Police Commissioner of the City of New York; NEW
YORK CITY POLICE DEPARTMENT; and SERGEANT
DANIEL J. SWEENEY, individually and in his official
capacity,

                                    Defendants.

---------------------------------------------------------------------- x

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR JUDGMENT AS A MATTER OF LAW OR, IN THE ALTERNATIVE, FOR A NEW TRIAL

### PRELIMINARY STATEMENT

        Plaintiffs Jamie Nardini and Kathleen Makinen ("plaintiffs") filed this action alleging "perceived" as disability discrimination claims under the Americans With Disabilities Act ("ADA"), New York State Human Rights Law ("SHRL"), and New York City Human Rights Law ("CHRL"), along with claims under the Fair Labor Standards Act and pendant common-law claims. Trial was held between May 11 and May 22, 2015 on plaintiffs' disability discrimination claims. At the close of plaintiffs' case, defendants moved for judgment as a matter of law on plaintiff's claims pursuant to Federal Rule of Civil Procedure 50(a). The Court denied defendants' motion without prejudice.

        The jury returned a verdict in favor of defendants on Makinen's ADA and SHRL claims, and returned a verdict in favor of both plaintiffs on their CHRL claims. Makinen was

awarded $11,100 in economic damages, $5000 in compensatory damages, and $30,000 in punitive damages, while Nardini was awarded $75,000 in compensatory damages and $30,000 in punitive damages.

Defendants now renew their motion for judgment as a matter of law pursuant to Rule 50(b) because: (1) plaintiffs did not have a "disability" under the CHRL because they were not seeking to recover from alcoholism; (2) Nardini's watching of six alcohol education videos was not an adverse employment action or "differential treatment"; (3) Dr. Richard Frances's expert testimony was unreliable and inadmissible under Rule 702; (4) defendants Sweeney and Kelly are not individually liable under the CHRL; and (5) plaintiffs are not entitled to punitive or compensatory damages as a matter of law, while Makinen's claims for lost wages are also deficient as a matter of law.

In the alternative, defendants move for a new trial pursuant to Rule 59 because: (1) the Court's jury instructions on plaintiffs' CHRL claims did not state the correct legal standard; (2) the admission of Joseph Stassi's April 2, 2007 letter was erroneous; and (3) the jury's punitive and compensatory damages awards should be vacated.

## ARGUMENT

### POINT I

### PLAINTIFFS' CHRL CLAIMS SHOULD BE DISMISSED PURSUANT TO RULE 50

Pursuant to Fed. R. Civ. P. 50(b), a party that previously moved for and was denied a motion for judgment as a matter of law may renew the motion after judgment is entered. A Rule 50 motion must be granted where "(1) there is such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture, or (2) there is such an overwhelming amount of evidence in favor of the movant

that reasonable and fair minded [persons] could not arrive at a verdict against [it]." *Cruz v. Local Union No. 3 of the Int'l Board. of Elec. Workers*, 34 F.3d 1148, 1154 (2d Cir. 1994)(internal quotation omitted). For the reasons set forth below, CHRL claims are deficient as a matter of law, and should be dismissed.

## A. Plaintiffs' CHRL Claims Are Deficient as a Matter of Law Because Plaintiffs Admitted They Were Not Recovering Alcoholics

The CHRL states that "[i]n the case of alcoholism…the term 'disability' shall only apply to a person who (1) is recovering or has recovered and (2) currently is free of such abuse[.] *See* N.Y.C. Admin. Code § 8-102(16)(c). Both plaintiffs steadfastly maintained at trial that they did not have any issues with alcohol and were not seeking to recover from alcoholism at the time of their referral to CSU. Nardini testified that "[a]ll I know is I didn't drink and that I wasn't doing anything that had to do with alcohol." Trial Transcript ("Tr.") 58:18-19, attached hereto as Exhibit "A" to the Declaration of Yuval Rubinstein. Makinen similarly denied that she has ever suffered from an alcohol-related illness. Tr. 212:23-25. Based upon the plain text of the CHRL and plaintiffs' own admissions at trial, plaintiffs' CHRL claims are ripe for dismissal pursuant to Rule 50.

Plaintiffs assert that defendants' reading of Section 8-102(16)(c) is incorrect because "no employee could ever bring a claim…if they were perceived to be alcoholics."[1] Tr.

---

[1] During oral argument on defendants' Rule 50(a) motion, plaintiffs also asserted that this issue was subject to the law-of-the-case doctrine based upon the Court's summary judgment decision. However, the Court's discussion of Section 8-102(16)(c) in its summary judgment decision was not a "central holding." *See Russul Corp. v. Zim Am. Integrated Shipping Servs. Co., Inc.*, 06-0037 (JCF), 2009 U.S. Dist. LEXIS 91098, at *11 (S.D.N.Y. Oct. 5, 2009)("[T]he law of the case doctrine does not apply to dicta[.]"). Even if the Court's earlier decision was not dicta, the Second Circuit has held that "district courts may…depart from the law of the case and reconsider their own decisions for cogent and compelling reasons if those decisions have not been ruled on by the appellate court." *United States v. Quintieri*, 306 F.3d 1217, 1230 (2d Cir. 2001); *see also Dilaura v. Power Auth. of Ny*, 982 F.2d 73, 1230 (2d Cir. 1992)(law-of-the-case "is admittedly

