UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------ x

KATHLEEN MAKINEN and JAMIE
NARDINI,

                       Plaintiffs,

            -against-

CITY OF NEW YORK, RAYMOND W.
KELLY, as Police Commissioner of the City
of New York, and SERGEANT DANIEL J.
SWEENEY, individually and in his official
capacity,

                      Defendants.

------------------------------------------------------------ x

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#: _____
DATE FILED: __4-12-16__

1:11-cv-07535 (ALC) (AJP)

<u>OPINION AND ORDER</u>

ANDREW L. CARTER, JR., United States District Judge:

        Plaintiffs Kathleen Makinen, Jamie Nardini, and Angel Torres sued the City of New

York, former Police Commissioner Raymond Kelly, and Sergeant Daniel Sweeney, claiming that

they had been discriminated against based on a perceived disability in violation of the Americans

with Disabilities Act ("ADA"), the New York State Human Rights Law ("NYSHRL"), and the

New York City Human Rights Law ("NYCHRL").

        On January 26, 2016, Torres accepted Defendants' Offer of Judgment, pursuant to which

he took judgment against the City of New York for $75,001, plus reasonable attorneys' fees,

costs, and expenses accrued to the date of the offer. Trial on the claims of the remaining

plaintiffs, Makinen and Nardini, began on May 11, 2015. Following an eight-day trial, the jury

entered verdicts in both Plaintiffs' favor under the NYCHRL only and awarded Makinen

damages in the total amount of $46,100 and Nardini damages in the total amount of $105,000.

        After trial, Defendants moved for judgment as a matter of law pursuant to Fed. R. Civ. P.

50(b) and for a new trial pursuant to Fed. R. Civ. P. 59. The Court granted Defendants' motion

1

for judgment as a matter of law as to Plaintiffs' punitive damage awards against Commissioner Kelly, but denied all other of Defendants' motions. As a result, Makinen's total award was reduced to $31,100 and Nardini's to $90,000.

Plaintiffs now seek attorneys' fees in the amount of $528,190.00 and costs in the amount of $113,433.18 as the prevailing parties under the NYCHRL.[1] Plaintiffs Makinen and Nardini also seek pre-judgment interest on their awards, and all plaintiffs seek post-judgment interest on all sums. Defendants do not contest that Plaintiffs are prevailing parties but argue that the award should be reduced for various reasons. They also dispute Plaintiffs' interest calculations. For the following reasons, the Court will award attorneys' fees in the amount of $408,347 and costs in the amount of $88,586.68.

## DISCUSSION

### I.    Attorneys' Fees

Plaintiffs request $528,190 in attorneys' fees. Defendants seek an across-the-board reduction of 75 percent, resulting in attorneys' fees of $132,047.

#### A.    Attorneys' Fees Under the NYCHRL

The NYCHRL provides that a court, "in its discretion, may award the prevailing party costs and reasonable attorney's fees." N.Y.C. Admin. Code § 8-502(g). District courts are afforded considerable discretion in determining the amount of attorneys' fees that is appropriate in a given case. *See Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983); *see also* Fed. R. Civ. P. 54(d). The district court's discretion is not unfettered, however, and the court must begin its calculation of attorneys' fees by determining the "presumptively reasonable fee," often referred to as the "lodestar." *Millea v. Metro-N. R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011). To calculate

---

[1] Torres joins in this motion, as the parties have proved unable to reach an agreement as to the amount of attorneys' fees, costs and expenses attributable to his claim.

the lodestar, a court "multiplies the number of hours the prevailing party's attorney expended on the case by the reasonable hourly rate charged for similar work by attorneys of like skill in the jurisdiction." *Marchuk v. Faruqi & Faruqi LLP*, 104 F. Supp. 3d 363, 366 (S.D.N.Y. 2015) (citing *Perdue v. Kenny A.*, 559 U.S. 542 (2010)).

"In determining the number of hours reasonably expended for purposes of calculating the lodestar, the district court should exclude excessive, redundant or otherwise unnecessary hours, as well as hours dedicated to severable unsuccessful claims." *Quaratino v. Tiffany & Co.*, 166 F.3d 422, 425 (2d Cir. 1999). However, where unsuccessful claims are "inextricably intertwined and involve a common core of facts or are based on related legal theories," attorneys' fees may be awarded for unsuccessful claims. *Id.* (quoting *Reed v. A.W. Lawrence & Co.*, 95 F.3d 1170, 1183 (2d Cir. 1996)) (internal quotation marks omitted).

The party seeking attorneys' fees bears the burden of supporting its claim of hours expended with "contemporaneous time records . . . [that] specify, for each attorney, the date, the hours expended, and the nature of the work done." *N.Y.S. Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1147-48 (2d Cir. 1983). However, "the district court is not obligated to undertake a line-by-line review of [the prevailing party's] extensive fee application." *Marion S. Mishkin Law Office v. Lopalo*, 767 F.3d 144, 150 (2d Cir. 2014). Instead, it may "use a percentage deduction as a practical means of trimming fact." *McDonald ex rel. Prendergast v. Pension Plan of the NYSA–ILA Pension Trust Fund*, 450 F.3d 91, 96 (2d Cir. 2006).