923:19-21. But the "one, cardinal canon" of statutory interpretation holds that the "legislature says in a statute what it means and means in a statute what it says" so that "[w]hen the words of a statute are unambiguous…judicial inquiry is complete." *Connecticut Nat'l Bank v. Germain*, 503 U.S. 249, 253-54 (1992)(internal quotation omitted). Plaintiffs' request to carve out an exception to Section 8-102(16)(c) for "perceived as" disability cases contravenes this basic principle. Additionally, "well-established principles of statutory interpretation…require statutes to be construed in a manner that gives effect to all of their provisions." *United States ex rel. Eisenstein v. City of New York*, 556 U.S. 928, 933 (2009). Because plaintiffs' argument would render superfluous Section 8-102(16)(c) in this case and in every other "perceived as" disability case involving alcohol or drug use, it should be rejected.

Plaintiffs further maintain that defendants' reading of Section 8-102(16)(c) is inconsistent with the CHRL's broader coverage. Tr. 923:23-24. Although the 2005 amendments generally provided that the CHRL should be interpreted liberally, this does *not* mean that the CHRL can be rewritten to accomplish this task. *See CTS Corp. v. Waldburger,* 134 S. Ct. 2175, 2185 (2014)(interpreting statutes in a liberal manner is not "a substitute for a conclusion grounded in the statute's text and structure"). Plaintiffs cannot "interpret" away the actual text of the statute.

In addition, it is defendants, not plaintiffs, who are seeking to uphold the CHRL's "broad and remedial purpose." Defendants are being sued for providing counseling, treatment and rehabilitation for alcohol dependence or abuse. *See, e.g., McEniry v. Landi*, 84 N.Y.2d 554 (1994)(discussing generally that purpose of Human Rights laws are served by encouraging

---

discretionary and does not limit a court's power to reconsider its own decisions prior to final judgment")(internal quotation omitted). Because the applicability of Section 8-102(16)(c) is now fully dispositive of plaintiffs' remaining claims, defendants submit that it is appropriate to more fully address this issue on this motion.

rehabilitation of disabled employees over termination and separation from employment).

Plaintiffs, by contrast, urge this Court to find that an employer cannot mandate such treatment, even in the face of employee misconduct and evidence of alcoholism, if the employee disagrees that he or she is an alcoholic.

Plaintiffs' arguments, if successful, would have a chilling effect on an employer's ability to identify employees in need of rehabilitation and provide such rehabilitation. This result would actually weaken, rather than strengthen, the stated purpose of the CHRL and other civil rights statutes by forcing employers to discipline and separate the employee rather than rehabilitate the employee. Judge Ronnie Abrams recognized just such a chilling effect in a recent case involving CSU:

> To hold that the FLSA requires an employer to compensate in the circumstances of this case would risk creating a material disincentive to the growing use of employee assistance programs and so-called 'last-chance agreements' in this and similar circumstances…As Defendants rightly point out, in cases such as this one, the option of a mandatory referral to CSU serves as an alternative to an employee's "receiving harsher discipline and potentially even avoid[ing] separation from employment." (Opp. 8.) It thus stands to reason that requiring an employer to compensate an employee for time spent in such treatment would disincentivize treatment relative to other options, such as discipline and termination.

*See Gibbs and Drew v. City of New York*, 12-8340 (RA), 2015 U.S. Dist. LEXIS 7960, at *35-36 (S.D.N.Y. Jan. 23, 2015)(internal citations omitted).

Accordingly, plaintiffs' interpretation of the CHRL should be rejected.

**B.     Nardini's CHRL Claim is Deficient as a Matter of Law Because She Did Not Incur an Adverse Employment Action, and Was Not Treated Differently**

The Court determined in its summary judgment decision that, although Nardini's watching of education videos did not constitute an adverse employment action, Nardini was only required to demonstrate "differential treatment" under the CHRL's more liberal standard. Dkt. 64, at 22-23. Defendants respectfully submit that there are "cogent and compelling reasons," *Quintieri*, 306 F.3d at 1230, for reconsidering this decision.

The "differential treatment" standard originated in *Williams v. New York City Hous. Auth.*, 61 A.D.3d 62, 76-77 (1st Dep't 2008), and set forth a more liberal standard for establishing sexual harassment under the CHRL than the "severe or pervasive" standard applicable under federal and state law. In *Bennett v Health Mgt. Sys., Inc.*, 92 A.D.3d 29 (1st Dep't 2011), the same court analyzed discrimination cases not involving sexual harassment in light of the CHRL's 2005 amendments. But *Bennett* did *not* apply the "differential treatment" standard, and continued applying the adverse employment action standard. 92 A.D.3d at 35-36, 39. Because *Bennett* was written by the same judge who authored *Williams*, reading the two decisions in tandem demonstrates that the "differential treatment" standard is confined to sexual harassment cases. Indeed, New York courts have continued applying the adverse employment action standard in discrimination cases. *See Fruchtman v City of New York*, 2015 N.Y. App. Div. LEXIS 4838, at *1-2 (1st Dep't June 11, 2015); *Whitfield-Ortiz v. Department of Educ. of the City of New York*, 116 A.D.3d 580, 581 (1st Dep't 2014); *Melman v Montefiore Med. Ctr.*, 98 A.D.3d 107, 113-14 (1st Dep't 2012).[2]