Although calculation of the lodestar yields a presumptively reasonable fee, "it is not conclusive in all circumstances." *Millea v. Metro-N. R. Co.*, 658 F.3d 154, 166-67 (2d Cir. 2011) (citation and internal quotation marks omitted). In "rare circumstances," a court may adjust the lodestar "when [the lodestar method] does not adequately take into account a factor that may

3

properly be considered in determining a reasonable fee." *Id.* at 167 (citation and internal quotation mark omitted).

**B.      Plaintiffs' Application for Attorneys' Fees**

To begin, the Court must determine Plaintiffs' counsel's reasonable hourly rate and the number of hours reasonably expended, in order to calculate the presumptively reasonable fee.

**1.      Reasonableness of Counsel's Hourly Rates**

To determine the reasonable hourly rate, the court should consider the "prevailing market rate, i.e. the rate prevailing in the relevant community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Farbotko v. Clinton Cty. of New York*, 433 F.3d 204, 208 (2d Cir. 2005) (citation and internal quotation marks omitted). "The relevant community, in turn, is the district in which the court sits." *Id.* There is a presumption "that a reasonable, paying client would in most cases hire counsel from within his district, or at least counsel whose rates are consistent with those charged locally." *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany & Albany Cty. Bd. of Elections*, 522 F.3d 182, 191 (2d Cir. 2008). If a plaintiff hires counsel from out-of-district and seeks to recover rates higher than those charged within the district, he may rebut that presumption only if he demonstrates that his "retention of an out-of-district attorney was reasonable under the circumstances as they would be reckoned by a client paying the attorney's bill." *Id.*

Ultimately, the determination of a reasonable hourly rate "contemplates a case-specific inquiry into the prevailing market rates for counsel of similar experience and skill to the fee applicant's counsel," and may "include judicial notice of the rates awarded in prior cases and the court's own familiarity with the rates prevailing in the district." *Townsend v. Benjamin Enter., Inc.*, 679 F.3d 41, 59 (2d Cir. 2012) (quoting *Farbotko,* 433 F.3d at 209).

4

Here, Plaintiffs were represented by Gleason, Dunn, Walsh & O'Shea, a firm located in Albany. Plaintiffs seek rates of $350 per hour for three partners (Lisa F. Joslin, Ronald G. Dunn, and Michael P. Ravalli), $200 per hour for one associate (Peter N. Sinclair), and $125 per hour for a more junior associate (Christopher R. Scoville). (Pl.'s Mem., ECF No. 141, 12-13.) As to the partners, Joslin was admitted to the bar in 1998 and has focused a significant portion of her practice on labor and employment matters, with such cases currently making up half her practice. (Exh. A, Joslin Aff., ECF No. 140; Joslin Aff. ¶ 31.) Dunn was admitted to the bar in 1981 and has focused his practice exclusively on employment matters. (Exh. B, Joslin Aff.; Joslin Aff. ¶¶ 32-33.) Ravalli was admitted in 1992 and, like Dunn, has focused his practice exclusively on employment matters. (Exh. C, Joslin Aff.; Joslin Aff. ¶¶ 34-35.) As to the associates, Sinclair was admitted in 2010 and has focused primarily on employment matters, and Scoville was admitted in 2015 and has focused primarily on employment matters. (Exh. D and Exh. E, Joslin Aff.; Joslin Aff. ¶¶ 36-37.)

"Consistent precedent in the Southern District reveals that rates awarded to experienced civil rights attorneys over the past ten years have ranged from $250 to $600, and that rates for associates have ranged from $200 to $350, with average awards increasing over time." *Abdell v. City of New York*, No. 05 Civ. 8453 (RJS), 2015 WL 898974, at *3 (S.D.N.Y. Mar. 2, 2015) (collecting cases); *see also Siegel v. Bloomberg L.P.*, No. 13 Civ. 1351 (DF), 2016 WL 1211849, at *6 (S.D.N.Y. Mar. 22, 2016) (collecting cases and noting prevailing rates of $285 to $350 for associates with more than eight years' experience, $200 to $275 for associates with at least four years' experience, and rates of $450 and above for highly experienced counsel).

Defendants do not challenge the general reasonableness of these billing rates in their opposition papers and the Court finds no reason to question their reasonableness in light of

counsel's experience and prevailing rates in the Southern District. Therefore, the Court will generally calculate the presumptively reasonable fee based off the rates requested by Plaintiffs.[2]

### 2.    Reasonableness of Counsel's Hourly Rate for Travel

Defendants do challenge the reasonableness of the requested rates as they relate to counsel's travel time. As noted, Plaintiffs were represented by a firm located in Albany. Defendants argue that it was unreasonable for Plaintiffs to retain Albany-based counsel and that counsel should not receive any compensation for the time spent traveling from Albany to New York City. (Def.'s Mem. Opp., ECF No. 145, 13.) In the alternative, Defendants argue that the court should reduce counsel's rates by 50 percent for travel time. (*Id.*)

"Although it is within a district court's discretion to compensate travel time at the full hourly rate, courts in the Second Circuit often reduce attorneys' fees for travel time by 50 percent." *Siegel*, 2016 WL 1211849, at \*7 (collecting cases); *see also L.V. v. New York City Dep't of Educ.*, 700 F. Supp. 2d 510, 526 (S.D.N.Y. 2010). Plaintiffs argue that such a reduction is not appropriate here because counsel's billing rates reflect the lower rates prevalent in the Northern District, and thus, even if counsel is compensated at a full rate for travel time, the attorneys' fees overall will still be lower than if Plaintiffs had hired counsel in the Southern District. (Pl.'s Reply Mem., ECF No. 150, 18-19.) The Court is not swayed by this argument, however, because the rates requested by counsel are in line with the rates charged by counsel with similar experience in the Southern District, as discussed above.