---

[2] Although a handful of unpublished Second Circuit decisions have applied the "differential treatment" standard to discrimination cases, *see Gorokhovsky v. NYC. Hous. Auth.*, 552 F. App'x 100, 102 (2d Cir. 2014)(summary order), these decisions are not binding upon the Court, and

Even assuming that the differential treatment standard applied to Nardini – which defendants do not concede – Nardini cannot satisfy this standard. Nardini must prove, at a minimum, that watching alcohol education videos led to a "difference" in her "compensation or…terms, conditions or privileges of employment." N.Y.C. Admin. Code § 8-107(1)(a). In other words, Nardini must prove that watching alcohol education caused some tangible change in her employment status. But the record is crystal clear that Nardini did not incur *any* change in her compensation, job responsibilities, or duty status during this time period. Tr. 94:23-99:3.

The "differential treatment" standard cannot, as a matter of law, be satisfied based upon the evidence presented by Nardini. Indeed, if watching alcohol education videos was actionable under the CHRL, it would lead to absurd results. For example, if Nardini was the subject of an EEO complaint but was merely ordered to watch EEO training videos, it would be absurd to hold that watching such videos is actionable under the CHRL.

In response, Nardini argued that the alcohol abuse diagnosis itself is differential treatment, and that "anything that happens to [Nardini] afterward," such as a "picture, a glass of beer, wine," could land Nardini back at CSU. Tr. 917:19-22. Nardini's argument is without merit. First, the CSU's diagnosis itself cannot constitute differential treatment if it does not affect the "terms, conditions or privileges" of Nardini's employment. Nardini's argument, taken to its logical conclusion, would mean that every client diagnosed as alcohol dependent or an abuser would have an actionable claim under the CHRL, even if no other action is taken. Such a result would have a profound chilling effect on CSU for the reasons noted above. Second, Nardini's hypothetical argument about what *might* happen "afterward" is purely speculative, and cannot establish that Nardini incurred differential treatment in 2010.

defendants submit that these decisions have incorrectly interpreted *Williams*, particularly in light of *Bennett* and other state-law cases.

**C.      Dr. Frances's Expert Report and Testimony Are Inadmissible Under *Daubert***

As defendants demonstrated in their motion for summary judgment, the report of plaintiffs' expert, Dr. Richard Frances, was riddled with errors and methodological flaws that rendered his made-to-order "diagnoses" patently unreliable under Fed. R. Evid. 702.   For example, Dr. Frances failed to interview many of the collateral contacts CSU relied upon in assessing plaintiffs, while his scoring of Makinen's MAST test was based upon demonstrably incorrect factual assumptions that vividly demonstrate the maxim "Garbage In, Garbage Out." *See* Def. Motion for Summary Judgment at 36-45.   Defendants now renew their motion to exclude Dr. Frances's testimony.   *See Daubert v. Merrell Dow Pharms.*, 509 U.S. 579, 596 (1993)(appropriate to exclude expert testimony on Rule 50 motion).

Dr. Frances's trial testimony reaffirmed that his cherry picking methodology fatally undermined the reliability of his "opinions."  Dr. Frances admitted that he did not contact Tracy Sinatra (Tr. 727:13-15), but opined it was "highly probable [Sinatra] was not a credible source."  Tr. 728:20-21.  It is unreliable and unprofessional for Dr. Frances to discount Sinatra's credibility without even speaking to her.[3]   As for Makinen, Dr. Frances admitted that he never spoke to any of the individuals involved in Makinen's 2007 arrest and suspension (Tr. 741:21-742:1), or with Jennifer Plunkett, the child therapist.  Tr. 746:4-8.  Dr. Frances also testified that he did *not* contact Seema Hoon, the Child Protective Services worker who reported Makinen's drinking, but *did* contact a CPS worker for Nardini.  Tr. 746:9-747:17.

Because of his clear partiality towards plaintiffs, Dr. Frances did not conduct a thorough and even-handed assessment of their alcohol use.  As a result, Dr. Frances does not come close to satisfying the strictures of Rule 702, as his testimony was not "based on sufficient

---

[3] In addition, Dr. Frances's trial testimony contradicted his deposition testimony that he "d[idn't] know one way or the other" whether Sinatra was credible.  Tr. 729:22-24.

facts or data" and was not "the product of reliable principles and methods." Dr. Frances's purported "diagnoses" and screening tests of plaintiffs are therefore inadmissible.[4] *See Amorgianos v. Amtrak*, 303 F.3d 256, 266 (2d Cir. 2002)("[W]hen an expert opinion is based on data, a methodology, or studies that are simply inadequate to support the conclusions reached, *Daubert* and Rule 702 mandate the exclusion of that unreliable opinion testimony.").