---

[2] Effective March 28, 2016, the NYCHRL was amended to instruct the courts to "apply the hourly rate charged by attorneys of similar skill and experience litigating similar cases in New York county when it chooses to factor the hourly rate into the attorney's fee award." N.Y.C. Admin. Code 8-502(g); *see also* Pl.'s Ltr., April 11, 2016, ECF No. 159 (alerting the Court to this change). Because the Court has already taken these factors into consideration, it need not consider this change further here.

There is a presumption "that a reasonable, paying client would in most cases hire counsel from within his district, or at least counsel whose rates are consistent with those charged locally." *Arbor Hill*, 522 F.3d 182, 191. Here, the Court presumes that a reasonable, paying client would hire counsel from within the Southern District, or if he instead hired counsel from outside the district, would at least hire counsel whose rates are consistent with those in the Southern District, taking into account the added expense of travel.[3] However, a reasonable, paying client may have agreed to compensate for travel time, albeit at a lower rate, because counsel purports to have worked on the case during travel. (Pl.'s Reply Mem., 21.) The Court finds it appropriate to reduce attorneys' fees for travel time by 50 percent. Travel time attributed to the partners will be billed at $175 an hour, and for the associate Sinclair, at $100 an hour.

### 3. Reasonableness of Hours Expended

Plaintiffs request compensation for 1,623.45 hours of work expended between the filing of the case and September 4, 2015, and an additional 57.9 hours expended between September 5, 2015, and December 8, 2015. Defendants argue for an across-the-board reduction of 75 percent, with a 60 percent reduction warranted by Plaintiffs' "limited success" and a 15 percent reduction warranted by the excessive hours expended by counsel.

### a) "Limited Success"

In considering the reasonableness of the hours incurred in litigation, courts may consider the degree of success obtained in comparison to the time expended. *See Hensley v. Eckerhart*, 461 U.S. 424, 436-37 (1983). "However, a plaintiff's lack of success on some claims does not require a court to reduce the lodestar amount in situations where the successful and unsuccessful

---

[3] While this presumption is rebuttable, Plaintiffs do not show that their retention of out-of-district counsel was "reasonable under the circumstances as they would be reckoned by a client paying the attorney's bill," the showing necessary to justify a higher rate for out-of-district counsel. Counsel here did not achieve such success or bring such specialized knowledge or expertise to justify hiring out-of-district counsel at a higher rate than in-district counsel.

claims were interrelated and required essentially the same proof." *Balu v. City of New York*, No. 12 Civ. 1071 (KPF), 2016 WL 884666, at *6 (S.D.N.Y. Mar. 8, 2016) (citing *Quaratino*, 166 F.3d at 425). "Litigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee." *Henley*, 461 U.S. at 435.

Plaintiffs initially brought claims pursuant to the ADA, the NYSHRL, the NYCHRL, the New York State Public Health Law, the Fair Labor Standards Act ("FLSA") and the New York State Labor Law ("NYLL"), and common-law claims of breach of confidentiality, defamation, and negligence. At the summary judgment stage, the Court dismissed all claims save for Makinen and Torres's ADA claims, NYSHRL claims, and NYCHRL claims, and Nardini's NYCHRL claims. (ECF No. 65.) Torres settled following the summary judgment decision, and ultimately, the jury entered judgment in favor of Makinen and Nardini on their NYCHRL claims.

While Defendants are correct that Plaintiffs did not prevail on the majority of their claims, the majority also involved the same "a common core of facts" and were "inextricably intertwined" with the successful claims. *Quaratino*, 166 F.3d at 425. As the Second Circuit and the Supreme Court have noted, "in many civil rights cases the plaintiff's claims for relief will involve a common core of facts or will be based on related legal theories, making it difficult to divide the hours expended on a claim-by-claim basis." *Konits v. Karahalis*, 409 F. App'x 418, 421 (2d Cir. 2011) (quoting *Hensley*, 461 U.S. at 435) (alterations and internal quotation marks omitted). Indeed, "[s]uch a lawsuit cannot be viewed as a series of discrete claims," and instead, "the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended." *Id.*

Given the interplay between the NYCHRL and other antidiscrimination laws, the Court cannot say that counsel would have spent any less time on the case had it been framed to exclude the ADA or NYSHRL claims. Nor can the Court say that Plaintiffs' FLSA claims were based on a different core of facts or were lacking in substance. Each of these claims was based on Plaintiffs' contention that they were subjected to unfavorable treatment in their workplace due to their perceived disability of alcoholism. It was on the basis of claims arising from this common core of facts that all three plaintiffs received relief. Thus, the Court declines to reduce the fee award based on Plaintiffs' success or lack thereof on any of these claims.

However, Plaintiffs' state common-law claims and claims under the New York State Public Health Law dealt with a separate core of facts, namely the alleged disclosure of Plaintiffs' medical information without proper releases. Therefore, the Court will reduce by 10 percent the hours expended by counsel on this case, to take into account Plaintiff's limited success as to these claims.