*Drake v. Delta Air Lines, Inc.*, 94-5594 (FB)(RLM), 2005 U.S. Dist. LEXIS 14789 (E.D.N.Y. July 21, 2005), *aff'd*, 216 Fed. Appx. 95 (2d Cir. 2007) is directly on point. Prior to trial, the court permitted the plaintiff to introduce expert testimony, while conceding it was a "thin case." *Id.* at *26. But after trial, the court "reevaluate[d]" whether the testimony "should have been excluded under *Daubert*" and "review[ed] not only the evidence adduced at trial but also the underlying expert report, which was not admitted at trial." *Id.* at *26-27. The court "conclude[d] as a matter of law that [the expert's] statistical testimony was not probative of [plaintiff's] claim." *Id.* at *28. Because Dr. Frances's expert report and trial testimony fall well short of satisfying *Daubert*, they are not "probative" of plaintiffs' claims.

**D.     Plaintiffs Cannot Demonstrate That They Were Wrongfully Perceived as Alcoholic**

The crux of plaintiffs' case is that they were wrongfully perceived as alcoholic by CSU. At bottom, plaintiffs' claims are rooted in their subjective belief that they were not alcoholic. *See supra* at 3. But plaintiffs' mere subjective belief that they did not have a problem with alcohol and were improperly diagnosed is wholly insufficient to withstand a Rule 50

---

[4] Indeed, Dr. Frances's partiality towards plaintiffs veered into outright cheerleading at several points. To give one of several examples, Dr. Frances volunteered that an attorney purportedly told him that Nardini "was an excellent mother, that the charges against her by Bill Eiseman were false and I believe she told me that in the investigations that were done there was found to be no problem with her with relationship to alcohol or any other problems and that Bill Eiseman was…" Tr. 691:17-21. Dr. Frances's transparent attempt to bolster plaintiffs' credibility in the eyes of the jury, which went far beyond the scope of his expert testimony, further undermines the reliability of his testimony. *See Nimely v. City of New York*, 414 F.3d 381, 398 (2d Cir. 2005).

motion.  Were it otherwise, *every* client referred to CSU, or another Employee Assistance Program ("EAP"), would have a potential "perceived as" disability claim, and each case would involve a jury second-guessing the EAP's assessment.  As noted above, the chilling effect on CSU and other EAPs would be considerable.

In response to defendants' argument, plaintiffs asserted at trial that CSU "didn't get it right" in its diagnoses. Tr. 929:24.  But this argument simply proves defendants' point – whether or not CSU "get[s] it right" is a subjective determination.  As in any other discrimination case, plaintiffs "mere subjective belief that [they were] discriminated against…does not sustain a…discrimination claim."  *Gue v. Suleiman*, 10-8958 (RLE), 2012 U.S. Dist. LEXIS 141295, at *23 (S.D.N.Y. Sept. 27, 2012).

Plaintiffs also launched a broad-based challenge to CSU's procedures and claimed, among other things, that CSU "perform[s] an assessment between 30 minutes and 6 hours," "do[esn't] contact all of" the collaterals, and "take[s]…as fact" what collaterals report. Tr. 928:23-929:5.  Plaintiffs' critiques of CSU fail as a matter of law because they do not speak to the question of discrimination.  New York courts have emphasized that in CHRL cases, the court "should not sit as a super-personnel department that reexamines an entity's business decisions." *Melman*, 98 A.D.3d at 121 (internal quotation marks omitted).  Plaintiffs' demand that the jury step into the shoes of a state licensing agency to reexamine CSU's professional judgment is completely improper.  Because plaintiffs' "perceived as" disability discrimination claims are deficient as a matter of law, judgment should be entered for defendants.

### E. Plaintiffs Fail To Demonstrate That Kelly or Sweeney Are Individually Liable

Plaintiffs assert claims against two individual defendants, former NYPD Commissioner Raymond Kelly and Sergeant Daniel Sweeney.  Because the City is not liable

under the CHRL for the reasons detailed above, Kelly and Sweeney cannot be individually liable either. *See Fenner v. News Corp.*, 09-9832 (LGS), 2013 U.S. Dist. LEXIS 170187, at \*83 (S.D.N.Y. Dec. 2, 2013)(where "the Court finds no liability for the [employer]…there is similarly no individual or aiding and abetting liability against the individual defendants").

Even assuming that liability against the City could be established, plaintiffs nonetheless fail to demonstrate individual liability. "To make out a claim against an individual defendant under…the CHRL, a plaintiff must either show direct, personal involvement in discriminatory conduct, or that the defendant 'aided and abetted' the discrimination or retaliation at issue…i.e., that the defendant encouraged, condoned or approved it." *Zambrano-Lamhaouhi v. N.Y. City Bd. of Educ.*, 866 F. Supp. 2d 147, 163 (E.D.N.Y. 2011)(internal citations and quotation marks omitted); *Farzan v. Wells Fargo Bank, N.A.*, 12-1217 (RJS), 2013 U.S. Dist. LEXIS 82623, at \*11 (S.D.N.Y. June 11, 2013)("[I]ndividual liability under…the NYCHRL attaches only where a defendant actually participates in the conduct giving rise to [the] discrimination.")(internal quotation omitted).