### b)     Hours Expended

"A court has discretion to impose an across-the-board reduction if an attorney has billed excessive, redundant, or unnecessary hours." *Kreisler v. Second Ave. Diner Corp.*, No. 10 Civ. 7592 (RJS), 2013 WL 3965247, at *3 (S.D.N.Y. July 31, 2013) (citing *Carey*, 711 F.2d at 1146). "Additionally, a court has discretion to impose an across-the-board reduction for vague billing entries that prevent the court from determining if the hours billed were excessive." *Id.* (citation omitted).

Defendants here argue that counsel billed excessively and provided vague time entries and request an across-the-board reduction of 15 percent. Defendants take issue with the time billed for work on Plaintiffs' cross-motion for summary judgment, asserting that it is extremely

rare for a plaintiff's cross-motion for summary judgment to be granted in employment discrimination cases. Plaintiffs, however, point out that their cross-motion was argued in the same set of motion papers as Defendants' motion for summary judgment. Furthermore, their cross-motion was based on the same common core of facts and involved a similar legal theory, and so no additional factual investigation was required. The Court agrees that despite the ultimate failure of Plaintiffs' cross-motion, it required little additional labor and the time expended on it was neither inefficient nor excessive. Thus, the Court will not reduce the reasonable number of hours billed on that account.

However, the Court may also impose an across-the-board reduction for billing entries that are so vague as to prevent the Court from determining whether the hours billed were excessive. Defendants argue that certain entries are not sufficiently detailed, that counsel impermissibly "block-billed," and that the redactions contained in the records make it impossible to assess the reasonableness of the work performed. "[T]he law does not require counsel to record in great detail how each minute of their time was expended, but only to identify the general subject matter of their time expenditures." *Balu*, 2016 WL 884666, at *5 (quoting *Hensley*, 461 U.S. at 437 n. 12) (alterations and internal quotation marks omitted). Therefore, "'multiple entries [i.e. block-billing] comply with the Second Circuit's requirement of specificity,'" where "such entries are consistent with the *Carey* dictate that entries 'specify the date, hours expended, and nature of the work done.'" *Meriwether v. Coughlin*, 727 F. Supp. 823, 827 (S.D.N.Y. 1989) (quoting *Carey*, 711 F.2d at 1148). "Still, block-billing can make it exceedingly difficult for courts to assess the reasonableness of the hours billed." *L.V. v. New York City Dep't of Educ.*, 700 F. Supp. 2d 510, 525 (S.D.N.Y. 2010) (citation and internal quotation marks omitted). A court's

assessment of the reasonableness of the hours billed may also be impeded by entries "stated in

the sparest of terms," e.g.. "'meeting w/ co-counsel,' 'conference w/ co-counsel, and so on." *Id.*

Having examined the billing records, the Court finds a reduction appropriate, based on

counsel's use of block-billing together with the sparse detail of certain entries. For instance, for

March 24, 2015, counsel billed a total of 8.3 hours, and described the activity as:

> "Telephone conference with Dr. Frances; phone calls from and emails with J. Nardini;
> emails with K. Makinen; prepared direct examination for J. Nardini; phone call to
> Inspector Stephenson; email from A.Torres re: [REDACTED] ; emailed trial subpoena of
> Sgt. Sweeney to City counsel; work on demonstrative evidence and service of trial
> subpoenas; phone call with process server."

(Exh. F.) From this entry, the Court cannot discern the amount of time spent on any individual

activity or the subject-matter of various communications, and thus, the Court cannot discern the

reasonableness of the hours expended. Therefore, a ten percent across-the-board reduction is

warranted. *See L.V.*, 700 F. Supp. at 525 (collecting cases in which hours were reduced for

similar entries.)

The Court will not reduce the number of hours for the redacted entries, however, as

Plaintiffs assert that their redactions were necessitated by attorney-client privilege and even with

the redactions, it is for the most part possible for the Court to discern the nature of the activity, if

not its subject-matter. A further reduction is therefore not warranted. *See, e.g., Balu*, 2016 WL

884666, at *7 ("To the extent that the Court can discern the activity that took place . . . it has

allowed the time entry despite the fact that certain topic matters may have been redacted.").

### 4.  Calculating Attorneys' Fees

As stated above, the Court will calculate the presumptively reasonable fee based on the

billing rates requested by Plaintiff, except that the rate for travel time will be reduced by 50

percent. The Court will reduce the number of hours billed by each attorney by 20 percent: 10

percent reduction because of time expended on unsuccessful claims and 10 percent because of vague billing entries. Because of those reductions, any further reduction of the presumptively reasonable fee is unnecessary.

The chart below reflects the total number of hours billed by each attorney in this matter from the filing of complaints through December 8, 2016:

| Attorney | Total Hours | Travel Hours | Total Hours Minus Travel |
|---|---|---|---|
| Lisa F. Joslin ($350/hour): | 1268.4 | 123.0 | 1145.4 |
| Ronald G. Dunn ($350/hour): | 4.25 | 0.0 | 4.25 |
| Michael P. Ravalli ($350/hour): | 21.3 | 6.0 | 15.3 |
| Peter N. Sinclair ($200/hour): | 360.1 | 11.0 | 349.1 |
| Christopher R. Scoville ($125/hour): | 26.30 | 0.0 | 26.30 |

(*See* Exhs. P and Q, Joslin Aff.; Joslin Aff., ¶ 42.)