Plaintiffs' claims against Kelly border on frivolous. Plaintiffs did not call Kelly as a witness at trial, nor did plaintiffs introduce any exhibits that tie Kelly to this case in any way. In fact, the first time plaintiffs even mentioned Kelly's name was during closing argument. Tr. 1072:17-20. As a result, plaintiffs cannot possibly establish that Kelly "actually participated" in any allegedly discriminatory conduct, or that he "encouraged, condoned, or approved it."

Furthermore, Kelly cannot be individually liable based solely on his status as NYPD Commissioner. In *Kellman v. Metro. Transp. Auth.*, 8 F. Supp. 3d 351, 393-94 (S.D.N.Y. 2014), the plaintiff asserted that the chief of the MTA Police Department should be held individually liable under the CHRL because he "was aware of and approved MTA's

discriminatory promotion and training decisions."  This Court rejected the plaintiff's argument because the chief did not participate in any alleged discriminatory conduct.  *Id.* at 394.

Likewise in this case, there is not a scintilla of evidence demonstrating that Kelly participated – or was even aware of - any allegedly discriminatory conduct.  Indeed, finding Kelly individually liable based solely on his status as NYPD Commissioner would make it exceedingly difficult for the NYPD, or any other municipal agency, to attract and retain qualified individuals to serve as commissioners.   Because plaintiffs have failed to prove that Kelly is individually liable, Kelly is not liable for any damages.

Plaintiffs also fail to demonstrate individual liability against Sweeney.  Even if Sweeney was involved in plaintiffs' diagnoses, plaintiffs cannot, as a matter of law, establish that Sweeney's actions were objectively wrongful for the reasons noted above.  Nor can Sweeney be found individually liable for aiding and abetting.  Because plaintiffs are alleging that Sweeney himself engaged in discriminatory conduct, plaintiffs are precluded from asserting that Sweeney aided and abetted any allegedly discriminatory actions.  *Kellman*, 8 F.Supp.3d at 393 ("an individual may not be held liable merely for aiding and abetting his own discriminatory conduct")(internal quotation marks omitted).

**F.     Plaintiffs' Claims For Damages Fail as a Matter of Law**

    **1.     Punitive Damages**

The CHRL states that punitive damages may be awarded, *see* N.Y.C. Admin. Code § 8-502(a), but "does not provide a standard to use in assessing whether [punitive] damages are warranted." *Farias v. Instructional Sys.*, 259 F.3d 91, 101 (2d Cir. 2001)(internal citation and quotation omitted).  The Second Circuit has thus held that the Title VII standard for awarding punitive damages set forth in  *Kolstad v. American Dental Association*, 527 U.S. 526

(1999) applies to the CHRL as well. *Farias*, 259 F.3d at 101-02. Even after the 2005 amendments to the CHRL, this Court and New York state courts continue to apply the *Kolstad* standard in CHRL cases. *See Macmillan v. Millenium Broadway Hotel*, 873 F. Supp. 2d 546, 563 (S.D.N.Y. 2012); *Taylor v. New York Univ. Med. Ctr.*, 871 N.Y.S.2d 568, 573 (1st Dep't 2008); *Wilson v Phoenix House*, 42 Misc. 3d 677, 710-11 (Sup. Ct. Kings Co. 2013).

In *Kolstad*, the Supreme Court held that "[p]unitive damages are limited…to cases in which the employer has engaged in intentional discrimination and has done so with malice or with reckless indifference to the…protected rights of an aggrieved individual." 527 U.S. at 529-30. "A plaintiff can satisfy this burden by presenting evidence that the employer discriminated…against him with 'conscious knowledge it was violating the law,' or that it engaged in 'egregious' or 'outrageous' conduct from which an inference of malice or reckless indifference could be drawn.'" *Tepperwien v. Entergy Nuclear Operations, Inc.*, 663 F.3d 556, 572 (2d Cir. 2011)(quoting *Farias*, 259 F.3d at 102). In discrimination cases, "[m]alice and reckless indifference refer to 'the employer's knowledge that it may be acting in violation of…law, not its awareness that it is engaging in discrimination.'" *Farias*, 259 F.3d at 101 (quoting *Kolstad*, 527 U.S. at 535).

If there was ever a case where punitive damages were wholly unwarranted under *Kolstad*, this is such a case. The CSU's very purpose is to assist NYPD personnel experiencing difficulties with alcohol so that they can be restored to full duty. Dkt. 64, at 2. This Court has also recognized that "[p]laintiffs do not allege that Defendants' adverse employment actions were motivated by any animus toward their perceived disability." *Id.* at 18.

Given CSU's rehabilitative purpose and the absence of any discriminatory intent or animus, plaintiffs are unable as a matter of law to demonstrate that Kelly or Sweeney were

"motivated by evil motive or intent, or…reckless or callous indifference to the…protected rights of others." *Kolstad*, 527 U.S. at 53 (internal quotation omitted). The Supreme Court has noted that the "purposes of punitive damages are 'the same' as 'that of a fine imposed after a conviction of a crime.'" *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 504 (2008)(quoting Restatement (Second) of Torts § 908, Comment a, at 464 (1977)). To impose the equivalent of a *criminal fine* upon Kelly and Sweeney merely because plaintiffs believe they were misdiagnosed is nothing short of astounding.