The next chart reflects the reasonable number of hours billed by each attorney for which they will be compensated at their full requested rate, taking into account a 20 percent reduction:

| Attorney | Total Hours | Travel Hours |
|---|---|---|
| Lisa F. Joslin ($350/hour): | 916.32 | 123.0 |
| Ronald G. Dunn ($350/hour): | 3.4 | 0.0 |
| Michael P. Ravalli ($350/hour): | 12.24 | 6.0 |
| Peter N. Sinclair ($200/hour): | 279.28 | 11.0 |
| Christopher R. Scoville ($125/hour): | 21.04 | 0.0 |

The final chart reflects the fee award to which Plaintiffs are entitled, determined by multiplying the reasonable non-travel hours expended by counsel's reasonable hourly rates, and multiplying the travel hours by counsel's reasonable hourly travel rates, i.e. half the general reasonable hourly rates:

| Attorney | Total Hours | Travel Hours | General Fee | Travel Fee |
|---|---|---|---|---|
| Lisa F. Joslin ($350/hour): | 916.32 | 123 | $320,712 | $21,525 |
| Ronald G. Dunn ($350/hour): | 3.4 | 0 | $1,190 | $0 |
| Michael P. Ravalli ($350/hour): | 12.24 | 6 | $4,284 | $1,050 |
| Peter N. Sinclair ($200/hour): | 279.28 | 11 | $55,856 | $1,100 |
| Christopher R. Scoville ($125/hour): | 21.04 | 0 | $2,630 | $0 |
| | | | **$384,672** | **$23,675** |

In all, Plaintiffs are entitled to $408,347 in fees.

## II.    Costs

"In any civil action commenced pursuant to this section, the court, in its discretion, may award the prevailing party costs . . ." N.Y.C. Admin. Code § 8-502. Plaintiffs request a total of $113,433 to cover costs and expenses incurred in their prosecution of this case. Defendants object to the payment of costs for expert fees and for travel expenses.

### A.    Expert Fees

Defendants argue that the NYCHRL does not include expert fees. In support, Defendants rely on *Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy*, 548 U.S. 291, 304 (2006), in which the Supreme Court held that the fee-shifting provision of the Individuals with Disabilities Education Act ("IDEA") does not permit recovery of expert-witness fees by prevailing plaintiffs. That decision was based on the statutory text of IDEA, which states that prevailing parties may be awarded "reasonable attorneys' fees as part of the costs," and does not mention expert fees. The Court construed "costs" as a term of art not including expert fees, and while the Court acknowledged that the legislative history was contrary to its reading of IDEA, it found that "where everything other than the legislative history overwhelmingly suggests that expert fees may not be recovered, the legislative history is simply not enough." *Id.* at 304. This opinion came in the context of the Spending Clause of the Constitution, pursuant to which IDEA was passed. The majority explained that when the Court is interpreting legislation passed pursuant to

13

the Spending Clause, it has an additional reason to favor statutory text over contrary legislative intent. The Spending Clause requires any conditions attached "to a State's acceptance of federal funds [to] . . . be set out 'unambiguously.'" *Id*. at 295-96. In the case of IDEA, the majority could "not say that the legislative history is sufficient to provide the requisite fair notice." *Id*.

For several reasons, *Arlington* does not compel this Court to deny expert fees requested under the New York City Human Rights Law. First, it goes without saying that the NYCHRL was not passed pursuant to the federal Spending Clause and thus it is not subject to the requirement that it provide "unambiguous" or "fair notice" in its text as to any possible costs associated with it. Second and related, in *Arlington*, the Supreme Court expressed concern that IDEA does not unambiguously set forth predictable parameters for the awarding of expert fees. That is not the case here. The Local Civil Rights Restoration Act of 2005, passed to clarify the scope of the NYCHRL, mandated that "similarly worded provisions of federal and state civil rights laws" be viewed "as a floor below which the City's Human Rights law cannot fall, rather than a ceiling above which the local law cannot rise." Restoration Act, 2005 N.Y. City Legis. Ann., § 1. As prevailing parties may collect expert fees under the Americans with Disabilities Act, it is unambiguous based on the text of the Restoration Act that they may do the same under the NYCHRL. *See* 42 U.S.C. § 12205; *Access 4 All, Inc. v. Mid-Manhattan Hotel Associates LLC*, No. 13 Civ. 7995 JMF, 2014 WL 3767009, at *1 (S.D.N.Y. July 31, 2014) ("In ADA litigation, a court may award legal costs to a prevailing party including costs for experts." (citation omitted)); *see also I.H. ex rel. D.S. v. Cumberland Valley Sch. Dist.*, 842 F. Supp. 2d 762, 777 (M.D. Pa. 2012) (finding, after *Arlington*, that the Rehabilitation Act contemplates the awarding of expert fees through its cross-referencing of the Civil Rights Act, which clearly allows the recovery of expert fees.). Finally, the Supreme Court in *Arlington* found "costs" to be