Plaintiffs' punitive damages claims are deficient as a matter of law for several other reasons. As noted above, Kelly was not called a witness, and plaintiffs did not proffer any evidence connecting Kelly to any challenged action. *Kolstad* demonstrates that punitive damages against an individual require an assessment of that individual's subjective state of mind. 527 U.S. at 535 ("The terms 'malice' and 'reckless' ultimately focus on the actor's state of mind."); *Id.* at 536 (the punitive damages "intent standard, at a minimum, required recklessness in its subjective form"); *Id.* at 538 ("[T]he justification of exemplary damages lies in the evil intent of the defendant" so that "a positive element of conscious wrongdoing is always required.")(internal quotation omitted). Because there is no evidence of Kelly's subjective state of mind, much less his "evil intent," no reasonable jury could award punitive damages against Kelly.

The only conceivable basis for the jury's award of punitive damages was to send a "message" to Kelly as then-NYPD Commissioner. But punitive damages cannot be awarded on this basis as a matter of law. The Court's instruction on punitive damages required plaintiffs to demonstrate that Kelly "acted with either malice or reckless indifference." Instruction IV(D). In addition, plaintiffs never requested a jury instruction stating that punitive damages could be

imputed to Kelly based solely upon his status as former NYPD commissioner and irrespective of his subjective state of mind. In any case, such an instruction would be contrary to law. It is firmly established that punitive damages cannot be imposed on the City under the CHRL. *See Krohn v. N.Y. City Police Dep't*, 372 F.3d 83, 85-86 (2d Cir. 2004). Thus, to impose punitive damages upon Kelly – or any other commissioner of a municipal agency – based solely on his official responsibilities constitutes a back-door attempt to impose punitive damages on the City.

Plaintiffs also fail to establish any basis for imposing punitive damages against Sweeney. Plaintiffs had "two bites at the apple" by reading selected portions of Sweeney's deposition testimony into the record, and by cross-examining Sweeney. Yet plaintiffs failed to adduce any testimony whatsoever demonstrating that Sweeney acted with "malice or reckless indifference," or that Sweeney had a conscious knowledge that he was violating the CHRL at the time plaintiffs were assessed. *Tepperwien*, 663 F.3d at 572. At most, plaintiffs contend that Sweeney misdiagnosed them, but a misdiagnosis does not come close to satisfying *Kolstad*'s demanding standard for imposing punitive damages.

## 2. Compensatory Damages

It is black-letter law that compensatory damages can be awarded only if plaintiffs "establish the necessary causal link between the defendants' discriminatory conduct and the plaintiffs' emotional distress." *Hiller v. County of Suffolk*, 199 F.R.D. 101, 104 (E.D.N.Y. 2001). The Court's jury instructions similarly required plaintiffs to prove that their alleged injuries were the "proximate result of the defendants' conduct in violation of the law[.]" *See* Instruction IV(C).

Neither plaintiff is able to demonstrate the requisite "causal link" between their alleged emotional distress and any of CSU's actions. Instead, both plaintiffs testified only in

very general terms about the emotional pain and suffering they allegedly experienced because of their referrals to CSU. For example, Nardini testified that she has experienced anxiety, depression, panic attacks, and "restless legs" (Tr. 87:5-89:6), but was unable to establish how watching six alcohol education videos contributed to these alleged symptoms. Makinen testified that she has experienced headaches and anxiety attacks (Tr. 213:17-215:5), but failed to tie these symptoms to CSU's diagnoses and her treatment. In fact, Makinen's therapist, Marjorie Sugarman, testified that Makinen was diagnosed with depression before her 2007 referral to CSU, and also admitted that Makinen's marital strife during that time period negatively impacted Makinen's self-esteem. Tr. 904:17-906:16.

It is clear that both plaintiffs were in emotionally volatile relationships with their significant others during the periods in which they were referred to CSU. Plaintiffs were therefore required to demonstrate that it was CSU's actions, *not* any other stressors in their lives, that proximately caused plaintiffs' emotional distress. Plaintiffs failed to make this showing.

## POINT II

### THE COURT SHOULD GRANT A NEW TRIAL PURSUANT TO RULE 59

A motion for a new trial should be granted pursuant to Fed. R. Civ. P. 59 where "'the jury has reached a seriously erroneous result or [its] verdict is a miscarriage of justice.'" *Nimely*, 414 F.3d at 393 (quoting *Munafo v. Metropolitan Transportation Authority*, 381 F.3d 99, 105 (2d Cir. 2004)). Unlike a Rule 50 motion, a new trial may be granted even when there is substantial evidence supporting the jury's verdict. *See Manley v. AmBase Corp.*, 337 F.3d 237, 244 (2d Cir. 2003). Thus, a court may weigh the evidence itself and need not view the evidence in the light most favorable to the non-moving party. *See Song v. Ives Labs., Inc.,* 957 F.2d 1041, 1047 (2d Cir. 1992). Indeed, "the district court is permitted to 'examine the evidence through its

own eyes.'" *See Green v. City of New York*, 359 Fed. Appx. 197, 199 (2d Cir. 2009)(quoting *Meloff v. New York Life Ins. Co.*, 240 F.3d 138, 147 (2d Cir. 2001)).