14

a term of art that excluded expert witness fees. *Arlington*, 548 U.S. at 298. But that definition was drawn from caselaw that "dealt only with expert fees in civil rights fee shifting *statutes*," and "the present case involves a provision for costs outside the realm of cost-shifting under federal civil rights statutes." *Corinthian Mortgage Corp v. ChoicePoint Precision Mktg., LLC*, No. 1:07CV832, 2009 WL 36606, at *7 n. 7 (E.D. Va. Jan. 5, 2009) (finding *Arlington* inapposite to meaning of "costs" in settlement agreement between parties) (internal citations and quotation marks omitted). Thus, the narrow definition of "costs" described in *Arlington* is inapplicable to "costs" as used in the NYCHRL. For these reasons, the Court finds the NYCHRL does permit the recovery of expert fees. *See also Siracuse v. Program for the Dev. of Human Potential*, No. 07 Civ. 2205, 2012 WL 1624291, at *36 n. 34 (E.D.N.Y. Apr. 30, 2012) (permitting the recovery of expert fees under the NYCHRL); *Bell v. Helmsley*, No. 111085/01, 2003 WL 21057630, at *7 (N.Y. Sup. Ct. Mar. 27, 2003) (same).[4]

It is equally clear, however, that the expert fees must be reasonable. *See, e.g. Siracuse*, 2012 WL 1624291, at *36 (examining reasonableness of expert fees in NYCHRL case). The Court finds that the $3,000 sought in expert fees for payment of Makinen's treating therapist, Marjorie Sugarman—which is not challenged by Defendants beyond their contention that expert fees are not contemplated by the NYCHRL—is reasonable. But the Court finds the $84,441 sought for Dr. Richard Frances's fees are excessive.

Prior to trial, Plaintiffs paid Dr. Frances $61,600. During and after trial, Plaintiffs paid Dr. Frances an additional $22,841.75. Dr. Frances billed at a rate of $550 an hour and spent 112

---

[4] As discussed *supra*, n. 2, effective March 28, 2016, the NYCHRL was amended. The amended version specifically provides that "the court, in its discretion, may award the prevailing party . . . expert fees and other costs." N.Y.C. Admin. Code 8-502(g). Because the Court has determined that even prior to the amendment, prevailing parties could recover expert fees under the NYCHRL, the Court need not further examine the effect of this amendment or consider its retroactivity.

hours preparing for trial. While the Court agrees with Plaintiffs that Dr. Frances provided valuable testimony to both this Court and the jurors, it cannot say that a "reasonable, paying client wish[ing] to spend the minimum necessary to litigate the case effective" would have approved the cost for Dr. Frances sought by Plaintiffs. *See Arbor Hill*, 522 F.3d at 190. His bill appears to be both excessive and overly vague. For instance, assuming that Dr. Frances was billing at his normal rate during the trial, he was paid for approximately 40 hours of work. But by that point, he had already prepared his report, and his testimony lasted less than one day. Further, his billing for his work both during trial and pre-trial is vague; for instance, he billed 18 hours on a single day, October 22, 2012, and described his work only as "18 hours for collateral interviews, and expert reports of Torres and CSU," and Plaintiffs provide a similarly scant description of his work during trial. (Exhs. I, J, and O, Joslin Aff.) Finally, Plaintiffs note that they estimated costs of $41,800 for Dr. Frances's work and provide no explanation for why they ultimately spent twice that. (*Id.*) Therefore, the Court finds it appropriate to reduce the costs requested for Dr. Frances's fees by 20 percent, to $67,552.80. *See, e.g., Access 4 All, Inc*, 2014 WL 3767009, at *3 (reducing costs where descriptions were "vague"); *Kreisler*, 2013 WL 3965247, at *7 (denying expert fees where Plaintiff did not justify that a consultation was necessary); *Brown v. Green 317 Madison, LLC*, No. 11 Civ. 4466, 2014 WL 1237448, at *16 (E.D.N.Y. Feb. 4, 2014), *report and recommendation adopted*, 2014 WL 1237127 (E.D.N.Y. Mar. 25, 2014) (reducing expert fee where expert provided no explanation for why his report required so much time to prepare).

### B.    Travel Costs

Plaintiffs seek to recover $7,958.30 in travel expenses, and Defendants argue that such expenses are not compensable because Plaintiffs chose to retain out-of-district counsel. Courts in

this Circuit have routinely denied travel expenses for counsel where Plaintiffs retained out-of-district counsel, particularly where out-of-district counsel charged rates similar to those charged in-district. As one court explained:

> "If an out-of-district attorney sought to charge rates that were markedly lower than those charged within the forum district, then a reasonable paying client might well understand that such savings would come at the expense of travel costs. No reasonable paying client, however, would choose to pay in-district attorney rates, and then, in addition, pay for the out-of-district attorney to travel into the district.

*Barile v. Allied Interstate, Inc.*, No. 12 Civ. 916 (LAP) (DF), 2013 WL 795649, at *8 (S.D.N.Y. Jan. 30, 2013), *report and recommendation adopted*, 2013 WL 829189 (S.D.N.Y. Mar. 4, 2013); *see also Ryan v. Allied Interstate, Inc.*, 882 F. Supp. 2d 628, 638 (S.D.N.Y. 2012) ("[Defendant] is a company with a national presence, and counsel's travel expenses are a result of plaintiffs' choice to litigate these cases in the Southern District of New York while being represented by a firm based in Ambler, Pennsylvania."); *Greenbaum v. Svenska Handelsbanken, N.Y.*, 998 F. Supp. 301, 305 (S.D.N.Y. 1998) (Sotomayor, J.) (eliminating hotel and travel expenses for co-counsel "whose office is so distant from Manhattan, when equally experienced employment discrimination lawyers are available in New York City."); *Dzugas-Smith v. Southold Union Free Sch. Dist.*, No. 07 Civ. 3760 JS, 2010 WL 3852003, at *3 (E.D.N.Y. Sept. 27, 2010) ("There is no reason why Defendants should incur greater liability simply because Plaintiffs inexplicably retained a Buffalo-based attorney, when legions of competent Eastern District lawyers could have represented them.").