## A.    The Court's Jury Instructions Were Erroneous

"A jury instruction is erroneous where 'it misleads the jury as to the correct legal standard or where it fails to adequately inform the jury on the law.'" *Cassotto v. Donahoe*, 600 Fed. Appx. 4, 5 (2d Cir. 2015)(quoting *Cobb v. Pozzi*, 363 F.3d 89, 112 (2d Cir. 2004)).  In this case, the jury instructions did not "state the correct legal standard" for several reasons.  First, the instruction on the first element of plaintiffs' CHRL claims quoted Sections 8-102(16)(a) and (b), but *not* Section 8-102(16)(c).  *See* Instruction III(E)(1).  As a result, the jury was not instructed that plaintiffs were required to prove that they were recovering alcoholics to have a "disability" under the CHRL.  It was erroneous to excise the statutory provision that is dispositive of plaintiffs' claims.

In addition, the third element of plaintiffs' CHRL claims stated that plaintiffs were only required to prove that "that they were treated differently from other employees who were not perceived as alcoholics."  *See* Instruction ¶III(E)(3)  As noted above in Point I, plaintiffs are required to demonstrate an adverse employment action under the CHRL. Accordingly, the instruction did not state the correct legal standard employed by New York state courts.

The instructions were also erroneous for not requiring plaintiffs to prove that they were wrongfully perceived as alcoholic, as defendants requested.  *See Fortunoff Fine Jewelry & Silverware, Inc., Petitioner, v. New York State Division of Human Rights et al.*, 227 A.D.2d 557 (2d Dep't 1996)(dismissing "perceived as" disability claim where employee "has not *established* that…she was disabled, or was *wrongly perceived* as disabled")(emphasis added).  The key issue

in this case is not whether plaintiffs were perceived as alcoholic, but whether they were "wrongly perceived." The burden of proof rests squarely on plaintiffs to "establish" this wrongful perception. Because plaintiffs were relieved of this burden, the jury instructions "fail[ed] to adequately inform the jury on the law." *Cassotto*, 600 Fed. Appx. at 5.

**B.    The Court Erred in Admitting Into Evidence Joseph Stassi's April 2, 2007 Letter**

In determining whether a new trial is required based upon an erroneous evidentiary ruling, courts "consider such factors as whether the testimony bore on an issue that is plainly critical to the jury's decision, whether that testimony was material to the establishment of the critical fact or whether it was instead corroborated and cumulative, and whether the wrongly admitted evidence was emphasized in arguments to the jury." *Cameron v. City of New York*, 598 F.3d 50, 61 (2d Cir. 2010)(internal citation omitted). Courts also consider "the overall strength of the [objecting party's] case." *Id.* (internal citation and quotation omitted).

The Court erred by allowing into evidence an April 2, 2007 letter from Joseph Stassi, a counselor who purportedly conducted an "evaluation" of Makinen by somehow "[r]econstructing the events of that night [of Makinen's arrest] and discussing the events with people who were present[.]" Stassi expressed his "concern" about the evaluation of Makinen made by the Suffolk County Police Department and NYPD Duty Captain, and claimed that "all those interviewed indicate they had been with her for several hours and did not see her consume any alcohol during that time period." In addition, Stassi opined that "[t]here is nothing in our evaluation which leads us to have" the impression that Makinen was alcoholic. *See* Def. Exhibit "B."

The Court redacted the final sentence in Stassi's letter opining that Makinen was not alcoholic, but allowed the remainder of the letter to be admitted. Even with the redaction of

the final paragraph, it was erroneous to admit into evidence the remainder of the letter. Although Stassi was listed as a potential witness, plaintiffs did not call him to testify at trial. Even assuming the April 2, 2007 letter is admissible as a business record, the purported witness "interviews" referenced in the letter are inadmissible hearsay because they are offered for the truth of the matter asserted – namely, that Makinen did not consume any alcohol on March 4, 2007.

In addition, whatever miniscule probative value the letter contains is substantially outweighed by the unfair prejudice to defendants. Stassi did not even identify the individuals he purportedly interviewed. Furthermore, Stassi expressed his supposed "concern" about the evaluations made by arresting officer Andrew Derose and Duty Captain Theo Papadopoulos, but did not interview them. In fact, Stassi's dubious "reconstruction" of events is strikingly similar to Dr. Frances's cherry picking methodology.

The erroneous admission of Stassi's letter requires a new trial based upon the *Cameron* criteria. First, the letter "bore on an issue that is plainly critical to the jury's decision." Indeed, the jury specifically asked to view Stassi's note during its deliberations, demonstrating its importance to the verdict. Tr. 1123:8-10. Second, the letter "was not simply cumulative or corroborative," *Cameron*, 598 F.3d at 65, as Stassi was not called to testify and the unidentified "witnesses" he purportedly interviewed did not testify either. In addition, plaintiffs' counsel heavily emphasized Stassi's letter during closing arguments to argue that Makinen was misdiagnosed in 2007. Tr:1059:5-1060:10. Because defendants bore the burden of proof under the CHRL as to whether Makinen was "an alcoholic and actively consuming alcohol" (Instruction III(e)(3)(a)) the erroneous admission of Stassi's letter may have swayed the jury's verdict. Accordingly, a new trial is required.