As discussed above, out-of-district counsel has billed at rates comparable to those in this district, and the Court does not believe that a reasonable paying client would agree to pay those rates, in addition to travel expenses between the Northern District and the Southern District. Therefore, the request for travel expenses are denied.

### C.  Calculating Costs

Plaintiffs requested a total of $113,433.18 in costs. Defendants object only to the expert

fees to Sugarman ($3,000) and Frances ($84,441.75) and the travel expenses ($7,958.30) and do

not object to the various filing fees, copying expenses, and mailing expenses submitted by

Plaintiffs. (Exh. I. Joslin Aff.) The Second Circuit has described "in-house duplication costs,

telephone charges, meals, overtime, local transportation, postage, electronic legal research, and

messenger service" as "the sort of expenses that may ordinarily be recovered as part of a fee

award . . ." *Westport Ins. Corp. v. Hamilton Wharton Grp. Inc.*, 483 F. App'x 599, 605 (2d Cir.

2012) (citing *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 763 (2d Cir. 1998)), and the Court

will allow such recovery here. Subtracting the travel expenses and taking into account the 20

percent reduction of Frances's fees, the compensable costs amount to $88,586.68.

## III.  Prejudgment Interest

Plaintiff Makinen seeks prejudgment interest on the $11,100 she was awarded in

economic damages and the $5,000 she was awarded in compensatory damages. Plaintiff Nardini

seeks prejudgment interest on the $75,000 she was awarded in compensatory damages. They

seek interest at the nine percent statutory rate set forth in N.Y. CPLR § 5001(b). While

Defendants do not contest Makinen's entitlement to prejudgment interest on her economic

damages, they oppose the awarding of prejudgment interest on the compensatory damage

awards. Further, they argue that any prejudgment interest should be assessed at the federal T-Bill

rate, which is lower than the nine percent rate sought by Plaintiffs.

### A.  Prejudgment Interest on Compensatory Damages

The decision to award prejudgment interest is left to the discretion of the district court.

*Gierlinger v. Gleason*, 160 F.3d 858, 873 (2d Cir. 1998). "Discretionary awards of prejudgment

interest are proper when the awards are fair, equitable and necessary to compensate the wronged party fully." *Robinson v. Instructional Sys., Inc.*, 80 F. Supp. 2d 203, 206 (S.D.N.Y. 2000) (quoting *Wickham Contracting Co. v. Local Union No. 3,* 955 F.2d 831, 833–34 (2d Cir. 1992)) (alterations and internal quotation marks omitted), *aff'd sub nom. Farias v. Instructional Sys., Inc.*, 259 F.3d 91 (2d Cir. 2001). It follows, then, that "[t]o the extent . . . that damages awarded to the plaintiff represent compensation for lost wages, it is ordinarily an abuse of discretion *not* to include pre-judgment interest." *Gierlinger*, 160 F.3d at 873 (emphasis in original) (citation and internal quotation marks omitted).

With respect to compensatory damages, however, there is no such clear guidance. Some courts have awarded prejudgment interest on compensatory damages where plaintiffs prevailed on their federal—or federal *and* state—employment discrimination claims, finding that "considerations of fairness, compensation and the remedial purposes of the underlying statutes suggest that the defendant should be held fully responsible for plaintiff's injuries," and that prejudgment interest on a compensatory damage award is necessary "in order to meaningfully make plaintiff whole . . ." *Robinson*, 80 F. Supp. 2d at 207-08; *see also id.* (collecting cases); *Picinich v. United Parcel Serv.*, No. 01 Civ. 01868 (NPM), 2005 WL 3542571, at *30 (N.D.N.Y. Dec. 23, 2005), *aff'd in part, vacated in part*, 236 F. App'x 663 (2d Cir. 2007).

Other courts, however, have declined to award prejudgment interest on compensatory damages, finding such an award "unnecessary to make the claimants whole." *E.E.O.C. v. Everdry Mktg. & Mgmt., Inc.*, 556 F. Supp. 2d 213, 224 (W.D.N.Y. 2008), *aff'd*, 348 F. App'x 677 (2d Cir. 2009); *see also Kuper v. Empire Blue Cross & Blue Shield*, No. 99 Civ. 1190 (JSG) (MHD), 2003 WL 23350111, at *7 (S.D.N.Y. Dec. 18, 2003) (collecting cases), *report and recommendation adopted*, 2004 WL 97685 (S.D.N.Y. Jan. 20, 2004). These courts have

emphasized that in contrast to a backpay award, "an award of compensatory damages . . . is not so easily calculated and represents the jury's translation into monetary terms a loss that is difficult to quantify." *McIntosh v. Irving Trust Co.*, 873 F. Supp. 872, 882 (S.D.N.Y. 1995). Further complicating the calculation of prejudgment interest, a compensatory damage award "is not easily divided into specific periods like back pay and it does not represent an amount that the defendant has withheld from the plaintiff in the same way that awards in contract or property actions do." *Id.* Finally, these courts have noted that "New York [state] courts generally hold that prejudgment interest is unavailable for awards for past emotional distress." *Meacham v. Knolls Atomic Power Lab.*, 185 F. Supp. 2d 193, 237 (N.D.N.Y. 2002) (collecting cases), *vacated and remanded on other grounds*, 461 F.3d 134 (2d Cir. 2006).