**C.     The Jury's Damages Awards Should be Vacated**

Plaintiffs' claims for compensatory and punitive damages are deficient as a matter of law for the reasons noted in Point I.  In addition, the jury's award of damages was against the weight of the evidence, and should be vacated.   "While it is properly within the province of the jury to calculate damages, there is an upper limit, and whether that has been surpassed is not a question of fact with respect to which reasonable [persons] may differ, but a question of law…a jury has broad discretion in measuring damages, but it may not abandon analysis for sympathy for a suffering plaintiff and treat an injury as though it were a winning lottery ticket." *Macmillan*, 873 F. Supp. 2d at 559 (internal citations and quotation marks omitted).

**1.     Punitive Damages**

The Supreme Court has articulated three "guideposts" for determining the constitutionally permissible amount of punitive damages that may be awarded: "(1) 'the degree of reprehensibility' associated with the defendants' actions; (2) 'the disparity between the harm or potential harm suffered' and the size of the punitive award; and (3) the difference between the remedy in this case and the penalties imposed in comparable cases." *Turley v. ISG Lackawanna, Inc.*, 774 F.3d 140, 165 (2d Cir. 2014)(quoting *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 575 (1996)).

The jury's punitive damages award should be vacated based on the first prong, which is "[p]erhaps the most important indicium of the reasonableness of a punitive damages award[.]"  *BMW*, 517 U.S. at 575.  Simply put, there is no evidence of "reprehensibility" on the part of Kelly or Sweeney that could conceivably warrant any punitive damages, let alone $60,000 in damages.

The factors considered in determining reprehensibility include whether "the harm caused was physical as opposed to economic; the tortious conduct evinced an indifference to or a reckless disregard of the health or safety of others; the target of the conduct had financial vulnerability; the conduct involved repeated actions or was an isolated incident; and the harm was the result of intentional malice, trickery, or deceit, or mere accident." *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 419 (2003). Plaintiffs plainly failed to present evidence that satisfies any of these factors. Not only is there no evidence that CSU evinced an "indifference" to the "health" of others, the exact opposite is true. Furthermore, any assertion that Kelly or Sweeney engaged in "intentional malice, trickery, or deceit" is particularly far-fetched.[5]

## 2. Compensatory Damages

Even if Nardini could establish that her emotional distress was caused by watching six alcohol education videos – which she cannot - the $75,000 in emotional distress damages awarded to Nardini must be set aside. Nardini's alleged symptoms constitute, at most, "garden-variety" emotional distress because Nardini described her injuries only in "vague" and "conclusory" terms, while her alleged injuries were not "supported by any medical corroboration." *MacMillan*, 873 F. Supp. 2d at 560 (internal quotation omitted). Based on the scant testimony Nardini presented, a $75,000 award is the epitome of a "winning lottery ticket."

Even if the Court factored Nardini's testimony that she is "absolutely terrified of being around alcohol" (Tr. 85:17), this alleged fear does not come close to justifying $75,000 in damages. Similarly, whatever sympathy Nardini may have elicited from the jury because of her

---

[5] The jury's award of punitive damages to plaintiff Makinen should also be set aside because it does not make sense. The jury returned a verdict for defendants on Makinen's SHRL claims, and consequently found that Kelly and Sweeney had *not* violated the statute. The jury's decision to find that Kelly and Sweeney not only violated the CHRL based upon the same nucleus of facts but did so with malice and reckless indifference is wholly illogical.

relationship with Eiseman cannot justify this exorbitant award either. *See Mendez v. Starwood Hotels & Resorts Worldwide, Inc.*, 746 F. Supp. 2d 575, 601 (S.D.N.Y. 2010).

### 3. Makinen's Economic Damages

The jury awarded Makinen $6000 in "lost wages," and $5100 in "out-of-pocket expenses." However, the award of lost wages cannot be sustained. Makinen claimed that she incurred $25,000 in lost wages based on her time in treatment. Tr. 215:11-24. Yet Makinen admitted that she received unlimited sick leave while in treatment, and was paid her full wages. Tr. 248:1-7. Any argument by Makinen that the $6000 was for lost overtime would fail, as Makinen made no attempt to quantify the amount of overtime she would have otherwise earned. The jury's award of lost wages should be set aside.

### <u>CONCLUSION</u>

For the foregoing reasons, defendants respectfully request that the Court grant its motion for judgment as a matter of law pursuant to Rule 50, or in the alternative, that the Court order a new trial pursuant to Rule 59, along with such other and further relief as to this Court deems just and proper.

Dated:        New York, New York
              July 2, 2015

                              **ZACHARY W. CARTER**
                              Corporation Counsel
                                of the City of New York
                              Attorney for Defendants
                              100 Church Street, Room 2-115
                              New York, New York 10007-2601
                              (212) 356-2467


                              By:_____/s/_____
                                   Yuval Rubinstein
                                   Christopher S. Bouriat

Assistant Corporation Counsel

Eric Eichenholtz,
Yuval Rubinstein,
Christopher S. Bouriat,
   Of Counsel.