Because the compensatory damages here were awarded under state law and because the Court agrees that such damages already represent the jury's best quantification of losses that are difficult to quantify, the Court declines to award prejudgment interest on Makinen and Nardini's compensatory damage awards.

### B.      Prejudgment Interest Rate

However, the Court does award Makinen prejudgment interest on her economic loss damages, as such damages represent funds withheld by Defendants from Makinen and thus prejudgment interest is necessary to compensate Makinen fully.

"[J]udgments that are based on both state and federal law with respect to which no distinction is drawn shall have applicable interest calculated at the federal interest rate." *Thomas v. iStar Fin., Inc.*, 652 F.3d 141, 150 (2d Cir. 2011). However, "where prejudgment interest can only be awarded on the basis of what is solely a state claim, it is appropriate to use the state interest rate." *Id.* at 150 n. 7; *see also Epstein v. Kalvin-Miller Int'l, Inc.*, 139 F. Supp. 2d 469,

486 (S.D.N.Y. 2001) (applying state interest rate where jury found in plaintiff's favor on

NYSHRL claims and against plaintiff on federal claims); *Kadden v. VisuaLex, LLC*, No. 11 Civ.

4892 SAS, 2012 WL 5199369, at *2 (S.D.N.Y. Oct. 22, 2012) (applying state interest rate to

damages awarded on claims falling within state law limitation period and outside federal law

limitation period).

Defendants argue that the Court should apply the federal T-bill rate regardless of the fact

that Plaintiffs prevailed only under state law, as it would represent an "undeserved windfall" to

grant Makinen a higher interest rate than if she had prevailed on her federal claims. (Def.'s Mem.

Opp. 17.) But if Makinen had brought suit raising only her state law claims, she would have been

entitled to prejudgment interest on any economic damages awarded to her for those claims. *See*

*Tipaldo v. Lynn*, 26 N.Y.3d 204, 213 (N.Y. 2015) ("[A]lthough the Human Rights Law, like

[T]itle VII, makes no specific reference to pre-determination interest, a liberal reading of the

statute is explicitly mandated to effectuate the statute's intent. Thus . . . allowing for prejudgment

interest is consistent with the central concern of the statute . . ." (quoting *Aurecchione v. New*

*York State Div. of Human Rights*, 98 N.Y.2d 21, 26 (N.Y. 2002) (internal quotation marks

omitted)). Where prejudgment interest is awarded on state law claims, it is awarded at "nine per

centum per annum, except where otherwise provided by statute." N.Y. C.P.L.R. 5004. On her

state law claims, in the absence of federal claims, this is the rate to which Makinen is statutorily

entitled, regardless of whether Defendants consider it a "windfall." *See Epstein*, 139 F. Supp. 2d

at 486 (awarding interest at state statutory rate where jury awarded plaintiff economic damages

under state law while rejecting plaintiff's parallel federal claims).

### C.      Calculating Prejudgment Interest

Makinen is entitled to recover prejudgment interest at the rate of nine percent per annum on her economic damages award of $11,100. Plaintiff proposes that prejudgment interest be calculated from January 26, 2011, and Defendants do not dispute that starting date. Judgment was entered June 15, 2015. Using the simple interest method, the Court calculates prejudgment interest to be $4,381.92.[5]

## IV.      Postjudgment Interest

Plaintiffs are entitled to post-judgment interest pursuant to 28 U.S.C. § 1961. As Defendants do not dispute, Plaintiffs are "entitled to post-judgment interest on the award of attorneys' fees, costs, and pre-judgment interest . . . commencing on the date the Clerk's Office enters judgment and ending on the date of payment." *Gamble v. E. Bronx N.A.A.C.P. Day Care Ctr., Inc.*, No. 04 Civ. 1198 (KMW), 2008 WL 2115237, at *3 (S.D.N.Y. May 15, 2008).

## CONCLUSION

For the reasons set forth above, the Court grants in part and denies in part Plaintiff's motion for attorneys' fees, costs, pre-judgment interest, and post-judgment interest. The Court awards: (1) attorneys' fees in the amount of $408,347; (2) costs in the amount of $88,586.68; (3) prejudgment interest on Makinen's economic damages in the amount of $4,381.92; and (4) post-judgment interest in accordance with 28 U.S.C. § 1961.

**SO ORDERED.**

**Dated:**  April 12, 2016
　　　　New York, New York

　　　　　　　　　　　　　　　　**ANDREW L. CARTER, JR.**
　　　　　　　　　　　　　　　　**United States District Judge**

---

[5] To calculate interest, the Court used the formula: Principal x Annual Rate x Number of Days divided by 365. Here, the calculation was: $11,100 x .09 x (1601 days/365 days).